IN THE UNITED STATES DISTRICT COURT

DISTRICT OF COLORADO

| | |
|---|---|
| JAY CONNOR, individually and on behalf of all others similarly situated,<br><br>                         Plaintiff,<br>    v.<br><br>SERVICEQUIK INC. d/b/a<br>ZING BUSINESS MANAGEMENT<br>SOFTWARE<br><br>                         Defendant. | Case No. 1:24-cv-02286 |

**PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS**

       Attempts by the robocalling industry to blame the victims of their calls are nothing new. Trial and appellate courts have had little trouble rejecting such smear tactics.

       But now, it has come to this.

       In its motion (ECF. No. 10) ("Motion" or "Mot."), the Defendant makes a bold assertion, that a plaintiff, who uses the aforementioned cellular telephone number for personal, family and household use, but was reassigned a telephone number erroneously associated with a Google Maps listing through no fault of his own, has lost standing to assert the privacy protections of the TCPA. The proper resolution of Defendant's motion has a boring ending: denial, as similar cases have previously held.

       Next, the Defendant then comments that Mr. Connor is a "professional plaintiff". What does Defendant mean by "professional plaintiff?" As the ensuing motion makes clear, the Defendant insinuates that Mr. Connor somehow invites the calls in the same manner as an individual who carried around 35 cell phones in a shoebox at all times. Far from a "professional plaintiff," Mr. Connor is the exact type of individual Congress intended to protect, and, in fact,

incentivize, when they passed the Telephone Consumer Protection Act of 1991. The only "profession" in this case is Defendant's illegal text messaging campaign through which Mr. Connor received two text messages –not Plaintiff's bringing an action to try to put an end to them.

Defendant's attempts at dismissing the case under Rule 12(b)(6) because the calls were allegedly not made to a residential cell phone and because the Plaintiff allegedly received only one text message fare no better. As an initial matter, the text messages were sent to a residential cell phone, which is presumptively a residential, non-business number under the TCPA, which multiple courts and the FCC have confirmed. This fact will be ascertainable in discovery through reference to various databases, including the Reassigned Number Database. As to the second point, the Plaintiff's telephone records on this point, attached herein as Exhibit A, are dispositive, and show unquestionably that the Plaintiff received two text messages. The Plaintiff has pled consistent with these phone records.

Defendant's motion should therefore be denied in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

It bears clarification the posture that this case comes to this Court. In sum, a lawsuit asserting the same claims in this action, violations of the SCTPPA were originally filed by the Plaintiff, proceeding *pro se*, in state court in South Carolina, where the Plaintiff resides. Plaintiff and Defendant conducted discovery in that action, which revealed, as alleged in the Plaintiff's Amended Complaint, that the Plaintiff's number was purchased as part of a list of telephone numbers from an online marketplace called Fiverr. Defendant then loaded this database of telephone numbers into a mass-texting platform, explicitly *disabled* the option to scrub the texts against numbers on the Do Not Call Registry, and then blasted the texts to the telephone numbers

on the list they purchased online. After identifying the second text and a cause of action under the TCPA, Plaintiff moved to dismiss his state court action, without prejudice, which was granted by the South Carolina State Court. The Plaintiff then retained the undersigned counsel, who filed this instant action as a class action against the Defendant here in Colorado, where the Defendant is located.

In the interim, this Court should also be aware that the Defendant has moved, after the fact, for summary judgment in the dismissed South Carolina Action. The Plaintiff anticipates filing a motion shortly for an order enjoining the South Carolina Court from taking any further action in the closed matter as a matter of *res judicata* and in support of this Court's exercise of its own, superior, jurisdiction.

The matter before *this* Court is the Defendant's motion to dismiss and remains before this Court at the pleadings stage. The Plaintiff has not yet propounded any additional discovery in this matter, as he is entitled to do, nor has the Plaintiff yet moved for class certification under Rule 23 of the FEDERAL RULES OF CIVIL PROCEDURE, as the Defendant improperly and inaccurately alleges. This response follows.

