# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF COLORADO

| | |
|---|---|
| JAY CONNOR, individually and on behalf of all others similarly situated, | Case No. 1:24-cv-02286 |
| Plaintiff, <br> v. | **JURY TRIAL DEMANDED** <br> **CLASS ACTION** |
| SERVICEQUIK INC. d/b/a ZING BUSINESS MANAGEMENT SOFTWARE | |
| Defendant. | |

## **MOTION FOR ANTI-SUIT INJUNCTION**

Two days after finding out that it was being sued in this federal court action, Defendant, Servicequik Inc., filed a self-styled "Motion to Amend and for Summary Judgment" in a closed and dismissed South Carolina state court action arising out of one of the same causes of action as here. The purpose of this motion, attached herein as Exhibit A, is twofold. For one, the motion for summary judgment is intended to short-circuit this Court and request that the South Carolina court reopen a case it dismissed, at the Plaintiff's request and via court order, without prejudice on August 19, 2024, attached herein as Exhibit B. That dismissal, which was without prejudice, had the effect of disposing of the South Carolina state court action so that this class action could be filed in this District. The second purpose of the motion is to have the South Carolina court *preempt* this Court on the question of TCPA and SCTPPA liability, asking *that* court to resolve a dismissed case via a *post-hoc* summary judgment motion and thus resolve Plaintiff's claims in this Court under the veil of summary judgment with *res judicata* effect.

While Plaintiff Jay Connor has and will diligently pursue his TCPA and state law telemarketing claims against Defendant in this Court, Defendant's motion for summary judgment against him in South Carolina state court threatens this Court's ability to adjudicate this case under its own jurisdiction. At least two grounds authorize this Court to enjoin Defendant from continuing with their improper motion against Mr. Connor in South Carolina.

*First*, this Court can issue an anti-suit injunction as "necessary in aid of its jurisdiction." 28 U.S.C. § 2283. Such an injunction is proper where it "may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coastline R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 295 (1970). That standard is readily met here.

*Second*, this Court can also issue an anti-suit injunction to prevent irreparable harm to Connor that is threatening to occur by virtue of the pending motion in South Carolina state court, because the Defendant is insisting for an adjudication on the merits *of a dismissed case* via the South Carolina summary judgment mechanism. If the South Carolina court improperly considers and grants the Defendant's motion, the bell cannot be unrung. Such a holding, though procedurally and substantively improper, would have impermissible *res judicata* effect, thus further standing as a basis to enjoin Defendant's advancement of its improper motion. *See In re Rare, LLC*, 298 B.R. 762, 769 (Bankr. D. Colo. 2003) (holding anti-suit injunction was proper when French court judgment prevented shipment of wine).

2

And given that continuation of the *dismissed* South Carolina state court action serves no legitimate purpose, the balance of equities likewise justifies the equitable remedy of an anti-suit injunction. As such, this Court should enjoin Defendant from advancing its Motion to Amend and for Summary Judgment or otherwise seeking to reopen the dismissed South Carolina state court action, preserve the *status quo*, and enjoin any ruling on the motion.

## FACTUAL AND PROCEDURAL BACKGROUND

It bears clarification the posture that this case comes to this Court. In sum, a lawsuit asserting one of the claims in this action, violations of the SCTPPA, was originally filed by the Plaintiff, proceeding *pro se*, in state court in South Carolina, where the Plaintiff resides. Plaintiff and Defendant conducted limited discovery in that action. During the pendency of that action, counsel for Defendant suggested that Plaintiff obtain a lawyer. Because discovery revealed an appropriate basis for asserting both federal and state law class action claims against Defendant, the Plaintiff moved to voluntarily dismiss the South Carolina state court action without prejudice. The South Carolina court granted that motion on August 19, 2024. (Exhibit B).

Plaintiff then retained the undersigned class action counsel which then filed this action in Colorado, where the Defendant is located, that same day. (ECF No. 1). Thereafter, as a result of a clerical error, counsel for Plaintiff filed an Amended Complaint properly asserting class action claims, as originally intended, on August 21. (ECF No. 6). Thereafter, Defendant was served with the Amended Complaint on August 26. (ECF No. 9).

