IN THE UNITED STATES DISTRICT COURT

DISTRICT OF COLORADO

| | |
|---|---|
| JAY CONNOR, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>SERVICEQUIK INC. d/b/a ZING BUSINESS MANAGEMENT SOFTWARE<br><br>　　　　　　　　Defendant. | Case No. 1:24-cv-02286<br><br>**JURY TRIAL DEMANDED**<br>**CLASS ACTION** |

## REPLY IN SUPPORT OF MOTION FOR ANTI-SUIT INJUNCTION

Plaintiff Jay Connor, by and through the undersigned counsel, submits this reply in support of his motion for an anti-suit injunction to prevent Defendant ServiceQuik Inc. ("Defendant") from continuing with its motion in the South Carolina state court. The Defendant's arguments in opposition mischaracterize both the applicable legal standard and the significance of the *Mey* decision, which aligns squarely with this case. Defendant's actions in South Carolina seek to undermine this Court's jurisdiction and improperly seek to impose *res judicata* effects on Plaintiff's pending claims.

In filing for an anti-suit injunction, Plaintiff has sought a remedy necessary to protect this Court's jurisdiction over his claims under the TCPA and SCTPPA. Plaintiff dismissed the South Carolina action without prejudice specifically to assert these claims in a proper federal venue. The Defendant, dissatisfied with this dismissal, has now engaged in a transparent maneuver to have the state court "re-open" and impose a *res judicata* effect on claims pending before this Court. Granting the motion is therefore

essential to prevent interference with this Court's jurisdiction and to ensure that Plaintiff's, and the class's, claims against Defendant proceed in this forum.

## ARGUMENT

**1. Defendant Does Not Apply the Appropriate Legal Standard**

The All Writs Act and the Anti-Injunction Act together provide that federal courts may issue injunctions to protect their jurisdiction or to prevent interference by state courts. Contrary to Defendant's focus on the so-called "importance" of its South Carolina motion, the proper standard under the Anti-Injunction Act is whether the injunction is "necessary in aid of [this Court's] jurisdiction." *Atlantic Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 295 (1970). The Anti-Injunction Act does not permit this Court to enjoin state proceedings solely based on convenience, but it does allow for such an injunction where the state action, as here, threatens to "seriously impair the federal court's flexibility and authority to decide that case." *Id.* Courts routinely issue anti-suit injunctions where, as here, a state court proceeding jeopardizes the federal court's ability to adjudicate the matter. See *Mey v. Pintas*, No. 5:24-CV-55, 2024 WL 2814701, at *5 (N.D.W. Va. May 17, 2024).

Defendant's response in opposition to this motion fails to meaningfully engage with the "necessary in aid of jurisdiction" standard set forth by *Atlantic Coast Line*. By failing to address this standard, Defendant implicitly acknowledges that its South Carolina motion does indeed pose a risk of interference. Instead, Defendant insists that its motion in South Carolina is "important" and posits that the Plaintiff was "dissatisfied" with the South Carolina state court. However, the importance of a state proceeding, nor

the Plaintiff's dissatisfaction, are recognized exceptions under the Anti-Injunction Act, which focus instead on preventing interference with federal jurisdiction.

Defendant's reliance on South Carolina case law and its reference to the "importance" of its motion there does not meet the federal standard for opposing an injunction of state court proceedings. State standards of relevance or importance have no bearing on the ultimate question of whether an anti-suit injunction is *necessary in aid of federal jurisdiction*. Defendant's emphasis on South Carolina's interests in deciding its motion is misplaced; federal courts are empowered to protect their jurisdiction, especially in cases where a federal statute like the TCPA is at issue. The lack of any substantive response to the proper federal standard reveals the weakness of Defendant's position, and the Court should construe it as further evidence of its intent to frustrate federal jurisdiction.

