# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF COLORADO

| | |
|---|---|
| JAY CONNOR, individually and on behalf of all others similarly situated,<br><br>           Plaintiff,<br>   v.<br><br>SERVICEQUIK INC. d/b/a ZING BUSINESS MANAGEMENT SOFTWARE<br><br>and<br><br>WOOSENDER INC.<br><br>           Defendants. | Case No. 1:24-cv-02286<br><br><br>**JURY TRIAL DEMANDED**<br>**CLASS ACTION** |

## PLAINTIFF'S SECOND AMENDED CLASS ACTION[1] COMPLAINT

Plaintiff Jay Connor ("Mr. Connor"), by his undersigned counsel, for this class action complaint against Defendant ServiceQuik Inc., doing business as Zing Business Management Software ("ServiceQuik"), WooSender Inc. ("WooSender"), as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

## I.   INTRODUCTION

1.   <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of

---

[1] The Plaintiff's original complaint erroneously omitted the Plaintiff's class action allegations. Accordingly, the Plaintiff filed an Amended Complaint alleging the class action allegations. This Second Amended Complaint follows.

abusive telephone marketing practices, Congress enacted the Telephone Consumer

Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47

U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged

over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* §

2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety

interests, and commercial freedoms,' *id.* § 2(9)."  *Krakauer v. Dish Network, L.L.C.*, 925

F.3d 643, 649 (4th Cir. 2019).

      2.     "The law opted for a consumer-driven process that would allow objecting

individuals to prevent unwanted calls to their homes. The result of the telemarketing

regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within

the federal government's web of indecipherable acronyms and byzantine programs, the

Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person

wishes to no longer receive telephone solicitations, he can add his number to the list.

The TCPA then restricts the telephone solicitations that can be made to that number.

*See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a

violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a

person when . . . [t]hat person's telephone number is on the "do-not-call" registry,

maintained by the Commission.')…Private suits can seek either monetary or injunctive

relief. *Id.*…This private cause of action is a straightforward provision designed to

achieve a straightforward result. Congress enacted the law to protect against invasions

of privacy that were harming people.  The law empowers each person to protect his own

personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA

affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion

upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.      The Plaintiff also brings this action pursuant to the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code § 37-21-10 *et. seq.*

4.      Mr. Connor alleges that Defendants sent him multiple calls to a number listed on the National Do Not Call Registry, which violates both the TCPA and the SCTPPA.

5.      The SCTPPA prohibits a company from making a call to a South Carolina telephone number that had been registered on the Do Not Call Registry, as Mr. Connor's was prior to receiving the call.

## II.      PARTIES

6.      Plaintiff Jay Connor resides in Charleston, South Carolina.

7.      Defendant ServiceQuik Inc. is a Delaware corporation with its headquarters and principal place of business in Colorado and which sells its services nationwide, including as it attempted to do with Mr. Connor in South Carolina.

8.      Defendant WooSender Inc. is a Pennsylvania corporation with its headquarters and principal place of business in Pennsylvania that is a text messaging platform that was used to send the illegal text messages at issue. Defendant WooSender Inc. offers its services nationwide, including to Colorado companies like ServiceQuik.

## III.      JURISDICTION AND VENUE

9.      Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a

3

federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claim for violation of the SCTPPA relates to the same telemarketing campaign as the TCPA claim.

10.    <u>Personal Jurisdiction</u>: The Court has general personal jurisdiction over Defendant ServiceQuik because it is headquartered and has its principal place of business in Colorado. The Court has specific personal jurisdiction over Defendant WooSender because it contracted with a Colorado corporation to send the illegal text messages complained of here, including signing the contract for those services in Denver, Colorado.

11.    <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the acts giving rise to the cause of action here, the illegal text messages, were orchestrated from this District.

## IV.    FACTS

### A.    The National Do Not Call Registry

12.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).

13.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

14.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private

4

right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.     The SCTPPA**

15.     On May 18, 2018, the State of South Carolina signed into law the South Carolina Telephone Privacy Protection Act, S.C. Code § 37-21-10 *et. seq.*

16.     The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to initiate, a telephone solicitation to a South Carolina telephone number that has been listed on the National Do Not Call Registry. *See* S.C. Code § 37-21-70.

17.     The SCTPPA also requires, at the outset of a telephone solicitation, that a telephone solicitor shall provide, in a clear and conspicuous manner, a first and last name to identify himself and provide the name of the person on whose behalf the telephone solicitation is being made. *See* S.C. Code § 37-21-40.

18.     The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA. S.C. Code § 37-21-80. The SCTPPA also provides for an award of attorneys' fees and costs. *Id.*

**C.     Unsolicited Telemarketing to Plaintiff**

19.     Plaintiff Connor is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

20.     Plaintiff's residential telephone number is (843)-XXX-XXXX.

21.     843 is a South Carolina area code.

