**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

| | |
|---|---|
| JAY CONNOR, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br> v. <br><br> SERVICEQUIK INC. d/b/a ZING BUSINESS MANAGEMENT SOFTWARE <br><br> Defendants. | Case No. 1:24-cv-02286 |

## **PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS**

Attempts by the robocalling industry to blame the victims of their calls are nothing new. Trial and appellate courts have had little trouble rejecting such smear tactics. But now, it has come to this. In its motion (ECF. No. 38) ("Motion" or "Mot."), the Defendant makes a bold assertion, that a plaintiff, who uses the aforementioned cellular telephone number for personal, family and household use, but was reassigned a telephone number erroneously associated with a Google Maps listing through no fault of his own, has lost standing to assert the privacy protections of the TCPA. The proper resolution of Defendant's motion has a boring ending: denial, as similar cases have previously held.

Defendant's attempts at dismissing the case under Rule 12(b)(6) because the calls were allegedly not made to a residential cell phone and because the Plaintiff allegedly received only one text message fare no better. As an initial matter, the text messages were sent to a residential cell phone, which is presumptively a residential, non-business number under the TCPA, which multiple courts and the FCC have confirmed. This fact will be ascertainable in discovery, including expert analysis, through reference to various databases, including the Reassigned Number Database. As to the second point, the Plaintiff's telephone records on this point are dispositive and show the Plaintiff received two text messages. The Plaintiff has pled consistent with these records. Defendant's motion should therefore be denied in its entirety. The fact that Defendant adds outside materials whose factual implications are disputed, doesn't make their motion successful because it is alternatively framed as a Fed. R. Civ. P 12(b)(1) motion, it just makes the relevant facts and accompanying conclusions disputed. Defendant's prayer for relief pivot to convert the motion to summary judgment is also premature, making the proper decision for all three attempts to be denial.

## FACTUAL AND PROCEDURAL BACKGROUND

It bears clarification the posture that this case comes to this Court. In sum, a lawsuit asserting the same claims were originally filed by the Plaintiff, proceeding *pro se*, in state court in South Carolina, where the Plaintiff resides. Plaintiff and Defendant conducted discovery, which revealed, as alleged, that the Plaintiff's number was purchased as part of a list of telephone numbers from an online marketplace. Defendant then loaded this database of telephone numbers into a mass-texting platform of co-Defendant WooSender, explicitly *disabled* the option to scrub the texts against numbers on the Do Not Call Registry, and then blasted the texts to the telephone numbers on the list. After identifying the second text and a cause of action under the TCPA, Plaintiff's motion to dismiss his state court action, without prejudice, was granted by the state court. The Plaintiff then retained the undersigned, who filed this instant action as a class action, against the Colorado Defendants, here in Colorado.

The matter before *this* Court is the Defendant's motion to dismiss and remains before this Court at the pleadings stage. The parties have not conducted additional discovery in this matter besides receipt of responses to Plaintiff's first set of document requests and interrogatories to a single defendant. This response follows.

## LEGAL STANDARD

"Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim

2

showing that the pleader is entitled to relief," in order to give defendant fair notice of what the claim is and its grounds. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014). The requirement to "show" that a pleader is entitled to relief means that a complaint must contain factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Id.* at 679. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* at 678. A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A motion under Rule 12(b)(1) can take one of two forms. Either a facial attack "challeng[ing] the sufficiency of the complaint, requiring the district court to accept the allegations in the complaint as true," or a factual attack, "challeng[ing] the facts upon which subject matter jurisdiction depends." *Paper, Allied—Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005). When reviewing a factual attack on a complaint pursuant to Rule 12(b)(1) supported by affidavits and other documents, the Courts makes its own factual findings. *Holt v. United States*, 46 F.3d 1000, 1002 (10th 1995). Federal courts have repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits because the standards governing the two rules differ markedly, as Rule 12(b)(6) provides greater procedural safeguards

3

for plaintiffs than Rule 12(b)(1). *See, e.g., Davis v. Wells Fargo*, 824 F.3d 333, 348-49 (3d Cir. 2016).

