**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

| | |
|---|---|
| JAY CONNOR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>SERVICEQUIK INC. d/b/a ZING BUSINESS MANAGEMENT SOFTWARE<br><br>AND<br><br>WOOSENDER, INC.<br><br>Defendants. | Case No. 1:24-cv-02286<br><br>**Defendant Servicequik's Motion for Summary Judgment** |

Defendant Servicequik hereby moves for summary judgment as to Plaintiff's claims against Servicequik in the above-captioned matter.

**Factual Background**

This lawsuit stems from a message sent to Plaintiff on February 23rd, 2024. *See* ECF 10-2. The Plaintiff filed suit in South Carolina State Court on March 4, 2024, alleging that he had been sent "a text message" in violation of the South Carolina Telephone Privacy Protection Act, SC Code § 37-21-10 *et seq* (SCTPPA). ECF 10-1, ¶ 19. However, after about six months of litigation in South Carolina, the Plaintiff dismissed the state court action because he had "identified a second alleged text on the same day as the first text" and filed the instant case, which was later amended to include class-action allegations. ECF 10-5, p. 4. Now, he maintains that the message he received was actually two messages. ECF 6, ¶¶ 29-30. He brings his claim pursuant to 42 U.S.C. §

227(c), which is commonly referred to as the Do Not Call Registry portion of the Telephone Consumer Protection Act of 1991 (TCPA).

The Defendant submits that the Plaintiff has failed to create a genuine dispute of material fact regarding any of his claims, and that, as a matter of law, they fail for the reasons set forth below.

**Standard**

Summary judgment is warranted when (1) the movant shows that there is no genuine dispute as to any material fact and (2) the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The factual record and reasonable inferences must be construed in the light most favorable to the nonmoving party. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The moving party bears the initial burden, but once met, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. 2505.

This case revolves primarily around statutory interpretation, and the cardinal rule of statutory interpretation is to give effect to the intent of the legislature. *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 542 (1940). When the "statutory language is unambiguous and the statutory scheme is coherent and consistent" the inquiry ceases. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (internal quotation omitted).

**Argument**

**I.     By receiving a single text message, the Plaintiff did not receive "more than one telephone call in any 12-month period" and thus he cannot prevail on a claim under § 227(c).**

  **a. A text message is not a call**

The relevant section of the TCPA states that

> A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
>
> (…)
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater

42 U.S.C. § 227(c)(5)

"If a word of common use is contained in a statute, it is construed in its "natural, plain and ordinary significance."" *Bowe v. SMC Elec. Prods., Inc.,* 945 F. Supp. 1482, 1484 (D. Colo. 1996), *quoting Balanced Rock Scenic Attractions v. Town of Manitou*, 38 F.2d 28, 30 (10th Cir.), *cert. denied*, 281 U.S. 764, 50 S.Ct. 463, 74 L.Ed. 1172 (1930). "The plain meaning of a word is not determined by reference to variations on its ordinary meaning, but by the ordinary meaning itself." *Id*. For the reasons set forth below, the Court should not consider a text message a call in this context.

  i. <u>The TCPA was enacted in 1991, and text messages didn't exist at that time.</u>

The "whole point of having written statutes" is that "every statute's meaning is fixed at the time of enactment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400, 144 S.

Ct. 2244, 2266, 219 L. Ed. 2d 832 (2024) *quoting Wisconsin Central Ltd. v. United States*, 585 U.S. 274, 284, 138 S.Ct. 2067, 201 L.Ed.2d 490 (2018).

Text messages were not invented until 1992, *after* § 227(c) was enacted. Victoria Shannon, *A Birthday for the Text Message*, N.Y. Times (Dec. 5, 2007), https://www.nytimes.com/2007/12/05/technology/05iht-sms.4.8603150.html. Other forms of messaging, however, did exist, including facsimiles, which are addressed by §227(b) of the TCPA, not § 227(c). Obviously, if Congress wanted to, it could have said "more than one telephone call or message, including facsimile," but it did not.