## LEGAL STANDARD

"Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to give defendant fair notice of what the claim is and the grounds upon which it rests. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014). The requirement that a plaintiff

3

"show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Id.* at 679. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* at 678. A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

### 1. The Plaintiff's Complaint Plainly Alleges that the Telephone Number Listed is Residential.

Mr. Connor's allegations are straightforward and plain, but they are not legal conclusions. He alleges the facts – this telephone number is not used by him for business and it is a residential telephone line. Mr. Connor alleges that his residential telephone number is (843)-XXX-XXXX. *See* Amended Complaint at ¶ 19. 843 is a South Carolina area code. *Id.* at ¶ 20. Plaintiff placed the number on the National Do Not Call Registry in 2022. *Id.* at ¶ 21. The number is a residential telephone line because it is assigned to a wireless, cellular telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses. *Id.* at ¶ 22. The number is in Mr. Connor's name and he pays the bill. *Id.* at ¶ 23. Mr. Connor uses the number for personal, residential, and household reasons. *Id.* at ¶ 24. Mr. Connor

4

does not use the number for business reasons and the number is not registered in the name of a business. *Id.* at ¶ 25.

The Defendant is correct in asserting that purely business telephone numbers assigned to business telephone services are not subject to the protections of the National Do Not Call Registry, which explicitly only applies to "residential subscribers." However, its analysis in this regard is off, assuming without any support, and without citing to the *actual statutory text*, that any telephone number which has at any point ever been used in connection with a business, is automatically not "residential." This assertion is flatly contradicted by the statutory text and other court decisions.

How does the FCC, the agency charged with implementing rules for Do Not Call Registry,[1] define "residential subscriber" as opposed to "business subscriber?" Quite simply. As with any question of statutory interpretation, the court's inquiry "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). And, under the TCPA, a "residential subscriber refers to a subscriber to telephone exchange service that is not a business subscriber" and a business subscriber is a "subscriber to telephone exchange service for businesses." 47 C.F.R. § 64.2305(b), (d). Indeed, such language which specifically excludes only one type of services– telephone exchange services for businesses–from the protections afforded by the National Do Not Call Registry. The fact the relevant regulation contains only one exclusion demonstrates that the regulation errs on the side of being overinclusive, not underinclusive.

---

[1] The Federal Communication Commission ("FCC") possesses authority to issue implementing rules and regulations for the TCPA. *See* 47 U.S.C. § 227(c)(1)(A-E) and (c)(2) and (c)(3). Pursuant to that authority, the FCC promulgated regulations relating to the implementation, interpretation of the TCPA. *See* 47 C.F.R. § 64.1200(a)-(m).

What's more, the FCC has adopted enhanced protective standards for cellular telephone numbers. To this end, the FCC has established a presumption that "wireless subscribers who ask to be put on the national do-not-call list *are residential subscribers.*" *FCC Report and Order*, 18 FCC Rcd. 14014, 14039 (2003) (cleaned up) (emphasis added). This is so, *even if they also use such numbers partially for business purposes.* Indeed, the Fourth Circuit in *Krakauer v. Dish Network, L.L.C*, 925 F.3d 643, 657 (4th Cir. 2019), concluded the TCPA's language was clear and that numbers on the Do Not Call Registry, by virtue of their mere registration, are *presumptively residential*:

> The statute marks its own boundary. Suit can only be brought by those who receive multiple violative calls. Calls are only violative if the phone number was on the Do-Not-Call registry. And **a number can only be placed on such a registry if the number is a residential line.** Whatever work we may be required to do for more broadly worded statutes, Congress did the work for us here.

Courts nationwide have agreed. *See, e.g., Tsolumba v. SelectQuote Ins. Servs., No. 22-cv-712,* 2023 U.S. Dist. LEXIS 167022, 2023 WL 6146644, at *5 n.3 (N.D. Ohio Sept. 20, 2023) ("This Court therefore joins the majority of courts throughout the country who have held that cell phones like [plaintiff's] are entitled to the TCPA's protection as residential telephones.")

At the pleadings stage, this is sufficient. But even crediting the Defendant's disputed factual allegations, the Plaintiff does not hold his number out as a business' main phone line. To the contrary, the Plaintiff has no connection to "Arbor Craft Builders," the number at issue being in Mr. Connor's name, Mr. Connor paying the bill, and not using the number for business reasons or registering it in the name of a business. (Amended Complaint at ¶ 23, 25). As best the Plaintiff can gather, the Plaintiff was re-assigned a telephone number which used to be associated with Arbor Craft Builders, a defunct business that has since filed for protection under Title 11, Chapter 7 of the United States Code.