Two days later, Defendant filed a self-styled "Motion to Amend and for Summary Judgment," attached herein as Exhibit A, in the *dismissed* South Carolina state court action. That motion seeks three things. *First*, it seeks to re-open the dismissed case. *Second*, it requests a summary judgment adjudication on the merits, which would have the effect of dismissing the South Carolina action *with* prejudice and thus result in *res judicata* effect, further divesting this Court of its own, superior, jurisdiction. *Third*, it seeks a declaration that the Plaintiff, who was proceeding *pro se* in the South Carolina action, acted for an improper purpose, thereby entitling Defendant to its attorneys' fees. Put another way, Defendant has invited the South Carolina state court to resolve Plaintiff's federal claim under the auspices of summary judgment.

## LEGAL STANDARD

The requested injunction is both permissible and necessary. First, the All Writs Act empowers federal courts to enjoin interfering state proceedings in aid of their own federal jurisdiction. Second, the circumstances of this case fall within one of the statutory exceptions to the Anti-Injunction Act ("AIA"), which otherwise limits the power of federal courts to enjoin state court proceedings under the All Writs Act. And third, the balance of equities necessitates the requested relief. Plaintiff discusses the legal standard for each issue in turn.

The All Writs Act grants district courts the authority to enjoin parallel litigation in both federal and state courts under certain circumstances. The statute provides that courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). This includes the ability to enjoin parties from engaging in litigation in another court. *See*

*In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 762 (7th Cir. 2017).

The equitable authority afforded by the All Writs Act is circumscribed, to an extent, by the Anti-Injunction Act. *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 261 F.3d 355, 365 (3d Cir. 2001) ("The All Writs Act acts in concert with the Anti-Injunction Act to permit the issuance of an injunction.") (cleaned up). The AIA provides that a "court of the United States may not grant an injunction to stay proceedings in a State court except [1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments." 28 U.S.C. § 2283. In addition, courts have also recognized a fourth exception justifying intervention in such cases "where there has been an adequate showing of irreparable injury." *See, e.g.*, *In re Rare, LLC*, 298 B.R. at 769; *In re Coordinated Pretrial Proc. in Antibiotic Antitrust Actions*, 520 F. Supp. 635, 662 (D. Minn. 1981).

Because the generic four-part test for preliminary injunctions provides an awkward fit in cases contemplating injunctions of state and foreign proceedings, district courts have no obligation to employ it in such contexts. *Quaak v. Klynveld Peat Marwick*, 361 F.3d 11, 20 (1st Cir. 2004). Rather, the Circuit Courts of Appeal to consider the issue have turned to principles of a balance of equities to determine if an anti-suit injunction is necessary. When an injunction is otherwise permissible under the Anti-Injunction Act, courts will instead weigh the more general "principles of equity, comity, and federalism." *Wyly v. Weiss*, 697 F.3d 131, 144 (2d Cir. 2012); *1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.*, 634 F. Supp. 3d 158, 171 (S.D.N.Y. 2022). Here, the equities counsel in favor of enjoining the South Carolina proceedings and enforcing the *status quo*: the court-ordered dismissal without prejudice in South

5

Carolina, permitting the instant suit to proceed before this Court.

## **ARGUMENT**

### 1. The All Writs Act, as Limited by the Anti-Injunction Act, Affords the Relief Requested

To be sure, the All Writs Act is not frequently used in federal courts because lawyers typically do not engage in parallel, piecemeal, *post hoc* attempts at litigation in an alien forum, as here. However, when they do so, the All Writs Act affords relief enabling the superior federal courts to issue all writs necessary in aid of their respective jurisdiction. Indeed, just this year, the Northern District of West Virginia enjoined a parallel state court TCPA declaratory judgment action from proceeding in Puerto Rico. *Mey v. Pintas*, No. 5:24-CV-55, 2024 WL 2814701, at *5 (N.D.W. Va. May 17, 2024). In so doing, the Northern District held that, although "limited" by the AIA, when a district court was asked to enjoin proceedings in a state (or territorial) court, an injunction was appropriate because permitting the Puerto Rican action to proceed would "render the exercise of the federal court's jurisdiction nugatory[.]" *Id.* (citing *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196 (7th Cir. 1997)). Put another way, the court in that case held that an injunction was necessary to prevent the territorial court in Puerto Rico from rendering a declaratory judgment that would impair the federal court's ability to adjudicate the related TCPA claims.