Defendant's motion in South Carolina threatens precisely the type of interference the All Writs Act and Anti-Injunction Act seek to prevent by potentially preempting Plaintiff's TCPA claims and depriving this Court of its rightful jurisdiction, just as in *Mey*. The legal reasoning articulated in the *Mey* decision illustrates this principle well. In *Mey*, the federal court found it necessary to issue an injunction *precisely because* the state court's putative interests did not outweigh the federal court's need to maintain jurisdiction over a federal claim. Here, too, the federal interest in enforcing TCPA claims supersedes any state procedural concerns, and Defendant's arguments to the contrary are an improper attempt to avoid accountability under federal law and divest this Court of its own jurisdiction.

## 2. *Mey v. Pintas* Is Directly Applicable

Defendant dismisses *Mey v. Pintas* as irrelevant, despite its direct relevance. In *Mey*, a federal plaintiff was faced with a prior retaliatory state court action designed to impede the federal court's jurisdiction over later-filed TCPA claims. The federal court issued an anti-suit injunction, reasoning that the state action would interfere with the federal claims and noting the defendant's bad faith in filing in a jurisdiction with no real connection to the case. Like the defendants in *Mey*, Defendant here is attempting to use state court proceedings to obstruct federal jurisdiction.

In this case, Plaintiff voluntarily dismissed the South Carolina action to pursue TCPA claims on behalf of a class in this federal forum. Indeed, the motion for summary judgment filed by the defendant was admittedly filed <u>*after*</u> the dismissal was entered in the case. Defendant's attempt to re-litigate issues through a state court summary judgment motion is a thinly veiled attempt to undermine the federal class action now pending here. By reopening a dismissed case in state court, Defendant seeks to prevent this Court from adjudicating claims expressly designed by Congress for federal adjudication under the TCPA.

Defendant also misinterprets the circumstances of *Mey* in an attempt to distinguish its applicability here, but it identifies distinctions without differences. The Puerto Rican court in *Mey* explicitly held that it did, in fact, enjoy personal jurisdiction over Mey and that the complaint was appropriately made in Spanish. In fact, discovery was proceeding in that matter at the time the injunction was granted. Mey retained Puerto Rican counsel conversant in the language in an attempt to challenge the case on jurisdictional grounds, but those efforts were unsuccessful. In any event, jurisdiction is a

4

non-issue here, as the defendant is headquartered and has its principal place of business in Colorado.

That the bad faith in Mey arose out of a perception that the action was a SLAPP action is also of little consequence. It is evident that the Defendant here is nevertheless attempting to further improper purposes by continuing the state court action in South Carolina by attempting to reopen a case that had already been voluntarily dismissed, and attempting to seek a judgment on the merits, which would have *res judicata* effect. Nor are the Plaintiff's actions untoward. Nothing about what the Plaintiff did was procedurally or substantively improper: South Carolina state law permitted him to seek to dismiss the case, and the Court granted this dismissal. He did so in order to obtain counsel and proceed in this case as a putative class action alleging both state and federal claims, which was promptly filed, and which is currently being litigated. Because that interest is the same as one in *Mey*, and one that the usages and principles of the law permit, this Court should grant the requested injunction.

### 3. The Balance of Equities Favors an Injunction

The balance of equities weighs heavily in favor of Plaintiff. Allowing Defendant's motion to proceed in South Carolina would irreparably harm Plaintiff's right to pursue his unpled TCPA claims in federal court, as Congress permitted. Defendant has chosen to relitigate a dismissed action in a transparent effort to avoid federal adjudication of Plaintiff's and the class's pled and unpled claims. Given that Defendant suffers no real prejudice by proceeding here, the balance of equities tips decisively in Plaintiff's favor.