22.     Plaintiff personally placed the number on the National Do Not Call Registry in 2022.

5

23.     The number is a residential telephone line because it is assigned to a wireless, cellular telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

24.     The number is in Mr. Connor's name and he pays the bill from his personal financial accounts.

25.     Mr. Connor uses the number for personal, residential, and household reasons, for example, to contact family, friends, and acquaintances, including his parents and siblings, to navigate, and to time and alarm various household tasks.

26.     Mr. Connor does not use the number for business reasons or business use and the number is not registered in the name of a business.

27.     Plaintiff Connor never consented to receive calls from Defendants.

28.     Plaintiff Connor never did business with Zing Business Management Software or WooSender.

29.     Despite this, Plaintiff received two text messages from the telephone number 720-927-8973 on February 23, 2024 at 18:41z, which were sent using WooSender's platform at Defendant ServiceQuik's direction.

30.     The first message read, "Hi, this is Sally from Zing website design. We're offering a fully built website for only $19/ month for businesses like Arbor Craft Builders- no contrac"

31.     The second message read, "t! Can I send you a sample of our work? Reply "not interested" to opt out"

32.     The fact that Plaintiff received two text messages is confirmed by the

Plaintiff's telephone logs from his cell phone company, AT&T, which confirm that he was

billed for two messages, not one:

| Incoming Text/Message | 720-927-8973 | 2/23/2024 | 12:41:16 PM CST | NA | $0.00 |
| Incoming Text/Message | 720-927-8973 | 2/23/2024 | 12:41:16 PM CST | NA | $0.00 |

33.     The Plaintiff is not Arbor Craft Builders and has no relationship or

connection with Arbor Craft Builders.

34.     Defendant ServiceQuik obtained the list of telephone numbers it contacted

using this illegal SMS text message campaign from an individual named Dara Komarac

on Fiverr, a website that sells goods and services for five dollars.

35.     The numbers were never represented as having any consent to contact

their recipients.

36.     Defendant ServiceQuik used a third-party text messaging platform named

WooSender to send the text messages.

37.     Defendant WooSender operates a text messaging platform that provides

turnkey texting services, for illegal callers like ServiceQuik, nationwide.

38.     Defendant WooSender hosts all the requisite computer software to enable

illegal automated calling.

39.     Furthermore, Defendant WooSender boasts that it will hold its customers'

hands while using their platform, as well as provide an AI to maximize sales, stating:

> At Woosender, we prioritize top-tier AI support. Our 24/7 live chat ensures help is
> always at your fingertips, and you can instantly schedule calls for immediate
> assistance. Dive into our daily strategy sessions via interactive group calls,
> where you can engage and learn with others. Plus, in your first 30 days, benefit
> from the expertise of a dedicated AI specialist who is attuned to your specific
> goals and KPIs. With us, it's not just about fixing issues; it's about optimizing your
> AI journey for success!"

7

*Convert More Leads Into Sales With WooSender AI Platform!*, WOOSENDER,
https://woosender.com/ [https://archive.md/mOqjF].

40.    Defendant WooSender's involvement in their customers' illegal calling

conduct goes gar beyond merely providing the platform that enables them to send

messages. In addition to actually setting up and providing intimate support for their

customers' campaigns and strategies, Defendant WooSender also shields their

customers by registering the telephone numbers used to contact customers in their own

name.

41.    Defendant ServiceQuik used the services provided by Defendant

WooSender to send out the text message blasts, such as the one Plaintiff received, *en*

*masse*, in the hopes of reaching interested customers.

42.    WooSender allows persons sending text messages using its platform to

scrub against numbers on the National Do Not Call Registry for an extra fee.

43.    However, Defendant ServiceQuik did not pay the fee and therefore did not

scrub any of the approximately 360,000 text messages it sent as part of this

telemarketing campaign against the Do Not Call Registry.

44.    In so doing, WooSender explicitly designed its platform to give its

customers the option of complying with the law or not. WooSender permitted the

messages at issue to be sent to the Plaintiff despite the fact that the Plaintiff's number

was on the National Do Not Call Registry and without demanding any assurances that

the calls were scrubbed against the Registry from their customers. WooSender

knowingly turned a blind eye to the fact that their customers were violating the

Registry.WooSender is therefore liable for the text messages because it sent them

without requiring compliance with the Do Not Call Registry.

8

45.     The FCC has consistently held that a telemarketing platform provider

involved in the calling conduct, like Defendant WooSender, may be "deemed to have

initiated [the calls], considering the goals and purposes of the TCPA." *Rules and*

*Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory*

*Ruling and Order*, 30 FCC Rcd 7961, 7980 (2015).

46.     Courts have consistently applied this principle of platform liability to other

providers, like Defendant WooSender, that provide the average end user the ability to

send illegal calls using their platform, and held such providers liable under it, just as if

they had placed the calls themselves. *Cunningham v. Montes*, 378 F. Supp. 3d 741,

750 (W.D. Wis. 2019) (holding owner of calling platform personally liable for the actions

of its clients); *Spiegel v. EngageTel Inc.*, 372 F. Supp. 3d 672, 682, 686 (N.D. Ill. 2019)

(denying summary judgment for defendant on platform issue).