First, proceeding under Rule 12(b)(1) inverts the burden of persuasion; when presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim. *Id.* But under Rule 12(b)(1), the plaintiff must prove the Court has subject matter jurisdiction. *United States ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.,* 190 F.3d 1156, 1160 (10th Cir. 1999) ("If jurisdiction is challenged, the burden is on the party claiming jurisdiction to show it by a preponderance of the evidence.") (citation omitted).

Second, the two rules treat the complaint's factual allegations very differently. Unlike Rule 12(b)(6), under which a defendant cannot contest the plaintiff's well-pled factual allegations, Rule 12(b)(1) allows a defendant to attack the allegations in the complaint and submit contrary evidence in its effort to show that the court lacks jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). "Thus, improper consideration of a merits question under Rule 12(b)(1) significantly raises both the factual and legal burden on the plaintiff. Given the differences between the two rules, 'a plaintiff may be prejudiced if what is, in essence, a Rule 12(b)(6) challenge to the complaint is treated as a Rule 12(b)(1) motion.'" *Davis*, 824 F.3d at 349 (citation and paraphrasing omitted).

The Defendant's motion, however, should be denied under either standard, as too should Defendant's premature attempt to convert the instant motion to one for summary judgment.

## **ARGUMENT**

1.  **The Plaintiff's Complaint Alleges that the His Telephone is Residential.**

Mr. Connor's allegations are straightforward and plain, but they are not legal conclusions. He alleges the facts – this telephone number is not used by him for business and it is a residential telephone line. Mr. Connor alleges that his residential telephone number is (843)-XXX-XXXX. *See* Second Amended Complaint (ECF No. 35) at ¶ 19. Plaintiff placed the number on the National Do Not Call Registry in 2022. *Id.* at ¶ 22. The number is a residential telephone line because it is assigned to a wireless, cellular telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses. *Id.* at ¶ 23. The number is in Mr. Connor's name and he pays the bill. *Id.* at ¶ 24. Mr. Connor uses the number for personal, residential, and household reasons. *Id.* at ¶ 25. Mr. Connor does not use the number for business reasons and the number is not registered in the name of a business. *Id.* at ¶ 26.

The Defendant is correct in asserting that *purely* business telephone numbers assigned to business telephone services are not subject to the protections of the National Do Not Call Registry, which only applies to "residential subscribers." However, its analysis in this regard is off, assuming without any support, and without citing to the *actual statutory text*, that any telephone number which has at any point *ever* been used in connection with a business, is automatically not "residential." This assertion is flatly contradicted by the statutory text and other court decisions.

How does the FCC, the agency charged with implementing rules for Do Not Call Registry, define "residential subscriber" as opposed to "business subscriber?" Quite simply. As with any question of statutory interpretation, the court's inquiry "begins with

5

the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). And, under the TCPA, a "residential subscriber refers to a subscriber to telephone exchange service that is not a business subscriber" and a business subscriber is a "subscriber to telephone exchange service for businesses." 47 C.F.R. § 64.2305(b), (d). This language which excludes only one type of service–telephone exchange services for businesses–from the protections afforded by the DNC. The fact the regulation contains only one exclusion demonstrates that the regulation errs on the side of being overinclusive, not underinclusive.

What's more, the FCC[1] has adopted enhanced protective standards for cellular telephone numbers. To this end, the FCC has established a presumption that "wireless subscribers who ask to be put on the national do-not-call list *are residential subscribers*." *FCC Report and Order*, 18 FCC Rcd. 14014, 14039 (2003) (cleaned up) (emphasis added). This is so, *even if they also use such numbers partially for business purposes.* Indeed, the Fourth Circuit in *Krakauer v. Dish Network, L.L.C*, 925 F.3d 643, 657 (4th Cir. 2019), concluded the TCPA's language was clear and that numbers on the Do Not Call Registry, by virtue of their mere registration, are *presumptively residential*. Courts nationwide have agreed. *See, e.g.*, *Tsolumba v. SelectQuote Ins. Servs.*, No. 5:22-CV-00712, 2023 WL 6146644, at *5 n.3 (N.D. Ohio Sept. 20, 2023) ("This Court therefore joins the majority of courts throughout the country who have held that cell phones like [plaintiff's] are entitled to the TCPA's protection as residential telephones.")