While some courts have equated a modern-day text message to a "telephone call" as defined in 1991, the undersigned submits that a telephone call in 1991 was much more disturbing than a modern-day text message, and this was the impetus behind the passage of the TCPA. In debating the TCPA in the United States Senate, Senator Hollings of South Carolina urged the bill's passage because, referring to robocalls, they "interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30,821 (1991) (attached as Exhibit 1)[1]. The difference is apparent in this language: if you received a "telephone call" in 1991, you probably didn't know who it was from, and you *had* to get out of bed, stop whatever you were doing to go to the *wall* and answer it. Sen. Hollings continued saying that in one particular case, someone could not call 911 because the line was "tied up by a computerized message" thereby affecting the safety of the recipient. Id. These examples harken to an era where one simply could not ignore or silence a communication like one

---

[1] Please note that 30,821 refers to the page number of the record, found on the top of each page.

can do with a text message today.  The Defendant submits that today's text message is very different, and much less disturbing, than the "telephone call" of 1991 and in the context of the TCPA.

Several district courts have supported the notion that reading "more than one telephone call" as to include a text message as an overbroad interpretation.  *See, e.g. Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) ("Certainly, no ordinary person would think of a text message as a "telephone call."); *Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-CV-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025)

> In addition to the fact that in common American English usage, a "telephone call" and a "text message" are separate and distinct forms of communication, the term "text message" appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction.

; *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 900 (C.D. Ill. 2025) (noting the distinction between FCC orders related to §227(b) and §227(c)).

In sum, the Defendant proposes that the Court adopt what Defendant submits is the commonsense approach taken by the above-referenced authorities and in consideration of the legislative history to conclude that the term "telephone call," in the context of its 1991 meaning, does not equate to today's "text message."

   **b. Even if a text message should be considered a call, a 226-character message, whether broken up into parts or not, shouldn't equate to "more than one telephone call within any 12-month period."**

   i. <u>There is no caselaw that supports Plaintiff's argument that this should be considered two messages.</u>

"Telephone call" is not defined in § 227, and thus the Court must determine its meaning on its own. In doing so, the Court must "give undefined terms their ordinary meanings, considering 'both the specific context in which the word is used and the broader context of the statute as a whole.'" *In re Taylor*, 899 F.3d 1126, 1129 (10th Cir. 2018); *quoting United States v. Theis*, 853 F.3d 1178, 1181 (10th Cir. 2017).

It's important to note that Congress, in enacting the TCPA, did not seek to ban outright any and all telemarketing. In fact, the Congressional Findings portion of the Telecommunications Privacy Act of 1991 stated that individuals' privacy rights and commercial freedoms of speech and trade "must be balanced in a way that protects the privacy of individuals and *permits legitimate telemarketing practices*." Pub.L. 102-243, § 2, Dec. 20, 1991, 105 Stat. 2394 (emphasis added). This is perhaps why the statute specifically requires "more than one call" before imposing liability.

Post *Loper-Bright*[2] Courts that have interpreted a text as a call in the context of § 227(c) have done so by interpreting "telephone call" as a "telephone communication." *See, e.g., Wilson v. Better Mortgage Company,* No. 25 CIV. 5503 (PAE), 2025 WL 3493815, at *5–6 (S.D.N.Y. Dec. 5, 2025); *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 WL 3140725, at *2 (N.D. Ill. Nov. 10, 2025); *Howard v. Republican Nat'l Comm.*, No. 23-3826, 2026 WL 90273, at *4 (9th Cir. Jan. 13, 2026).

If "telephone call," is interpreted to mean "telephone communication," how could this message be interpreted as two communications simply because of a behind-the-

---

[2] Many pre-Loper Bright Courts defined a "telephone call" as a text message due primarily to *Chevron* deference which *Loper Bright* overruled. *See, e.g. Salcedo v. Hanna*, 936 F.3d 1162, 1169 (11th Cir. 2019), *abrogated on other grounds by Drazen v, Pinto,* 74 F.4th 1336 (11th Cir. 2023) ("it is only though the rulemaking authority of the FCC that the voice call provisions of the TCPA have been extended to text messages.")

scenes segmentation?  The sender initiated a single communication, and the recipient thought he received a single message.  Even according to the "billing records" relied on by Plaintiff, they were received at exactly the same time.  ECF 17, p. 10.

> ii. *The TCPA was intended to protect privacy, and the Plaintiff's receipt of the behind-the-scenes segmented message did not invade the Plaintiff's privacy akin to receiving "more than one telephone call in any 12-month period"*

The intent of the TCPA was to protect the privacy of individuals.  *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 803 (9th Cir. 2017).  In enacting the TCPA, Congress made several "Findings" that preceded the Act's provisions and which demonstrate the overarching concern of Congress to protect individuals from privacy and nuisance. *See* Pub.L. 102-243, § 2, Dec. 20, 1991, 105 Stat. 2394.   Plaintiff's privacy was in no way affected by the behind-the-scenes segmentation and then reassembly of this message.  In fact, he pled for several months in State Court that he had received "a message" and did not indicate that there were two until he dismissed the case nearly six months later claiming he had "identified a second alleged text." ECF 10-5.