Nor does the Plaintiff control Google or have any ability to remove this erroneous search result, which he has nevertheless attempted to do to no avail, and despite not being required to do so. The Defendant does not plead, nor can it, that the Plaintiff himself listed the number as one for Arbor Craft Builders, nor can they, because the record developed at the state court level in the sister case revealed the opposite: that the Plaintiff attempted unsuccessfully, to correct this erroneous search result. Inaccurate information on Google is an unfortunate fact of life, but this fact does not stand for the proposition that a residential telephone subscriber somehow loses their privacy protections because of inaccurate information on Google. Defendant cites no case law for that shaky proposition.

Indeed, the sole case cited by the Defendant, *Bank v. Indep. Energy Grp. LLC*, No. 12-CV-1369, 2014 WL 4954618, at *4 (E.D.N.Y. Oct. 2, 2014), *denied* the motion to dismiss, holding:

> Defendants claim that the number involved in this case has been held out to the public by Bank to be the business number of his law firm. They argue that Bank lists the phone number on his professional letterhead, on the signature block in court documents, and on other publicly available resources on the Internet. Def. Br. 2-3, May 23, 2014, ECF No. 34. If Defendants are correct about the ways in which Bank has advertised this number, it would not qualify as residential under the TCPA. But the complaint does not allege the number at issue and this is a motion to dismiss.

While Mr. Connor is not alleged to have done any of those things, the analysis is the same on a motion to dismiss, which should be denied.

In sum, this Court can easily discern that Mr. Connor has received non-consensual calls to a residential number he placed on the National Do Not Call Registry. Those calls were made to Mr. Connor's personal cell phone that he uses for personal, residential, and household purposes. It is therefore a residential number. Mr. Connor personally, and not a company, now sues the Defendant for conduct inflicted upon him. As the statutory and regulatory guidance make clear, Mr. Connor's number is presumptively residential and is therefore entitled to the Registry's

protections. Moreover, his number is not registered to any telephone exchange service for businesses, a requirement making a number ineligible for inclusion on the Registry. Because Mr. Connor has pled the same, Defendant's Rule 12(b)(6) challenge on this point must fail.

### 2. The Plaintiff Does Not Lack Standing.

Ignoring the plain language of the statute, Defendant posits a unique theory of standing. It apparently has no objection to the standing of individuals who cannot be put to the trouble of suing them, but those like Mr. Connor, who have a track record of investing time and energy to enforce federal telemarketing law for the benefit of a class and the general public, according to Defendant, should be stripped of the TCPA's protections because such conduct supposedly amounts to being a "professional plaintiff." That term has no definition in the law, is untethered the language in the statute, and no decision traces a plaintiff's standing under the statute to such an undefined status entirely of the Defendant's own devising. But there is nothing harassing about the Plaintiff investigating and suing those who called him in violation of the TCPA.

Indeed, another court faced with a similar challenge to a plaintiff's standing has held that investigative activity did not deprive him of standing:

> Plaintiffs' allegations that they received unwanted automated calls from Defendants sufficiently show concrete injuries. The intangible injuries they assert—nuisance and invasion of privacy—constitute "the very harm that Congress sought to prevent, arising from prototypical conduct proscribed by the TCPA." Accordingly, the injuries as pled "actually exist." Also, because the calls were made to Plaintiffs' phone numbers without their consent, the injuries to Plaintiffs are sufficiently personal to satisfy the requirement of particularized injuries. Accordingly, Plaintiffs have met the minimum constitutional requirements for bringing suit.
>
> * * *