Here, as in *Mey*, the requested injunction falls within the second exception, providing for injunctions "necessary in aid of its jurisdiction." Although there is no Tenth Circuit case law directly on point, the Seventh Circuit has outlined that a state court threatens a federal court's jurisdiction "if the state court reaches a final decision first,

6

thus potentially resulting in claim and issue preclusion." *In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 765 (7th Cir. 2017). These considerations are all the more palpable here, because the Plaintiff is not merely trying to enjoin a state court action from proceeding. Rather, the Plaintiff is seeking to enforce his interests and justifiable reliance on a *dismissal* of the action in the state court, without prejudice, whereby he was permitted to file *this* federal Court action. *Asset Allocation & Mgmt. Co. v. W. Emp'rs Ins. Co.*, 892 F.2d 566, 572 (7th Cir. 1989) (holding district court had discretion to issue anti-suit injunction where there were two actions between the same parties involving identical issues).

In further delineating the AIA's second exception, the Supreme Court has held that it applies in instances where it "may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coastline R. Co.*, 398 U.S. at 295. In interpreting the standard set forth by the Supreme Court in *Atl. Coastline*, the Fourth Circuit has remarked that this exception, as well as the judgment enforcement exception, afford the requested relief where it is necessary to "prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *In re Am. Honda Motor Co., Inc. Dealership Relations Litig.*, 315 F.3d 417, 439 (4th Cir. 2003). In other words, the Circuit Courts of Appeal routinely uphold federal courts' exercise of injunctions against state court proceedings, particularly when, as here, the state court proceedings threaten to make the ongoing progress of the federal case unmanageable. *See, e.g., Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 197 (3rd

7

Cir. 1993) (holding injunction was appropriate when federal class action settlement was imminent); *In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985) (upholding injunction in multi-district litigation); *Winkler*, 101 F.3d at 1196 (holding injunction of state court actions was warranted to preserve orderly pretrial discovery in multi-district litigation).

      Here, the circumstances of the South Carolina litigation, as well as the Defendant's attempts to re-open and re-litigate issues now proceeding in this court, not only threaten to divest this Court of its jurisdiction and risk conflicting judgments, but essentially attempt to re-litigate and raise new defenses to the federal claims asserted here under the guise of summary judgment. Defendant does so under state law in the hope that the South Carolina court grants much the relief requested in its motion to dismiss. Should the court do so, then Defendant will presumably leverage the doctrines of *res judicata*, issue preclusion, and claim preclusion (at the very least as to the state law claims) to deprive this Court of its authority not only to adjudicate Connor's claims, but to adjudicate the claims of many thousands of putative class members. That the South Carolina action threatens to deprive this Court of jurisdiction compels this Court's intervention.

      What's more, this case is nothing like the limited subset of cases where courts have denied intervention. Unlike in some cases, where the effects of *res judicata* of a properly pending action, standing alone, are insufficient to warrant an anti-suit injunction, the circumstances here show that the motion filed in the South Carolina court, after this action was filed and served, was presented improperly. This is because it attempted to re-litigate a *dismissed* action in state court, with a parallel action

8

proceeding, and already served, in federal court. This Court need look no further than Defendant's own pleadings to arrive at this conclusion. There, Defendant admits that it brought the motion to preclude the case from "bring it [sic] federal court in a different state where Defense counsel is not licensed." (Ex. A, p. 2). And, when asked to withdraw the South Carolina motion, counsel for the Defendant refused to do so, stating that it would not consent to a "withdrawal of the important motion in South Carolina."