In any event, the Plaintiff was not "dissatisfied" with the state court proceedings, a standard that finds no support in the black letter law or an equities analysis. Surely the

5

Plaintiff in *Mey* was "dissatisfied" with the fact that she was being sued in a state court action against her will for asserting TCPA claims. Here, the Defendant is essentially forcing the Plaintiff to litigate on two fronts in an even more egregious example of gamesmanship by attempting to reopen a closed state court action, a textbook action that cries out to this Court for an injunction in aid of its jurisdiction. In any event, what the Plaintiff did was entirely proper. He identified an existing but yet-unpled federal claim, was interested in representing a class of individuals similarly situated, sought and obtained the requisite dismissal in state court, sought counsel who would be interested in representing him and the class, who then filed suit.

Even so, throughout the discovery process in state court, Plaintiff took reasonable and proactive steps to ensure all relevant information would be available to Defendant and to seek the same from the Defendant. Plaintiff's efforts to obtain critical documentation, including correspondence with third-party messaging providers, were necessary to allow a comprehensive deposition, but he did not receive them in advance of the state court deposition at issue, leading to its cancellation. Plaintiff attempted to address these discovery deficiencies with opposing counsel two days before the deposition, emphasizing the importance of the missing information. Defendant responded, stating they expected the deposition to proceed as scheduled and "guessed" the information would be provided beforehand. This vague assurance left Plaintiff with an unclear timeline for receiving the materials, and when the materials still had not been provided the night before the deposition, Plaintiff proposed rescheduling the deposition until the requested documentation was provided.

Plaintiff explicitly communicated that reviewing the missing correspondence and billing information would allow for a thorough deposition and effective case preparation, particularly given the potential involvement of third parties. Plaintiff's communication was transparent, reflecting an intent to receive the requested materials promptly and to proceed once adequately prepared. Plaintiff even proposed coordinating the deposition with other related inquiries to maximize efficiency for both parties. Despite these efforts, Defendant delayed the production of crucial documentation until July 2, 2024, at which point the documents revealed Defendant's failure to scrub numbers as required by law. This revelation validated Plaintiff's initial concerns and, coupled with Defendant's counsel's *very own recommendation* to Plaintiff on the same day for Plaintiff to consider hiring counsel, prompted the instant course of action.

An injunction here would uphold essential principles of federalism by reinforcing the federal court's authority to adjudicate federal claims. The TCPA was enacted to create uniform enforcement standards for telemarketing practices across the United States, underscoring the importance of federal court oversight. Permitting state interference with these federal proceedings, which were not even raised at the state court, would undermine Congress's intent and weaken federal statutory protections for consumers. And, as has been alluded to, this Court possesses a strong jurisdictional interest. The TCPA provides a federal remedy for telemarketing abuses and is explicitly tailored toward federal-level enforcement, including through the Rule 23 class action mechanism. Allowing Defendant's state motion to proceed undermines this Court's ability to administer a TCPA claim and risks duplicative and conflicting judgments

Moreover, the actually relevant balancing test this Court must apply here shows that the equities favor the Plaintiff. Plaintiff will suffer irreparable harm if the South Carolina court proceeds in an *ex post facto* motion for summary judgment, as any adverse ruling may carry *res judicata* effects, preventing this Court from fully adjudicating the TCPA claims. Defendant can fully litigate all relevant defenses and arguments in this federal action. Defendant's insistence on South Carolina jurisdiction is therefore unnecessary and dilatory at best and detrimental to jurisdiction at worst. These factors, on balance, strongly favor the Plaintiff and counsel in support of granting the requested injunction.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant the anti-suit injunction to prevent Defendant from pursuing its motion in the South Carolina state court and maintaining the *status quo* of a dismissal without prejudice. The injunction sought is necessary to protect this Court's jurisdiction, prevent irreparable harm to Plaintiff's federal claims, and uphold the integrity of federal adjudication under the TCPA.

RESPECTFULLY SUBMITTED AND DATED this October 31, 2024.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> *Perrong Law LLC*
> 2657 Mount Carmel Avenue
> Glenside, Pennsylvania 19038
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

We certify that we filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: October 31, 2024

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
*Perrong Law LLC*
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100
*Attorneys for Plaintiff and the Proposed Class*