47.     As evidenced through the plain text of the message, the message also did

not identify the sender by first and last name, nor did it identify the true, legal corporate

identity of "Zing website design."

48.     The text messages received by Plaintiff were sent for the purpose of

encouraging the purchase or rental of, or investment in, property, goods, or services as

they seek to have him purchase the Defendant ServiceQuik's website design services.

49.     Under the TCPA, as confirmed by the Supreme Court, text messages are

"calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153

(2016).

50.     The calls were nonconsensual encounters.

9

51.     Indeed, as described, the Defendants had the opportunity to scrub the numbers they sent the text messages to against cell phones included on the Do Not Call Registry, or alternatively obtain prior express written consent to contact them, but did not.

52.     Plaintiff never ever did business with the Defendants.

53.     Plaintiff's privacy has been violated by the above-described telemarketing messages.

54.     The aforementioned messages to the Plaintiff were unwanted.

55.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their storage space, network resources, bandwidth, and battery life, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

57.     Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing text message or call from or on behalf of Defendant WooSender, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**National DNC – ServiceQuik SubClass:** All persons in the (1) National DNC Class who (2) received telemarketing calls pitching ServiceQuik's products and services.

**South Carolina TPPA Class:** All persons in the United States who have (1) South Carolina telephone numbers, (2) on the National Do Not Call Registry and received a telemarketing text message or call from or on behalf of Defendants (3) at any time in the period that begins four years before the date of filing this Complaint to trial.

58.     **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendants' records, or those of their agents.

59.     **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendants' telemarketing calls and Class members sustained similar injuries and damages as a result of Defendants' uniform illegal conduct.

60.     **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendants have no defenses unique to Plaintiff.

61.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the

11

following:

a.      Whether Defendants obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

b.      Whether Defendants have established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

c.      The corresponding degree of liability as, among, and between, Defendants

d.      Whether any telephone numbers were South Carolina telephone numbers, such as to fit in the South Carolina TPPA Class;

e.      Whether the Defendants sent telemarketing calls or text messages without providing a first and last name;

f.      Whether Defendants should be held liable for violations committed on its behalf, if any; and

g.      Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

62.      **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  There are hundreds of Class members in each Class, such that joinder of all members is impracticable.

63.      In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff

satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

    a.    The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendants;

    b.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

    c.    Defendants have acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

    d.    Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)**

64.    Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

65.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making

13

telemarketing calls, except for emergency purposes, to the Plaintiff and the National

DNC Class despite their numbers being on the National Do Not Call Registry.

66.     The Defendants' violations were negligent, willful, or knowing.

67.     As a result of Defendants' and/or their affiliates, agents, and/or other

persons or entities acting on Defendants' behalf violations of the TCPA, 47 U.S.C. §

227, Plaintiff and members of the National DNC Class presumptively are entitled to an

award of between $500 and $1,500 in damages for each and every call made.

68.     Plaintiff and members of the Class are also entitled to and do seek

injunctive relief prohibiting Defendants from making telemarketing calls to numbers on

the National Do Not Call Registry, except for emergency purposes, in the future.

## SECOND CAUSE OF ACTION
### SCTPPA

69.     Plaintiff repeats the prior allegations of this Complaint and incorporates

them by reference herein.

70.     The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to

initiate, a telephone solicitation to an area code of the state of South Carolina to a

number that is registered on the National Do Not Call Registry.

71.     The SCTPPA allows for aggrieved individuals to initiate an action and

recover

$1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA,

as well as attorneys' fees and costs. S.C. Code § 37-21-80.

72.     As a result of Defendants' and/or their affiliates, agents, and/or other

persons or entities acting on Defendants' behalf violations of the SCTPPA, Plaintiff and

members of the SCTPPA Class presumptively are entitled to an award of either $1,000

14

or $5,000 in damages for each and every violation made, in addition to attorneys' fees

and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

A.      Certification of the Classes as alleged herein;

B.      Appointment of Plaintiff as representative of the Classes;

C.      Appointment of the undersigned as counsel for the Classes;

D.      Attorneys' fees and costs, as permitted by law;

E.      An order enjoining Defendants and/or their affiliates, agents, and/or other

persons or entities acting on Defendants' behalf from making telemarketing calls to

numbers using an artificial or prerecorded voice, absent an emergency circumstance;

F.      An award to Plaintiff of damages and members of the Classes, as allowed

by law; and

G.      Orders granting such other and further relief as the Court deems

necessary, just, and proper.

## V.    DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.


RESPECTFULLY SUBMITTED AND DATED this January 17, 2025.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> *Perrong Law LLC*
> 2657 Mount Carmel Avenue
> Glenside, Pennsylvania 19038
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305

15

a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*