At the pleadings stage, this is sufficient. But even crediting the Defendant's

---

[1] The Federal Communication Commission ("FCC") possesses authority to issue implementing rules and regulations for the TCPA. *See* 47 U.S.C. § 227(c)(1)(A-E) and (c)(2) and (c)(3). Pursuant to that authority, the FCC promulgated regulations relating to the implementation, interpretation of the TCPA. *See* 47 C.F.R. § 64.1200(a)-(m).

6

disputed factual allegations, the Plaintiff does not hold his number out as a business line. *See* <u>Exhibit 1</u>, Affidavit of Jay Connor. Mr. Connor's affidavit makes clear that:

- My residential telephone number is (843)-XXX-XXXX.
- My residential telephone number (843)-XXX-XXXX is a residential telephone line because it is assigned to a wireless, cellular telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.
- My residential telephone number (843)-XXX-XXXX is a number in my name and I pay the bill from my personal financial accounts.
- I use the number for personal, residential, and household reasons, for example, to contact family, friends, and acquaintances, including my parents and siblings.

*Id.* at ¶ 2-5.

To the contrary, the Plaintiff has no connection to "Arbor Craft Builders." *Id.* at ¶ 6. The number at issue is in Mr. Connor's name, he pays the bill and does not use the number for business reasons or registered it in the name of a business. As best the Plaintiff can gather, the Plaintiff was re-assigned a telephone number which used to be associated with Arbor Craft Builders, a defunct business.

Nor does the Plaintiff control Google or have any ability to remove this erroneous search result, which he has nevertheless unsuccessfully attempted, despite not being required to do so. *See* <u>Exhibit 1</u> at ¶ 7.  The Defendant does not assert, nor can it, that the Plaintiff himself listed the number as one for Arbor Craft Builders, nor can they. Inaccurate information on Google is an unfortunate fact of life, but this fact does not stand for the proposition that a residential telephone subscriber somehow loses their privacy protections because of inaccurate information on Google. Indeed, even on far less of a factual record than the one developed here, courts have rejected a defendant's assertion that a number is not entitled to TCPA protections because in the past it may

7

have been used for business purposes. *See e.g. Thomas v. Dun & Bradstreet Credibility Corp.,* 100 F. Supp.3d 937, 943 (C.D. Cal. 2015) (denying motion to dismiss holding "[E]ven assuming the line is used by J and J Thomas, Inc. for business purposes . . . .[nothing] suggests Plaintiff is not the current subscriber, regular user, or intended recipient of the calls to 'his' . . . telephone.").

Defendant cites no case law for that shaky proposition. The sole case cited by the Defendant, *Bank v. Indep. Energy Grp. LLC*, No. 12-CV-1369, 2014 WL 4954618, at *4 (E.D.N.Y. Oct. 2, 2014) (cleaned up), *denied* the motion to dismiss, holding:

> Defendants claim that the number involved in this case has been held out to the public by Bank to be the business number of his law firm. They argue that Bank lists the phone number on his professional letterhead, on the signature block in court documents, and on other publicly available resources on the Internet. If Defendants are correct about the ways in which Bank has advertised this number, it would not qualify as residential under the TCPA. But the complaint does not allege the number at issue and this is a motion to dismiss.

Mr. Connor is not alleged to have done any of those things and has provided a declaration supporting quite the opposite.

In sum, this Court can easily discern that Mr. Connor has received non-consensual calls to a residential number he placed on the DNC. Those calls were made to Mr. Connor's personal cell phone that he uses for personal, residential, and household purposes. It is therefore a residential number. Mr. Connor personally, not a company, sues the Defendant for conduct inflicted upon him. As the guidance makes clear, Mr. Connor's number is presumptively residential and is therefore entitled to the Registry's protections. Moreover, his number is not registered to any telephone exchange service for businesses, a requirement making a number ineligible. His affidavit confirms the same. Defendant's challenge on this point must fail.

## 2. The Plaintiff Has Standing.

Ignoring the plain language of the statute, Defendant posits a unique theory of standing. It has no objection to the standing of individuals who cannot be put to the trouble of suing them, but those like Mr. Connor, who have a track record of investing time and energy to enforce federal telemarketing law for the benefit of a class and the general public, according to Defendant, should be stripped of the TCPA's protections because such conduct supposedly amounts to being a "professional plaintiff." That term has no definition in the law, is untethered the language in the statute, and no decision traces a plaintiff's standing under the statute to such an undefined status entirely of the Defendant's own devising.