The only reasonable conclusion is that this section of the TCPA was designed to address repeated, intrusive contacts, and perhaps to prevent litigation as the result of a one-off mistake from a live caller.  The Plaintiff did not even realize that he had received a would-be second message. Dep. Connor at 31:24-32:2.  He admits that he was not charged any additional money or any additional minutes as a result of the message segmentation.  Exhibit 3, Connor deposition at 60:24-61:1.  His privacy was in no way

affected by the segmentation of the message and thus his interpretation of the "more than one call" portion of the TCPA runs contrary to the intention of the TCPA.

### iii. *The "billing records" example that Plaintiff used previously was in a very different context.*

Defendant anticipates Plaintiff relying upon *Hinman v. M & M Rental Ctr., Inc*. to support the notion that "billing records" are determinative of the number of text messages sent. 596 F. Supp. 2d 1152 (N.D. Ill. 2009). However, the use of billing records in *Hinman* was in the context of the Court considering a number of different pieces of information to determine the character of facsimiles sent in violation of §227(b), which prohibits unsolicited facsimile messages absent certain exceptions. Id, at 1158.

In describing the factual background, the Court listed a number of different pieces of information that it was considering in disposing of the case's issues including billing records, but also detailed and summary "delivery reports," and copies of some of the facsimiles. Id, at 1155-56. The number of facsimiles sent was not at issue, rather, the Defendant argued, unsuccessfully, that liability for violations under §227(b) hinged upon messages *received* rather than *sent*, and the Court found that, rather than the *receipt* of messages, "the statutory scheme of the TCPA clearly focuses on the *sending* of unsolicited advertisements." Id, at 1159 (emphasis in original).

This case and §227(c) are fundamentally different in this regard. For instance, §227(b) does not require "more than one" facsimile in order for a violation to lie. Further, the private right of action provision upon which Plaintiff relies gives a right to "a person who has *received* more than one telephone call." 42 U.S.C. § 227(c)(5) (emphasis added). Most importantly, the Court found that the number of facsimiles sent was

"uncontroverted" and thus it would be inaccurate to characterize any of Court's decisions in that case as pointing to "billing records" being a determining factor in this case. *Hinman*, at 1159.

For all of the above reasons, the Court should find that there is no genuine dispute of material fact as to the notion that Mr. Connor *did not* receive "more than one telephone call within any 12-month period" and therefore Defendant is entitled to judgment as a matter of law.

## II. The Defendant should be entitled to the safe harbor defense of the TCPA

Section 227(c)(5) of the TCPA provides an affirmative, "safe harbor" defense to violations related to the Do Not Call Registry. Specifically, § 227(c)(5) states "It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection." Defendant Servicequik should be entitled to this protection because it only contacted businesses with publicly listed numbers. Dep. Bourke at 17:20-23.

In *Klassen v. Advanced Marketing & Processing, Inc.*, the Court considered this safe harbor provision. No. 8:21-CV-761-MSS-MRM, 2023 WL 11910565, at *2 (M.D. Fla. Mar. 1, 2023). The Plaintiff had placed his number on the Do Not Call Registry, but apparently his number had been submitted to a website called Instant-Auto-Insurance-Now.com as part of a submission form, presumably by someone else. Id, at *1. On that website, submitting a form entailed that the submitter agree to terms of service which included a consent to be contacted for marketing purposes. Id. The Defendant in that case later purchased this "lead" from a broker who had acquired it from the

Page 9 of 13

aforementioned website owner. Id.  While the individual who inputted the information was unrelated to the Plaintiff, the Defendant contacted the "lead" under mistaken belief that the Plaintiff had consented to being contacted.  Id at *4.

Ultimately, the Court issued summary judgment for the Defendant under the Safe Harbor Provision. Id.  It pointed to the fact that the Defendant was under the mistaken belief that the Plaintiff had consented to the calls, and that, under an FCC ruling, safe harbor should be afforded when the violation was made "in error."  Id at *4.  Specifically, the Court found that the summary judgment should be granted under the Safe Harbor Provision because the "Plaintiff fail[ed] to create a dispute of fact as to the alleged violation being the result of an error." Id. at *2.