> In addition to Article III standing, the court must determine whether Plaintiffs here have statutory standing. That is, the court must determine whether the TCPA authorizes a private right of action for the claims asserted by these Plaintiffs.
>
> * * *
>
> In asserting a lack of statutory standing, Defendants do not argue that Plaintiffs' allegations are insufficient to state a claim under the TCPA. Instead, they contend that Plaintiffs' alleged economic motivations sets them outside the TCPA's zone of interest. Specifically, Defendants argue that Plaintiffs lack standing because they are "professional plaintiffs" with numerous phone lines—allegedly more than twenty-five between them—and a history of litigating TCPA cases for economic gain. This argument, however, is not tethered to the language of the statute. Neither is it tied to Plaintiffs' causes of action. The Supreme Court has made clear that courts "do not ask whether in our judgment Congress *should* have authorized [plaintiff's] suit, but whether Congress in fact did so." Because Congress authorized plaintiffs to file suit for alleged violations of the TCPA, including the circumstances alleged here, they have statutory standing.
>
> The Supreme Court instructs that "we presume that a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" As noted earlier, Congress has identified those interests as privacy rights. In this case, Plaintiffs have pled that they received calls and texts prohibited by the TCPA. They further assert that "Plaintiffs here didn't want these calls," "do not want these unwelcomed calls," "were not seeking out these calls," and "tried everything in their power to stop them." Plaintiffs further contend that "there is simply nothing here to support the characterization that they are 'operating TCPA litigation businesses'" and that "the numbers are used for residential purposes only …." This is sufficient at the motion to dismiss stage to bring Plaintiffs within the zone of the privacy rights the TCPA protects.

*Perrong v. Vivint, Inc.*, No. 2:19-cv-00568-DBB-CMR, 2020 U.S. Dist. LEXIS 89055, at *8 (D. Utah May 20, 2020). Here, the Plaintiff makes similar allegations, which are sufficient to establish his standing and do not impact his potential adequacy.

9

The attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants careful scrutiny. *Outley v. New York*, 837 F.2d 587, 591-92 (2d Cir. 1988). "[N]othing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs only' rule." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017). *See also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders."); *Abramson v. Oasis Power LLC*, No. 2:18-cv-00479, 2018 U.S. Dist. LEXIS 129090, at \*16 (W.D. Pa. July 31, 2018) ("As other courts addressing this issue have agreed, a citizen's decision to aggressively enforce his rights under the TCPA should not negate otherwise valid privacy interests").

Merely because Mr. Connor is able to identify those who placed calls to him illegally does not deprive him of harm or standing any more "than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken into." *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017) (denying motion for summary judgment in TCPA case related to a similar standing argument). While the Defendant is "understandably frustrated" by Mr. Connor's investigative tactics and the fact they are being sued, he is doing "exactly what Congress intended—enforcing the law." *Id.* Congress was well aware of this possibility when it passed the TCPA, and no general rule requires plaintiffs who prove their cases to end up worse off than before the defendant injured them. Thus, courts reject such irrelevant and dangerous attacks on plaintiffs who bring multiple actions and engage in investigative tactics to stop robocalls:

10

> The determinative issue, then, is not Cunningham's motivations, but whether he was injured. An ordinary consumer who pled the facts that Cunningham has pled would have established a concrete and particularized injury-in-fact based on the Defendants' intrusion upon his rights to privacy and seclusion. Defendants suggest that, by becoming a so-called "professional plaintiff," he has forfeited those rights because the calls alleged were not truly unwanted. Insofar as *Stoops* endorses such a result, this Court disagrees. It may be that Cunningham was not saddened or annoyed by the calls he received; it may even be that, knowing his rights under the TCPA, he is glad the calls were placed. But allowing that fact, even if true, to negate his right to privacy and seclusion would require the Court to embrace a line of reasoning that would ultimately undermine the rights of most, if not all, TCPA plaintiffs and plaintiffs in similar statutory schemes.

*Cunningham*, 251 F. Supp. 3d at 1196 (citation omitted) (noting that most people would accept $500 or more in exchange for enduring the privacy violation of a single robocall). Like the defendants in *Cunningham*, Defendant "seem[s] to imagine a Constitution that limits the right to sue under the TCPA to those who are *ignorant* of their right to sue under the TCPA." *Id.* "The Constitution requires no such result." *Id.*

The only case law Defendant relies upon for its argument Plaintiff lacks constitutional standing is inapposite. In *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016), on a motion for summary judgment, a TCPA plaintiff was found to lack standing where she testified her *sole purpose* for owning over 35 cell phones that she carried around with her at all times *in a shoebox* was to run what she referred to as a "TCPA litigation business." There is no indication here that Mr. Connor owns 35 cell phones, carries them around in a shoebox, or does not actually use his cell phone for personal, family, and household use as alleged in the Amended Complaint. Defendant has also advanced no proof that Mr. Connor uses his cell phone to run a TCPA litigation "business."