In addition, a second, independently sufficient reason tips the scales in favor of an injunction here. The motion filed in South Carolina urges the South Carolina court to re-open the dismissed case and make a ruling on the Plaintiff's standing based on false and irrelevant allegations about the Plaintiff's litigation history and use of his telephone number almost identical to those it makes in its motion to dismiss here. Should the South Carolina court rule on the issues presented in the motion, issues that the Defendant here attempts to re-present in this Court in the form of a motion to dismiss, the South Carolina court will have effectively deprived this Court of its jurisdiction and ability to hear and independently adjudicate the motion to dismiss. Nothing could remedy this effective deprivation of a federal court's authority by a state trial or even state appellate court, let alone by impermissibly reopening a dismissed matter.

 2.  **The Case Law Shows the Balance of Equities Warrants Relief**

As discussed above, in evaluating this motion, this Court does not look to the traditional four-part preliminary injunction test, but rather considers whether a balance of the equities, consistent with the principles of equity, comity, and federalism, favor the relief requested. The balance of the equities unquestionably counsels enjoining any further action in South Carolina. The balance of equities especially tips in favor of

issuance of an injunction when the impending state court action is vexatious, harassing, or brought for an improper purpose, as the interest in preserving federalism and comity with the state courts is not significantly disturbed by the issuance of injunctive relief. *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1335 (5th Cir. 1981), *cert. denied*, 456 U.S. 936 (1982). For the three foregoing reasons, the balance of equities also tips in favor of granting the requested injunction.

**First**, the South Carolina motion is legally and procedurally improper. As has been noted, Plaintiff sought and obtained a *court order* dismissing the South Carolina lawsuit without prejudice. Two days after this action was *served* (not just filed), Defendant filed the South Carolina motion in an attempt to divest this Court of its jurisdiction. Defendant admits as much in the motion itself. It goes without saying that attempting to seek summary judgment on a dismissed case is already legally and procedurally suspect as an initial matter. This is doubly so because Defendant *admitted* that it had actual notice of this active action now proceeding before this Court, but filed the motion in South Carolina anyway. This is not to mention the fact that the motion itself essentially asks a state court to rule, on summary judgment, on nearly identical issues and defenses to those raised in a motion to dismiss before this federal court, essentially rendering an advisory opinion. *See Transamerica Life Ins. Co. v. Daibes Gas Holdings Atlanta, L.L.C.*, No. CV 18-10869 (SRC), 2018 WL 5033755, at *5 (D.N.J. Oct. 17, 2018) (holding that request for declaratory relief in another lawsuit was in essence a request for an advisory opinion).

The South Carolina motion is simply a maneuver to avoid resolution of federal claims by a federal court. In doing so by attempting to dispose of the state law claims

asserted there on "standing" grounds, Defendant is attempting to preempt this Court on the question of TCPA liability and the federal class action claims asserted here under a private right of action created by Congress for the specific purpose of enforcing an important federal interest, thus attempting to defeat the jurisdiction of the federal courts. *See In re Am. Honda*, 315 F.3d at 437; *In re Diet Drugs*, 369 F.3d 293, 301 (3d Cir. 2004) (holding bad faith conduct supported injunction). If Defendant's strategy is allowed to stand, it would effectively end federal courts' ability to adjudicate claims when actions are pending in state court and would also set a dangerous precedent with palpable federalism concerns, such as potentially allowing state courts to interfere with cases removed to federal courts, multidistrict litigation, and other matters.

**Second**, the South Carolina motion has not only the markings and hallmarks of, but is admitted to be, brought to short-circuit *this* Court's adjudicative authority. Such a motion wastes judicial resources, is improper, and runs contrary to the principals of federalism, as well as common sense. Principles of comity and federalism dictate that this action, not the dismissed South Carolina action, is the proper one, necessitating an injunction.