Indeed, another court faced with a similar challenge to a plaintiff's standing has held that even investigative activity did not deprive him of standing:

> The Supreme Court instructs that "we presume that a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" As noted earlier, Congress has identified those interests as privacy rights. In this case, Plaintiffs have pled that they received calls and texts prohibited by the TCPA. They further assert that "Plaintiffs here didn't want these calls," "do not want these unwelcomed calls," "were not seeking out these calls," and "tried everything in their power to stop them." Plaintiffs further contend that "there is simply nothing here to support the characterization that they are 'operating TCPA litigation businesses'" and that "the numbers are used for residential purposes only …." This is sufficient at the motion to dismiss stage to bring Plaintiffs within the zone of the privacy rights the TCPA protects.

*Barrett v. Vivint, Inc.*, No. 219CV00568DBBCMR, 2020 WL 2558231, at *5 (D. Utah May 20, 2020). Here, the Plaintiff makes similar allegations, which are sufficient to establish his standing and do not impact his potential adequacy. However, again, Mr. Connor goes further by providing an affidavit that makes clear:

9

- To be clear, I do nothing to precipitate the illegal calls and messages which are placed to me. I do not want these communications, but they continue to be placed to me. They are highly annoying and disruptive.
- I do not welcome nor invite these illegal calls and have taken measures for them to stop, including by placing my number on the Do-Not-Call Registry and holding those who call me accountable for their actions.
- I was harmed by the Defendant's text messages. Illegal calls are frustrating, obnoxious, and annoying. They are a nuisance and disturbed my solitude.
- I do not and have never welcomed nor wanted illegal calls and do nothing to receive or deserve them. My injury was done completely at the hands of Defendant, who took it upon itself to call me using a prerecorded message in violation of the TCPA.
- I brought this case as a class action because I know that there are likely thousands more people in a similar situation such as myself, having received calls from Defendant without their consent.

*See* Exhibit 1 at ¶¶ 8-12.

The attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants careful scrutiny. *Outley v. New York*, 837 F.2d 587, 591-92 (2d Cir. 1988). "[N]othing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs only' rule." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017) (denying similar motion to dismiss in TCPA case); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders."); *Abramson v. Oasis Power LLC*, No. 2:18-cv-00479, 2018 U.S. Dist. LEXIS 129090, at *16 (W.D. Pa. July 31, 2018) ("As other courts addressing this issue have agreed, a citizen's decision to aggressively enforce his rights under the TCPA should

10

not negate otherwise valid privacy interests").

Merely because Mr. Connor identified the company calling him illegally deprives him of standing no less "than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken into." *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017) (denying MSJ in TCPA case related to a similar standing argument). While the Defendant is "understandably frustrated" by the fact they are being sued, he is doing "exactly what Congress intended—enforcing the law." *Id.* Congress was well aware of this possibility when it passed the TCPA, and no general rule requires plaintiffs who prove their cases to end up worse off than before the defendant injured them. Thus, courts reject such irrelevant attacks on plaintiffs who bring multiple actions and engage in investigative tactics to stop illegal telemarketing:

> The determinative issue, then, is not Cunningham's motivations, but whether he was injured. An ordinary consumer who pled the facts that Cunningham has pled would have established a concrete and particularized injury-in-fact based on the Defendants' intrusion upon his rights to privacy and seclusion. Defendants suggest that, by becoming a so-called "professional plaintiff," he has forfeited those rights because the calls alleged were not truly unwanted. Insofar as *Stoops* endorses such a result, this Court disagrees. It may be that Cunningham was not saddened or annoyed by the calls he received; it may even be that, knowing his rights under the TCPA, he is glad the calls were placed. But allowing that fact, even if true, to negate his right to privacy and seclusion would require the Court to embrace a line of reasoning that would ultimately undermine the rights of most, if not all, TCPA plaintiffs and plaintiffs in similar statutory schemes.