Similar to the cited case, the Defendant's contacting of someone on the Do Not Call registry was in error.  The Do-Not-Call Registry exists for individuals only, not businesses, and the Defendant was marketing website design (a business service) to what was, by all reasonable expectations, a business. *National Do Not Call Registry FAQs*, FED. TRADE COMM'N, https://consumer.ftc.gov/articles/national-do-not-call-registry-faqs (last visited Feb. 5, 2025).  The Defendant gets their leads through Google Business Profiles, and only intends to contact businesses.  Exhibit 4, Cameron Deposition at 15:10-13.  Defendant is aware that businesses must "go through quite a rigorous test before you can get a Google Business Profile." Id at 18:10-12.  Defendant knows the specifics of this process, including sending a postcard in the mail and taking a video of your brick and mortar space. Id at 25:5-9.  Defendant does not, and will never attempt to contact a consumer.  Id at 32:11-12. Defendant maintains an internal Do-Not-Call list and if anyone requests to not be contacted, they take measures to not contact them again.

Exhibit 2, Bourke Deposition at 17:1-14.  The text itself was addressed to a business. ECF 38-1, p. 11.

There is no genuine dispute regarding the above.  The Defendant clearly intended to market a business service to a business and contacted a phone number that was listed publicly online for a business.

### III. The Defendant should be entitled to the safe harbor defense of the SCTPPA.

For the same reasons, the Defendant should be entitled to the similarly-worded safe harbor defense of the SCTCPA, which states: "It is an affirmative defense in any action brought pursuant to Section 37-21-80 or 37-21-90 for a violation of this section that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitation in violation of this section." SC Code § 37-21-70(C).  Further, § 37-21-80(E) provides "It must be a defense to any action brought under this section that the violation was not intentional and resulted from a bona fide error."  While no case law seems to exist regarding these defenses, the Defendant would encourage the Court to adopt the approach endorsed by the FCC above and maintain that sending the message in error entitles the Defendant to this similarly-worded safe harbor defense.  It is not in dispute that the Defendant intended to contact a business, and their contacting a private individual was the result of bona fide error.

**IV.   Statement of Undisputed Material Facts**

1. The content of the message[3] was related to website design services for businesses.  Ex. 2, Bourke Dep. At 38:6–39:3

2. When Plaintiff received the communication, he believed that he had received one text message, not two. Ex. 3 Connor Dep. at 31:24-32:2

3. Plaintiff filed a lawsuit in South Carolina on March 4, 2024 in which he referred to the Text Message he received as being a single text message.  ECF 10-1

4. The screenshot that Plaintiff submitted in support of his State Court complaint shows a single, uninterrupted message that was not broken up into two parts.  ECF 10-2.

5. Whether he received one text or two, the second message did not result in any additional charges to Plaintiff or use up any minutes under his plan.  Ex 3, Dep. Connor at 60:24-61:1.

6. The Text Message was sent to a phone number listed online for a business known as Arbor Craft Builders. Ex 3 Dep Connor at 66:4-15

7. The message was directed at a business and was offering website services.  ECF 10-2.

8. To the extent the message was two, or one broken into parts, both parts/messages were received at exactly the same time. ECF 17, page 10.

---

[3] Defendant Servicequik understands that the Plaintiff would like the Court to determine that this communication was two messages, not one.  For convenience sake, and because this is Defendant's brief, Defendant will refer to the communication as "message" for simplicity and convenience.

9. Servicequik only attempts to market to businesses who have their information publicly listed for the purpose of being contacted. Ex 2, Dep. Bourke at 17:20-24

10. The Do Not Call Registry exists for individuals only, not for businesses. *National Do Not Call Registry FAQs*, FED. TRADE COMM'N, https://consumer.ftc.gov/articles/national-do-not-call-registry-faqs (last visited Feb. 5, 2025)

11. Servicequik only acquires numbers to be contacted from Google Business Profiles. Exhibit 4 – Cameron Deposition at 15:10-13

**WHEREFORE**, Defendant Servicequik respectfully requests that this Court enter judgment in its favor, along with any other relief that the Court deems just and proper.

Respectfully submitted,

*/s/ Daniel Summa*

_____
Daniel Summa
Summa Law Firm, LLC
3 Broad Street, #301
Charleston, SC 29401
843-277-9665 *office*
843-806-2920 *fax*
daniel@summalawfirm.com

*Attorney for Defendant ServiceQuik, Inc.*

February 5, 2026
Charleston, South Carolina