Relatedly, Defendant then cites *Leyse v. Bank of Am. Nat'l. Ass'n*, 804 F.3d 316, 323 (3d Cir. 2015), for the unremarkable proposition that "[s]omeone with a generalized interest in punishing telemarketers … would not qualify *on that basis alone*" for constitutional standing.

11

(emphasis added). But Mr. Connor is not attempting to qualify for statutory standing solely because he has an interest in curbing unlawful telemarketing. He received unlawful text messages to his telephone, which used his bandwidth, battery, and storage space, invaded his privacy, and as a result, Mr. Connor has suffered a particularized injury because he received the call at issue, which caused him numerous recognized harms, all through no fault of his own. He therefore unquestionably has standing.

### 3. The Plaintiff received two text messages.

The Plaintiff's Amended Complaint lists the two text messages he received in violation of the statute. The first message read, "Hi, this is Sally from Zing website design. We're offering a fully built website for only $19/ month for businesses like Arbor Craft Builders- no contrac" (Amended Complaint at ¶ 29). The second message read, "t! Can I send you a sample of our work? Reply "not interested" to opt out". (Amended Complaint at ¶ 30).

Thus, the Plaintiff has plainly alleged that he received more than one telephone call (or text message) in violation of the statute within a twelve-month period by or on behalf of the same

| Incoming Text/Message | 720-927-8973 | 2/23/2024 | 12:41:16 PM CST | NA | $0.00 |
|---|---|---|---|---|---|
| Incoming Text/Message | 720-927-8973 | 2/23/2024 | 12:41:16 PM CST | NA | $0.00 |

entity, exactly as the statute requires. 47 U.S.C. § 227(c)(5). And that the Plaintiff's cell phone combined the two messages, a technical term known as "concatenation," for the ease of reading, does not change the fact that the Plaintiff received two text messages, not one. This fact is confirmed by the Plaintiff's telephone logs from his cell phone company, AT&T, which confirm that he was billed for two calls, not one:

Defendant's contrary argument that the Court should somehow interpret "more than one telephone call" to require some undefined degree of temporal separation between calls adds language to the statute that does not exist and would in fact run contrary to multiple other portions of the TCPA. *See Albrecht v. Oasis Power, LLC*, No. 18 C 1061, 2018 WL 11269232, at *1 (N.D. Ill. Oct. 11, 2018) (denying motion to dismiss when Plaintiff received four simultaneous calls that were made for the purpose of leaving a single ringless voicemail).

In fact, the TCPA also prohibits *simultaneous* calling conduct that would cause "two or more telephone lines of a multi-line business [to be] engaged simultaneously." 47 U.S.C. § 227(b)(1)(D). Indeed, for TCPA purposes, the "account records of a common carrier" of the party responsible for paying the bill on the line on which the call was received is dispositive for what "subscriber" received calls. 47 C.F.R. § 64.1100(h); *Hinman v. M & M Rental Ctr., Inc.*, 596 F. Supp. 2d 1152, 1156 (N.D. Ill. 2009) (relying on billing records of phone company to determine number of illegal faxes sent). As demonstrated above, the common carrier account records from AT&T reflect that two calls took place. The Plaintiff has therefore plainly pled, and that pleading is supported by his telephone records, that he received more than one call in a twelve month period.

4. **A Decision on Class Certification Would be Premature Prior to Discovery**

The Defendant moves to deny class certification at the pleadings stage, a move which is procedurally improper and which is more appropriately considered as a motion to strike class claims. While a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," Fed. R. Civ. P. 12(f), "[m]otions to strike class

allegations are disfavored because class defendants 'are often in control of the information plaintiffs need to meet that [Rule 23] burden. Thus, discovery is often appropriate, even necessary." *MSP Recovery Claims, Series LLC v. Auto Club Ins. Ass'n,* 2022 U.S. Dist. LEXIS 153143, *4-5 (E.D. Mich. Aug. 25, 2022); *see also Legacy Gymnastics, LLC, v. ARCH Ins. Co.*, No. 2:20-cv-04214-NKL, 2021 WL 2371503, at *2 (W.D. Mo. June 9, 2021) ("[p]articularly in the context of a class action suit, striking class allegations prior to discovery and the class certification stage is a rare remedy because it is seldom, if ever, possible to resolve class representation question[s] from the pleadings alone.").