For starters, the Plaintiff here, unlike in the South Carolina action, is represented by experienced class action counsel with decades of experience prosecuting almost exclusively the same type of claims at issue here. Unlike the South Carolina action, which asserted only state law claims, this action also asserts claims under the TCPA, an important federal statute. Most importantly, this case is proceeding as a putative class action, not an individual case, seeking to vindicate the rights of the thousands of recipients of the text messages Defendant sent to numbers on the Do Not Call Registry

11

without consent. Nothing justifies the South Carolina court from short-circuiting the process before this Court, where the Plaintiff is represented, asserts an additional claim, and which will seek class certification based on evidence of classwide conduct.

Moreover, not only has the Defendant not waived any defenses by virtue of proceeding here in federal court, but the Defendant also actually possesses *more* defenses and practicalities that justify proceeding here. The Defendant has already availed itself of a second suck of the sav in making a motion to dismiss premised on much the same defenses as the summary judgment motion in the state court action. The Defendant is located here. It will have a fair opportunity to conduct additional discovery on the class claims, will have an opportunity to object to class certification, have an opportunity for summary judgment, and a jury trial, in addition to the panoply of ancillary remedies provided for by the Federal Rules. In sum, by proceeding here and granting the injunction, the Defendant not only suffers no prejudice, but suffers *less*.

**Third**, the prejudice to the Plaintiff here is great and will be incapable of redress should the South Carolina court rule on the motion. The after-the-fact motion for summary judgment Defendant sought in the South Carolina case has none of the procedural or other safeguards that Plaintiff possesses in this action, yet all the preclusive effect. As has been noted, the Plaintiff in the South Carolina case filed and begun to prosecute the action there *pro se*, which already put him at a disadvantage. Then, he did not have an adequate opportunity to seek discovery into the issues raised by the Defendant for the first time at its snap and *ex post facto* motion for summary judgment. By virtue of the motion being filed in a dismissed case, it deprived Plaintiff of discovery into facts that may have been available to him in discovery to meet the motion

12

as nonmovant. Moreover, the claims at issue here are broader than those asserted in the state court action, as this action asserts both additional federal claims as well as a putative class of other individuals similarly situated. Such broader scope necessarily requires additional, broader discovery, of which the Plaintiff was unquestionably deprived of in the South Carolina action.

If the South Carolina court rules on the motion, it will necessarily have made a ruling as to the Plaintiff's standing and usage of his residential telephone number of nearly the same ilk as this Court here is asked to resolve at the motion to dismiss stage. It will have done so without applying any TCPA-specific case law, facts, or statutory interpretation related to those claims, or discovery related to them, because they were simply not pled in that action. To be sure, the Plaintiff unquestionably has standing, and his number is unquestionably residential. But if, even through no fault of Plaintiff or his counsel here, the South Carolina court holds that the Plaintiff lacks standing to assert at least some of the claims asserted here, the South Carolina court will necessarily have adjudicated unpled claims and defenses which were also not subject to corresponding discovery into them, not to mention those of the putative class, which were also absent. These considerations, as well, present a real threat of irreparable harm and one-sidedness which counsel in favor of an injunction under both the judgment exemption to, as well as the case law interpreting, the Anti-Injunction Act.

## **CONCLUSION**

For the foregoing reasons, the requested injunction is both permissible and necessary to protect this Court's own jurisdiction and isolate both Plaintiff and the putative class from irreparable harm. As such, Plaintiff moves this Court for an order

enjoining the Defendant from proceeding in any manner in the South Carolina case and further enjoining any action in the South Carolina case, including adjudication of the Defendant's pending motion, thus preserving the *status quo* therein of a dismissal without prejudice.

RESPECTFULLY SUBMITTED AND DATED this October 3, 2024.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
*Perrong Law LLC*
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*

## **LOCAL RULE 7.1(a) CERTIFICATE**

We certify that we attempted to confer with counsel for the Defendant regarding the relief requested herein, including on September 11, 2024, where counsel stated that he would not withdraw the "important motion in South Carolina," and further on October 2, 2024, with a draft copy of the motion, and failed to receive a response.

Dated: October 3, 2024

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

*Perrong Law LLC*
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*

## **CERTIFICATE OF SERVICE**

We certify that we filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: October 3, 2024

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
*Perrong Law LLC*
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100
*Attorneys for Plaintiff and the Proposed Class*