*Cunningham*, 251 F. Supp. 3d at 1196 (cleaned up). Like the defendants in *Cunningham*, Defendant "seem[s] to imagine a Constitution that limits the right to sue under the TCPA to those who are *ignorant* of their right to sue under the TCPA." *Id.* "The Constitution requires no such result." *Id.*

The only case law Defendant relies upon for its argument Plaintiff lacks constitutional standing is inapposite. In *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp.

11

3d 782 (W.D. Pa. 2016), on a motion for summary judgment, a TCPA plaintiff was found to lack standing where she testified her *sole purpose* for owning over 35 cell phones that she carried around *in a shoebox* was to run what she referred to as a "TCPA litigation business." There is no indication here that Mr. Connor owns 35 cell phones, carries them around, or does not actually use his cell phone for personal, family, and household use as alleged in the Amended Complaint. Defendant has also advanced no proof that Mr. Connor uses his cell phone to run a TCPA litigation "business."

Relatedly, Defendant then cites *Leyse v. Bank of Am. Nat'l. Ass'n*, 804 F.3d 316, 323 (3d Cir. 2015), for the unremarkable proposition that "[s]omeone with a generalized interest in punishing telemarketers … would not qualify *on that basis alone*" for constitutional standing. (emphasis added). But Mr. Connor is not attempting to qualify for statutory standing solely because he has an interest in curbing unlawful telemarketing. He received unlawful text messages to his telephone, which used his invaded his privacy. Based on their unique factual underpinnings, it's not hard to find several federal courts that have distinguished *Stoops* or *Leyse*, but here are a few well-reasoned decisions. *See e.g. Jawk Enters., LLC v. Greenlight Energy, Inc.,* 2019 U.S. Dist. LEXIS 197070, *7 (E.D. NY. 2019) (("The Court, however, need not determine whether the consideration of such interests is appropriate because Greenlight has not made the basic argument necessary for a "zone of interests" challenge post-Lexmark— that the TCPA does not provide Plaintiffs with a cause of action. Greenlight's assertions—that Frey has filed a number of other TCPA class actions, used the same phone numbers in these lawsuits, and works for a phone systems company—are not tied to an argument about the cause of action."); *Bais Yaakov of Spring Valley v. Educ.*

12

*Testing Serv.*, 367 F. Supp. 3d 93, 115 (S.D. NY. 2019) ("Those cases are, however, readily distinguishable. In both *Stoops* and *Telephone Science*, the courts found that the plaintiffs had set up telephone numbers for the sole purpose of receiving telephone calls upon which they might base TCPA claims. *See Stoops*, 197 F. Supp. 3d at 787-89, 80").

As a result, Mr. Connor has suffered a particularized injury because he received the messages at issue, all through no fault of his own and certainly did not acquire the telephone number at issue for the sole purpose of filing lawsuits. He therefore unquestionably has standing.

### 3. The Plaintiff received two text messages.

The Defendant makes an argument that it only sent one text message to support its argument that one of the two claims of the Plaintiff should be dismissed. However, to be clear, the Plaintiff's South Carolina Telephone Privacy Protection Act claim does *not* require two text messages. *See S.C. Code § 37-21-80.* However, the Plaintiff's TCPA claim also survives this attack. The Plaintiff's Second Amended Complaint lists the two text messages he received in violation of the statute. The first message read, "Hi, this is Sally from Zing website design. We're offering a fully built website for only $19/ month for businesses like Arbor Craft Builders- no contrac" (Amended Complaint at ¶ 30). The second message read, "t! Can I send you a sample of our work? Reply "not interested" to opt out". (Second Amended Complaint at ¶ 31).

Thus, the Plaintiff has plainly alleged that he received more than one telephone call (or text message) in violation of the statute within a twelve-month period by or on behalf of the same entity, exactly as the statute requires. 47 U.S.C. § 227(c)(5). And that the Plaintiff's cell phone combined the two messages, a technical term known as

13

"concatenation," for the ease of reading, does not change the fact that the Plaintiff received two text messages, not one. This fact is confirmed by the Plaintiff's telephone logs from his phone company, which confirm that he was billed for two calls, not one:

| Incoming Text/Message | 720-927-8973 | 2/23/2024 | 12:41:16 PM CST | NA | $0.00 |
| Incoming Text/Message | 720-927-8973 | 2/23/2024 | 12:41:16 PM CST | NA | $0.00 |

See Exhibit 2.