Courts in Colorado agree:

> Essentially, Defendant is moving to preemptively deny class certification before discovery and before a motion for class certification is filed. As Chief Judge Brimmer of this Court noted, while "'Rule 23 does not preclude a defendant [*16] from bringing a 'preemptive motion to deny [class] certification[,]'" courts in the Tenth Circuit "have held motions to strike class allegations to a high standard of proof." *Wornicki v. Brokerpriceopinion.com*, No. 13-cv-03258-PAB-KMT, 2015 U.S. Dist. LEXIS 36985, 2015 WL 1403814, at *4 (D. Colo. Mar. 23, 2015). Therefore, consistent with other courts in this Circuit, Judge Brimmer held in *Wornicki* that the Court would "only grant defendant[']s motion if [it is] able to show conclusively that plaintiff[] will be unable to establish facts that would make class treatment appropriate."

*Murphy v. Aaron's, Inc.,* 2019 U.S. Dist. LEXIS 182542, *15-16 (D. Co. 2019).

As courts around the country have held in TCPA cases, discovery will determine if this case about unsolicited telemarketing is amenable to class certification, as most TCPA cases are. If Defendant's argument was adopted, no TCPA action could be certified if the defendant alluded to possible defenses at the start of the litigation. But this is simply not the case. As one court summarized while certifying a TCPA class: "in the context of the TCPA, the class action device likely is the optimal means of forcing corporations to internalize the social costs of their

actions." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) (certifying two class under the TCPA). And this is not surprising given that "[c]lass certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *accord Krakauer*, 925 F.3d at 656 ("Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition.").

Defendant's argument that the class claims should be dismissed and class certification denied at the pleadings stage because of a purported inability to distinguish between business phone lines and residential ones should be disregarded. The Plaintiff has not yet moved for class certification and has not undertaken class discovery. Despite this, the Defendant contends that, if this lawsuit is permitted to proceed, the lawsuit would "mainly revolve around whether the instant communication violates the TCPA despite the number being listed online for a business." If the Defendant feels that that is the case after class discovery has concluded, it is free to make such arguments at class certification. But the class claims should not be denied at the pleadings stage merely because the Defendant conclusory speculates that the evidence that will be uncovered in discovery will merely uncover a purported class of one.

At least part of the Defendant's argument seems to stem from mistaken assumptions about the law. *First*, and most importantly, as explained above, the TCPA is a strict liability statute that holds that cell phones which are registered on the National Do Not Call Registry are *presumptively residential.* At the pleadings stage, it appears that all the communications at issue which were sent were sent to cell phones because they were text messages. It goes without saying that a copper landline cannot receive a text message. Accordingly, it is a simple matter for an expert to review the Defendant's calling records to ascertain which text messages were sent to

15

cell phone numbers listed on the National Do Not Call Registry. Indeed, a Court in the District of Massachusetts certified such a case last month in *Mantha v. Quotewizard.Com, LLC,* 2024 U.S. Dist. LEXIS 152987 (D, MA., August 16, 2024) where the Court explained the work done by the Plaintiff's expert in discovery to identify residential numbers. Furthermore, in its Order granting class certification, the Court recognized the National Do Not Call Registry's "residential number presumption". *Id.* at *45. As the Court explained:

> Importantly, however, the Court also stated that numbers on the NDNCR benefit from the "presumption that [their] cellular phone number constitutes a 'residential telephone subscriber'" when that number is on the NDNCR. Id. Here, Mantha has shown, using Verkhovskaya's testimony, that every number in the proposed Class List is on the NRDC. QuoteWizard identifies no proffered or forthcoming evidence indicating otherwise (i.e., that any number on the proposed Class List is not also on the NDNCR). To the extent QuoteWizard points to the work of its expert, it does so only for the proposition that some of the numbers on the proposed Class List are allegedly "business," as opposed to "residential," numbers—not that they failed to appear on the NDNCR. Even if a handful of numbers—QuoteWizard does not indicate how many—are not, in fact, residential, that does not warrant denial of class certification. See Krakauer, 311 F.R.D. at 396 ("The fact that a class list contains members who claims may fail on the merits does not mean that the class cannot be certified.").