That renders the internet website citations cited by the defendant on this issue distinguishable. Indeed, Mr. Connor's bill indicates that he received two messages, but one's Internet history does not reflect multiple website visits to the same website when Internet packets are collected. The two are clearly not identical, and Defendant's contention in this regard is belied by the aforementioned telephone records.

Defendant's contrary argument that the Court should somehow interpret "more than one telephone call" to require some undefined degree of temporal separation between calls adds language to the statute that does not exist and would in fact run contrary to multiple other portions of the TCPA. *See Albrecht v. Oasis Power, LLC*, No. 18 C 1061, 2018 WL 11269232, at *1 (N.D. Ill. Oct. 11, 2018) (denying motion to dismiss when Plaintiff received four simultaneous calls that were made for the purpose of leaving a single ringless voicemail). In fact, the TCPA also prohibits *simultaneous* calling conduct that would cause "two or more telephone lines of a multi-line business [to be] engaged simultaneously." 47 U.S.C. § 227(b)(1)(D). For TCPA purposes, the "account records of a common carrier" of the party responsible for paying the bill on the line on which the call was received is dispositive for what "subscriber" received calls. 47 C.F.R. § 64.1100(h); *Hinman v. M & M Rental Ctr., Inc.*, 596 F. Supp. 2d 1152, 1156 (N.D. Ill. 2009) (relying on billing records of phone company to determine number of

14

illegal faxes sent). As demonstrated above, the common carrier records from AT&T reflect two calls took place. The Plaintiff has therefore pled, as supported by telephone records, that he received more than one call in a twelve-month period.

4. **The Defendant's motion should not be converted into one for summary judgment because there are disputed facts. Such a conversion is premature.**

Below the request for relief the Defendant's motion contains a curious statement, "The motion should be converted to a motion for summary judgment because there are no genuine issues of material fact on these threshold issues and the Defendant is entitled to judgment as a matter of law." *See* ECF No. 38 at *7. The Plaintiff disputes that the motion should be "converted to a motion for summary judgment".

*First*, the motion should not be considered one for summary judgment because it fails to comply with D.C.COLO.LCivR 56.1, which requires "a statement of undisputed facts". None is provided, which is not surprising because, as outlined above, many of the Defendant's unsupported assertions *are disputed*. That also means that the facts to oppose the motion are unavailable to the nonmovant. FED. R. CIV. P. 56(d).

*Second*, such a conversion would be premature. *See Id.*; *Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 (10th Cir. 1998) ("[C]ourts have broad discretion in determining whether or not to accept materials beyond the pleadings."). If the Defendant wants to file a summary judgment motion, it should do so when all parties have conducted discovery, not at the stage the parties are at now, where one co-defendant hasn't even appeared. *See e.g. Breske v. Honeywell Int'l Inc.,* 2024 U.S. Dist. LEXIS 78503, *5 ("Given the early stages of this litigation, the Court declines to convert Schneider's motion to dismiss into a motion for summary judgment.").

RESPECTFULLY SUBMITTED AND DATED this April 17, 2025.

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> *Perrong Law LLC*
> 2657 Mount Carmel Avenue
> Glenside, Pennsylvania 19038
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com
>
> */s/ Anthony Paronich*
> Anthony Paronich
> Email: anthony@paronichlaw.com
> PARONICH LAW, P.C.
> 350 Lincoln Street, Suite 2400
> Hingham, MA 02043
> Telephone: (617) 485-0018
> Facsimile: (508) 318-8100
>
> *Attorneys for Plaintiff and the Proposed Classes*

## **CERTIFICATE OF SERVICE**

We certify that we filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: April 17, 2025

> */s/ Anthony Paronich*
> Anthony Paronich
> Email: anthony@paronichlaw.com
> PARONICH LAW, P.C.
> 350 Lincoln Street, Suite 2400
> Hingham, MA 02043
> Telephone: (617) 485-0018
> Facsimile: (508) 318-8100
> *Attorneys for Plaintiff and the Proposed Class*