*Id.* (cleaned up) The residential number presumption has been recognized by Courts nationwide. *See, e.g.*, *Sasin v. Enter. Fin. Grp., Inc.*, No. CV 17-4022-CBM-RAO, 2017 U.S. Dist. LEXIS 229459, 2017 WL 10574367, at *5-6 (C.D. Cal. Nov. 21, 2017) (denying motion to dismiss because plaintiff sufficiently alleged that defendant called a cellphone registered on the DNC Registry); *Doyle v. JTT Funding, Inc.*, No. LA CV18-06145 JAK (ASx), 2019 U.S. Dist. LEXIS 234011, 2019 WL 13037025, at *9 (default judgment for plaintiff because cellphone was allegedly listed on do-not-call registry); *Hodgin v. Parker Waichman LLP,* No. 3:14-cv-733-DJG, 2015 U.S. Dist. LEXIS 192262, 2015 WL 13022289, at *3 (W.D. Ky. Sept. 30, 2015) (presuming cellphone registered on do-not-call registry to be residential on a motion to [*10]

dismiss); *Phillips v. Mazes, Inc.,* No. 2:12-cv-04033-JEO, 2014 U.S. Dist. LEXIS 190729, 2014 WL 12589671, at *6 (N.D. Ala. Sept. 3, 2014), report and recommendation adopted by 2015 U.S. Dist. LEXIS 183524, 2015 WL 12806594 (Jan. 26, 2015) ("At the very least, [plaintiffs] allegation that his cell phone number was listed on the do-not-call registry creates a reasonable inference that he is a residential telephone subscriber with respect to that phone.").

But even if this Court were to hold that the presumption of residential reservation was overcome by the Defendant in this case at class certification, Plaintiff could still use other databases to separate business numbers from residential ones and update class records accordingly. *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) (holding that crafting and defining class definition falls on the shoulders of the trial judge). Two such databases include publicly available databases of defunct businesses and the FCC's official reassigned number database.

In the event that this Court finds that the Defendant has borne its burden of overcoming the presumption that numbers on the Do Not Call Registry are residential (again, not now, but at the class certification stage), the Plaintiff can still plead a class based on the two databases of which his number will be a part, as defined above. First, there exist publicly available databases of defunct businesses or businesses whose telephone numbers have changed, including defunct business registrations with each state's respective Secretary of State. If a query of those databases indicates that the number texted is associated either with a closed business or a business whose telephone number has changed, then it would be fair for this Court to conclude that those numbers are not business numbers and thereby ascertain class membership on that basis. Relatedly, if the number previously associated with a business was reassigned to another subscriber, just as Mr. Connor's number was, it would appear on the FCC's Reassigned Number

Database, which such database reflects that the Plaintiff's number was reassigned on January 6, 2022. Critically, Courts have certified classes both based on the use of skip-tracing databases and the reassigned number database. *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) (altering class definition to include people whose numbers were obtained using inaccurate skip tracing); *Samson v. United Healthcare Servs. Inc.*, No. 2:19-CV-00175, 2023 WL 6793973, at *5 (W.D. Wash. Oct. 13, 2023) (certifying reassigned number class); *Hylton v. Titlemax of Virginia, Inc.*, No. 4:21-CV-163, 2022 WL 16753869, at *4 (S.D. Ga. Nov. 7, 2022) (denying defense motion for summary judgment on reassigned number issue).

In any event, the Defendant's motion to deny class certification puts the proverbial cart before the horse. Discovery has not yet opened in this matter, and the Plaintiff is not yet required to seek class certification. The Plaintiff intends to and will move for class certification at the appropriate juncture and plead appropriate facts tending to show that the class he seeks to certify is eminently ascertainable, either because the numbers are presumptively residential, or because the numbers are otherwise ascertainable through databases of which he is a part. Because the Defendant has not cited to any case, let alone made a showing, that denial of class certification is appropriate or even warranted at the pleadings stage, this motion to deny class certification should also be denied.

RESPECTFULLY SUBMITTED AND DATED this September 19, 2024.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
*Perrong Law LLC*
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

18

*/s/ Anthony Paronich*
Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100


*Attorneys for Plaintiff and the Proposed Class*