# Exhibit 3
## Deposition of Jay Connor

Transcript of the Testimony of

# Jay Connor

June 27, 2025

Jay Connor v. ServiceQUIK, et al



LIVE OAK
REPORTING

843.437.9697
www.liveoakreporting.com

Jay Connor - June 27, 2025

1

UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

JAY CONNOR, individually )   CIVIL ACTION NO:
and on behalf of all      )   1:24-cv-02286
others similarly          )
situated,                 )
                          )
     Plaintiff,           )
                          )
vs.                       )
                          )
SERVICEQUIK, INC., d/b/a )
ZING BUSINESS MANAGEMENT )
SOFTWARE,                 )
                          )
and                       )
                          )
WOOSENDER, INC.,          )
                          )
     Defendants.          )

  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

 ZOOM
DEPOSITION OF:   JAY CONNOR
DATE TAKEN:      Friday, June 27, 2025
TIME:            10:00 a.m.


REPORTED BY:     EVE WILBANKS
                 Registered Professional
                 Reporter, Certified LiveNote
                 Reporter and Notary Public

  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

              POST OFFICE BOX 21119
        CHARLESTON, SOUTH CAROLINA 29413

**Page 2**

```
 1            A P P E A R A N C E S
 2  REPRESENTING THE PLAINTIFF:
 3          ANDREW ROMAN PERRONG, ESQUIRE
            Perrong Law LLC
 4          2657 Mt. Carmel Avenue
            Glenside, Pennsylvania 19038
 5          A@perronglaw.com
 6  REPRESENTING THE DEFENDANT SERVICEQUIK:
 7          DANIEL SUMMA, ESQUIRE
            Summa Law Firm, LLC
 8          3 Broad Street
            Suite 301
 9          Charleston, South Carolina 29401
            Daniel@summalwfirm.com
10
    REPRESENTING WOOSENDER:
11
            TIMOTHY M. KNOWLES, ESQUIRE
12          Warren McGraw & Knowles, LLC
            920 Lenmar Drive
13          Blue Bell, Pennsylvania 19422
            Tknowles@wmpalaw.com
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 3**

```
 1              INDEX
    TESTIMONY OF JAY CONNOR
 2
      EXAMINATION BY MR. SUMMA             4
 3    EXAMINATION BY MR. KNOWLES          55
      EXAMINATION BY MR. PERRONG          76
 4    RE-EXAMINATION BY MR. SUMMA         83
      RE-EXAMINATION BY MR. KNOWLES      103
 5    FURTHER EXAMINATION BY MR. SUMMA   109
 6
    REPORTER'S CERTIFICATE              111
 7  ERRATA SHEET                        112
 8
 9
10            INDEX OF EXHIBITS
11
    Number               Description     Page
12
13  Deposition Exhibit No. 1  Exhibit A -   33
                              Plaintiff's State
14                            Court Complaint
15  Deposition Exhibit No. 2  Motion to Dismiss  39
16  Deposition Exhibit No. 3  Text messages      56
17  Deposition Exhibit No. 4  AT&T Prepaid       61
                              Account History
18
    Deposition Exhibit No. 5  Google Maps e-mail 65
19                            regarding Arbor
                              Craft Builders
20
21
22  **(This transcript may contain quoted material.
23  Such material is reproduced as read or quoted by
24  the speaker.)
25
```

**Page 4**

```
 1              S T I P U L A T I O N S
 2        It is hereby stipulated and agreed by and
 3  between the parties hereto, through their
 4  respective counsel, that the reading and signing
 5  of the transcript is reserved by the Deponent.
 6  JAY CONNOR, SWORN.
 7              EXAMINATION
 8  BY MR. SUMMA:
 9      Q.  Mr. Connor, my name is Daniel Summa.  I
10  represent the defendant ServiceQUIK in this
11  action.  Have you ever taken -- or have you ever
12  had your deposition taken before?
13      A.  Yes.
14      Q.  When did you have your deposition taken?
15      A.  I've had it taken more than once.
16      Q.  Okay.  Do you remember when?
17      A.  Not specifically.  One was about ten
18  years ago.  One was in 2020; I can't remember
19  exactly when and -- or '21.  And there was a third
20  one.  I can't remember.  A long time ago.
21      Q.  So ten years, 2020, 2021, and then a
22  third one you think was earlier than before those
23  two?
24      A.  Right.
25          (The deposition went off the record.)
```

**Page 5**

```
 1      Q.  I think my last question was, you said
 2  you think you've had your deposition taken three
 3  times, once 2020 or 2021, and another time
 4  approximately ten years ago and then another time
 5  before that.  Is that correct?
 6      A.  Right.
 7      Q.  And I think this is a good time to
 8  mention, if you don't understand anything I'm
 9  saying, if you don't understand a question, please
10  let me know so I can help clarify.  It is all
11  going into a transcript, obviously, and it's --
12  you can't gather tone, right, from a transcript,
13  obviously.  So I'm going to assume that you
14  understand what I'm asking, unless you tell me
15  otherwise.  Is that fair?
16      A.  Yes.
17      Q.  Okay.  Having -- in those three cases,
18  were you the plaintiff, were you the defendant, or
19  were you just a witness to the facts?
20      A.  In the older one, I was not a party.
21  The more recent one, I was a plaintiff.
22      Q.  The older one, was it like a TCPA thing
23  or a telemarketing thing, or was it something
24  different?
25      A.  Yes.  It was TCPA related.
```

Jay Connor - June 27, 2025

3 (Pages 6 to 9)

---

**6**

1    **Q.   So the old one, the one from before the**
2    **one ten years ago, that was TCPA related, but you**
3    **were not a party?**
4        A.   No.  That's not what I meant.  The one
5    from more than ten years ago -- or thereabout -- I
6    don't remember the specifics; I think it was TCPA.
7    The one that was ten years ago was TCPA related,
8    but I was not the plaintiff.
9        **Q.   So how were you involved in the case if**
10   **you weren't the plaintiff, is my question.**
11       A.   I believe I had received a call from the
12   same company that was the defendant.  But I was
13   not a party to the case, the best I can remember.
14       **Q.   And then in 2020, 2021, that one -- you**
15   **were a party in that one, right?**
16       A.   Right.
17       **Q.   You were the plaintiff in that case?**
18       A.   Yes.
19       **Q.   That was a federal case in the District**
20   **of South Carolina; is that correct?**
21       A.   Right.
22       **Q.   How did that case resolve?**
23           MR. PERRONG:  Objection to form; Rule
24       408 communications; instructing the witness
25       not to answer.

---

**7**

1            MR. SUMMA:  Is that because it's an
2        attorney-client privilege?  Is that what
3        you're saying, Andrew?
4            MR. PERRONG:  Yes.  And it's a Rule 408
5        issue as well.
6            MR. SUMMA:  A rule of evidence doesn't
7        prevent someone from answering a question in a
8        deposition.
9            MR. PERRONG:  I'm instructing the
10       witness not to answer.  It's a confidential
11       settlement communication, and it will reveal
12       attorney-client communications.
13   BY MR. SUMMA:
14       **Q.   So, Mr. Connor, how long have you been**
15   **pursuing telemarketing claims?**
16           MR. PERRONG:  Objection to form.  You
17       can answer.
18       A.   I think I filed the first case in '99 or
19   2000.
20       **Q.   How did you learn about these claims?**
21           MR. PERRONG:  Objection to form.  You
22       can answer.
23           MR. SUMMA:  What's the objection?  All
24       objections are preserved, except those that
25       relate to form.  And the whole purpose --

---

**8**

1            MR. PERRONG:  Yes.  I'm making an
2        objection as to form.
3            MR. SUMMA:  Excuse me.  How about this:
4        I'll talk and then you can talk, and we can
5        have a discussion.  Is that okay?
6            MR. PERRONG:  Yeah.  And I'm preserving
7        my objections for the record.  I'm making an
8        objection as to form, and I'm instructing the
9        witness that he can answer.  What's the
10       problem?
11           MR. SUMMA:  Well, I think that all
12       objections are preserved.  Right?  So you
13       don't need to say contemporaneously --
14           MR. PERRONG:  That's not how it works in
15       federal court, Mr. Summa.
16           MR. SUMMA:  Let me just say for the
17       record, everything -- all objections are
18       preserved, except those that relate to the
19       form of the question.  Because that way, I can
20       get an opportunity to correct the form, make
21       it in a non-objectionable fashion.  If your
22       objection is relevance, you don't need to
23       contemporaneously object.  If the objection is
24       408, you don't need to contemporaneously
25       object.  Those are all preserved.

---

**9**

1            And I understand there's a strategy
2        among some litigants to say "object to the
3        form" to every question in an attempt to
4        disrupt the deposing attorney.  I know that's
5        not your intention.  But I just want to make
6        it clear that if you continue and say "object
7        to the form" and refuse to specify what your
8        objection is, I'm going to say that you're not
9        participating in this objection in good faith,
10       and I'm going to have to go to the Court and
11       we'll figure it out at that point.
12           MR. PERRONG:  We'll figure it out.
13       Listen, buster, okay, I'll tell you what,
14       we're going to object to form as we're allowed
15       to do under the Federal Rules; and we will
16       object to form, and you will not dictate what
17       objections I can make to my client.  All
18       right?
19           So go ahead and answer the question.
20           MR. SUMMA:  Are you going to say "object
21       to the form" every single question I ask?  Is
22       that the plan?
23           MR. PERRONG:  I'm objecting to the form.
24       You can answer the question.
25           And this is not my deposition.

---

Jay Connor - June 27, 2025



**10**

1      MR. SUMMA:  The rules say state the
2  grounds for the objection.  And my question
3  was --
4      MR. PERRONG:  I'm objecting to the form.
5  You can answer the question.
6      MR. SUMMA:  What's wrong with the form?
7  You have to state the grounds for the
8  objection.
9      MR. PERRONG:  No.  A:  No, I do not need
10 to state the grounds for the objection.  Look
11 at the Federal Rules; read the Federal Rules.
12 I do not need to state the grounds for the
13 objection.  I am objecting to the form.
14 That's the grounds for the objection.
15 Specifically, it's a vague question.
16 BY MR. SUMMA:
17     **Q.   How did you learn about TCPA claims or**
18 **telemarketing claims?  I know there's state law**
19 **stuff as well as federal stuff.**
20     MR. PERRONG:  Object to the form.
21     A.  I heard about it on a radio show.
22     **Q.   Okay.  What radio show was it?**
23     A.  It was an AM radio show.  They were
24 interviewing somebody about the statute.
25     **Q.   Okay.  And then, I guess -- it's 2025.**

**11**

1  **You heard about this in 1999, you said, right?**
2      A.  That's right.
3      **Q.   Do you think your activities have ramped**
4  **up or tapered off?**
5      MR. PERRONG:  Objection to form.
6      A.  I'm not sure what you mean by "ramped
7  up."
8      **Q.   Did you pursue more claims, I guess, in**
9  **the past five years or in the five years preceding**
10 **that?**
11     A.  Off the top of my head, I don't know.
12     **Q.   Let's learn a little bit about yourself.**
13 **Where are you from originally?**
14     A.  Greenville, South Carolina.
15     **Q.   When did you move to Charleston?**
16     A.  1987.
17     **Q.   Why did you move down here?**
18     A.  College of Charleston.
19     **Q.   So you graduated from C of C?**
20     A.  I did.
21     **Q.   What kind of work have you done,**
22 **generally, starting when you left college?**
23     A.  I've waited tables; I've worked as --
24 for a construction company as a superintendent;
25 I've done some development work.  I've done some

**12**

**13**

Jay Connor - June 27, 2025

5 (Pages 14 to 17)



14

1    Q.   Gotcha.  Okay.  So out-of-state
2  homeowners, they hire you to do general type of
3  stuff, fix up their house and -- I guess tell me
4  about it.  Tell me what you do more specifically.
5         MR. PERRONG:  Objection to form.

20    Q.   Okay.  And, then, how many clients do
21  you think you have?

Jay Connor - June 27, 2025

6 (Pages 18 to 21)



Jay Connor - June 27, 2025

7 (Pages 22 to 25)



**22**

**23**

**24**

**25**

1  other phone numbers besides these three, let's say
2  over the past ten years or so -- any numbers that
3  have been purchased and then deleted or let go of,
4  so to speak?
5      MR. PERRONG:  Objection to form.  Can
6  you clarify?  What was the timeframe?
7      MR. SUMMA:  Ten years.
8      MR. PERRONG:  I'm sorry?
9      MR. SUMMA:  Ten years.
10     MR. PERRONG:  We're going to object, in
11  that that violates the Court's order regarding
12  the telephone numbers.  I'm going to instruct
13  the witness not to answer.
14  BY MR. SUMMA:
15     **Q.   What about five years?**
16     A.   I believe I've had four -- the three
17  numbers I have now.  At one time I had a different
18  number in the last five years, and then the Google
19  Voice numbers.  So I don't think I've ever had
20  more than three in the last five years -- three
21  AT&T numbers at once.
22     **Q.   Okay.  So it sounds like the instant**
23  **number was a replacement for another phone number.**
24  **Is that correct?**
25     MR. PERRONG:  Objection to form.

Jay Connor - June 27, 2025

8 (Pages 26 to 29)

| 26 | 28 |
|---|---|

**Page 28**

1  you make that a little bigger?
2  **Q.  So, Mr. Connor, you probably don't**
3  **recognize those blue numbers at the top.  But**
4  **besides that, do you recognize this document?**
5  A.  I do.
6  **Q.  What is this?**
7  A.  That's the cover sheet for the civil
8  action in the state case.
9  **Q.  I'm going to scroll down.  Okay?  Do you**
10 **mind, for the record, saying what page number is**
11 **at the top of this?**
12 MR. PERRONG:  Objection to form.  It's
13 asking him for an ECF page number as opposed
14 to a state court page number.  But with that
15 clarification, I'll let the witness answer.
16 A.  It says page 4 of 11.
17 **Q.  And, then, what am I highlighting up**
18 **here at the top of the document?**
19 MR. PERRONG:  Objection to form.
20 A.  Document 38-1.
21 **Q.  Do you recognize this?**
22 A.  Yes.
23 **Q.  Okay.  What is it?**
24 A.  A Summons.
25 **Q.  Does it contain your signature?**

| 27 | 29 |
|---|---|

**Page 29**

1  A.  Yes.
2  **Q.  Is there a phone number below your**
3  **signature?**
4  A.  Yes.
5  **Q.  Obviously, that phone number ends in**
6
7  A.  Right.
8  **Q.  Is that the number that you use -- you**
9  **testified is for your parents, basically?**
10 A.  That's the reason I obtained it, yes.
11 **Q.  But, then, since then, you've used it on**
12 **legal filings and documents; is that correct?**
13 MR. PERRONG:  Objection to form.
14 A.  On this case, I try to avoid giving out
15 more numbers than I have to.  So this number was
16 the subject number of this case, so I put that
17 number in with this case.
18 **Q.  Going down to the next page, what is**
19 **this?**
20 A.  Complaint.
21 **Q.  And just for the record, backing up for**
22 **a little bit, I'm going to go back to the**
23 **document, page 4 of 11, is it true that you filed**
24 **a lawsuit in South Carolina Court of Common Pleas,**
25 **County of Charleston, on or about May (sic) the**

**30**

1  4th of 2024?
2      A.  Yes.
3      Q.  Okay.
4          MR. PERRONG:  Objection to form.
5      Q.  And --
6          MR. PERRONG:  I'll note the document
7      itself says March.
8          MR. SUMMA:  Sorry.  Thank you.
9      Q.  So to clarify, Mr. Connor, you filed a
10  lawsuit in South Carolina state court around March
11  of 2024, right?
12      A.  Right.
13      Q.  And that's about the same message or
14  messages that's the subject of this federal
15  lawsuit; is that correct?
16      A.  That's correct.
17      Q.  Let's look at this page.  Do you mind
18  telling me what page it is in blue up there?
19      A.  Page 6.
20      Q.  You wrote this, right?
21      A.  Yes.
22      Q.  Line number 19, do you mind telling me
23  what that says?
24      A.  "On February 23rd, 2024, plaintiff
25  received a text message (the text) to his wireless

**31**

1  telephone while he was in Charleston County."
2      Q.  So in this lawsuit you refer to the
3  message as "the text" -- or I'm just going to say
4  the communication so we don't get bogged down in
5  texts or text -- the communication.  You referred
6  to the communication as "the text"?
7          MR. PERRONG:  Objection to the form.
8      A.  Right.
9      Q.  And you referred to it as the text on
10  line 20?
11      A.  Right.
12      Q.  Line 21?
13      A.  Right.
14      Q.  And tell me, line 23, what does that
15  say?
16      A.  "A copy of the text is attached hereto
17  and incorporated herein as Exhibit A."
18      Q.  I'm going to scroll down.  What page
19  number is this, for the record, that we're all
20  looking at?
21      A.  11.
22      Q.  Okay.  What is this?
23      A.  That was the text as I received it.
24      Q.  Is this a screenshot of your phone?
25      A.  Right.  My phone has the ability to take

**32**

1  two messages that were sent separately and combine
2  them and present the text as one message.
3      Q.  Right.  But you weren't aware of that at
4  the time you filed this lawsuit, were you?
5      A.  Right.
6      Q.  And did you even -- are you familiar
7  with the term SMS concatenation?
8          MR. PERRONG:  Objection to form.
9      A.  Can you say that again, please?
10      Q.  I don't know if I'm saying it correctly.
11  SMS concatenation?
12      A.  Maybe I don't know the word or I'm not
13  understanding you well, but I don't understand the
14  last word, con- -- what?
15      Q.  Let me put it this way:  You're familiar
16  with the concept that, in some cases, messages can
17  get split up and reassembled at their destination?
18          MR. PERRONG:  Objection to form.
19      A.  I've got limited awareness of that.
20      Q.  Is it true that in state court you
21  dismissed the action -- we'll start there.  Did
22  you submit a motion to voluntarily dismiss your
23  state court action last summer?
24      A.  Yes.
25      Q.  Is it true that one of the -- in that

**33**

1  motion, you said that you had discovered a second
2  alleged text?
3      A.  I don't remember the exact way I worded
4  it.
5      Q.  I'm going to stop screen sharing here.
6          MR. KNOWLES:  Daniel, before you do
7      that, can we have this marked and sent to the
8      court reporter?
9          MR. SUMMA:  Sure.  Ms. Wilbanks, I'm
10      going to mark this as I guess Exhibit 1.  And
11      I'll e-mail it to everyone.  Does that work?
12          MR. KNOWLES:  Thank you.
13          (Deposition Exhibit No. 1, Exhibit A -
14      Plaintiff's State Court Complaint, was marked for
15      identification.)
16  BY MR. SUMMA:
17      Q.  Just moving on, obviously when you file
18  something in court, it's under oath, right?  You
19  understand that, right?
20      A.  That's right.
21      Q.  So you swore under oath that you
22  received a text message before, right?
23          MR. PERRONG:  Objection to form.
24      A.  Right.
25      Q.  And you prosecuted an action in South

---

34

1   Carolina state court for over a year under the
2   theory that you would receive just a single text
3   message, right?
4        MR. PERRONG:  Objection to form.
5        A.  At the time I thought it was just one
6   text.
7        Q.  Okay.  How did you discover, in your
8   words, that you received a second message?
9        A.  I reviewed my phone bill.
10       Q.  Why did you review your phone bill?
11       MR. PERRONG:  Objection to form.
12       A.  It's something I do routinely.
13       Q.  Were you charged any money for this
14   message or this communication?
15       A.  I pay a monthly fee for my phone
16   service.
17       Q.  But do you get charged on a per text
18   message basis?
19       A.  No.
20       Q.  Of the three numbers that you have,
21   which one -- does one stand out as having received
22   the most telemarketing calls?
23       MR. PERRONG:  Objection to form.
24       A.  Not particularly.
25       Q.  They're all about equal?

---

35

1        MR. PERRONG:  Objection to form.
2        A.  That's not what I meant.  I don't -- I
3   don't know.  I mean, I get more calls, as a
4   general rule, and all calls -- general calls on
5   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  receive the most on necessarily.
7        Q.  Sure.  And I'm not looking for an exact.
8   I'm just saying, if you're at a party and someone
9   were to say, Which of the three numbers do you get
10  the most telemarketing calls on, what would you
11  say?
12       MR. PERRONG:  Objection to form.
13       A.  I would say I don't know.
14       Q.  Would you agree with me that the more
15  phones you have, the more likely you are to
16  receive telemarketing calls?
17       MR. PERRONG:  Objection to form.
18       A.  Possibly.  Yes.
19       Q.  When was the last time in your life that
20  you only had one phone number?
21       A.  I don't remember.
22       Q.  When you learned about telemarketing
23  claims in 1999, how many phone numbers did you
24  have then?
25       A.  I don't remember.

---

36

1        MR. PERRONG:  Sorry to cut you off, Dan
2   (sic).  But we're getting on about an hour --
3   45 minutes, an hour, and I need to use the
4   restroom.  How long -- do you have a breaking
5   point or line of --
6        MR. SUMMA:  We can break now.  I think
7   I'm past halfway.  And trust me, I'm trying to
8   go as fast I can.
9        MR. PERRONG:  Let's break now, then, and
10  take a short break, like ten minutes.
11       MR. SUMMA:  Ten minutes is great.
12       (The deposition went off the record.)
13  BY MR. SUMMA:
14       Q.  Just for the record, Mr. Connor, you
15  didn't have any discussions with your attorney
16  about this deposition during the break?
17       MR. PERRONG:  Objection to
18  attorney-client privileged information and
19  instructing the witness not to answer.
20       MR. SUMMA:  I don't know what you -- I
21  don't want to know what you said.  I want to
22  know if there was a discussion related to the
23  case.
24       MR. PERRONG:  We discussed privilege and
25  objection matters.

---

37

1   BY MR. SUMMA:
2        Q.  I want to clean up something real quick
3   before I move on.  So, Mr. Connor, you said that
4   you didn't realize that you received two messages
5   until you looked at your phone billing records.
6   Is that correct?
7        A.  That's right.
8        Q.  How often do you typically look at your
9   phone billing records?
10       A.  I don't know.
11       Q.  Is it true that you -- obviously you
12  said last summer that you discovered a second
13  text.  Is that correct?
14       A.  I don't know if it was last summer.  I
15  don't know exact -- sometime last year.
16       Q.  Okay.  Here it is.  I'm going to share
17  my screen here.  All right.  What are we looking
18  at here?
19       MR. PERRONG:  Can you make that bigger
20  again?
21       MR. SUMMA:  Yeah.  I wish it was big and
22  I could show the whole document at the whole
23  time.
24       MR. PERRONG:  It's good.
25  BY MR. SUMMA:

Jay Connor - June 27, 2025

38

1    Q.  What are we looking at here, Mr. Connor?
2    A.  That is the cover sheet for a motion.
3    Q.  Do you see the date submitted?
4    A.  Yes.
5    Q.  What is it?
6    A.  August 14th '24.
7    Q.  Then I'm going to page 3.  Read that,
8    familiarize yourself with it, and then let me know
9    when you're ready to talk about it.  I guess I'm
10    going to have to scroll up and down at your
11    request.
12        MR. PERRONG:  Can you scroll down just a
13    little bit?
14    BY MR. SUMMA:
15    Q.  I'm going to scroll down a little more
16    because there's a page 2; it's just your
17    signature.  Are you ready to discuss that?
18    A.  Yes.
19    Q.  Is this a Motion to Dismiss that you
20    filed in Charleston County on or about August
21    14th, 2024?
22    A.  Yes.
23    Q.  And is it true that you say in this that
24    you recently identified a second alleged text from
25    Defendants on the same day of the first text?

39

1    A.  Yes.
2        MR. SUMMA:  So I would like this to be
3    marked as Exhibit No. 2.  And I will e-mail
4    that to everyone.
5        (Deposition Exhibit No. 2, Motion to
6    Dismiss, was marked for identification.)
7    BY MR. SUMMA:
8    Q.  So it's fair to say that you identified
9    a second alleged text -- when did you identify it?
10        MR. PERRONG:  Objection to
11    attorney-client privilege and instructing the
12    witness not to answer.
13        MR. SUMMA:  That's weird because I'm not
14    asking -- I'm just asking when he identified
15    it.  I don't think that's --
16        MR. PERRONG:  To the extent that it asks
17    for the date, that would not be privileged to
18    the extent it's within his recollection.  But
19    I think you're on a short leash.
20        So you can answer the question if you
21    recall the date that you made that
22    determination.
23    A.  I don't remember the date.
24    Q.  Was it close in time -- you didn't hold
25    onto this information strategically, right?  You

40

1    filed this when you found out about it, right?
2        MR. PERRONG:  Objection to form.  It's a
3    multiple-part, compound question.
4        MR. SUMMA:  I can break it up.
5    BY MR. SUMMA:
6    Q.  Did you file this motion shortly after
7    you identified the second text?
8    A.  It's been almost a year now.  I don't
9    remember exactly.
10    Q.  The next question is, how frequently do
11    you review your phone billing records?
12    A.  I don't have a schedule of reviewing my
13    phone billing records.
14    Q.  Sure.  The question comes from the place
15    that you filed something in March, and then, in
16    August, you identified a second message.  And you
17    testified earlier reviewing your messages or
18    reviewing your billing records is just something
19    you do.  I'm asking, is it once a year?  Every six
20    months?  Is there -- how often do you review your
21    phone billing records?
22        MR. PERRONG:  Objection to the extent --
23    you're going to need to rephrase this, because
24    it touches on a privilege issue of a
25    communication -- of what attorney instructions

41

1    were.  So to the extent that he's asked to
2    reveal what his attorney -- what his
3    attorney's instructions were in terms of the
4    telephone records, that's going to be
5    privileged, right?
6        MR. SUMMA:  Sure.  Don't get mad at me,
7    but can I ask him when you all first met, you
8    know, just to determine the beginning of when
9    attorney-client privilege began approximately?
10        MR. PERRONG:  Yeah.
11    BY MR. SUMMA:
12    Q.  When did you first meet Mr. Perrong,
13    your attorney there?
14    A.  I've known Andrew for many years.
15    Q.  I guess, here is the question:  Have you
16    ever looked at your billing records before you
17    looked at this billing record?
18    A.  I'm sure I have.  I don't remember
19    specifically, but I'm sure I have.
20    Q.  So you don't really review them
21    periodically, it sounds like?
22    A.  I don't have a schedule of review of my
23    billing records.
24    Q.  Okay.  Why do you review your billing
25    records?

Jay Connor - June 27, 2025

42

1    MR. PERRONG:  I'm going to object in
2    terms of attorney-client privilege and
3    instruct the witness not to answer.
4        MR. SUMMA:  Sorry.  I asked why and
5    you're objecting to that one, right?  I'm just
6    making sure --
7        MR. PERRONG:  The objection for why is
8    because it's pursuant to his attorney's
9    instructions, right?
10       MR. SUMMA:  Okay.  I'm going to ask this
11   one -- I'm going to ask another one.
12   Hopefully I can avoid your objection.
13   BY MR. SUMMA:
14       Q.  So, Mr. Connor, have you ever reviewed
15   your phone records, like -- okay.  Have you ever
16   reviewed your phone records on your own volition,
17   without an attorney telling you to do it?
18       A.  Yes.
19       Q.  Do you know when the last time that was?
20       A.  I don't.  Off the top of my head, no.
21       Q.  Was it more than a year ago?
22       A.  Oh, no.
23       Q.  Okay.  And by the way, where are you
24   all?
25       A.  We're in Philadelphia.

43

1        Q.  I didn't know who traveled to who.  I
2    appreciate you all being there in the same room
3    because that avoids a lot of trouble sometimes.
4        Let's talk about Arbor Craft Builders.
5    Do you have any affiliation with Arbor Craft
6    Builders?
7        A.  No.
8        Q.  You know, obviously, that your number
9    ██████████ is associated with that Google
10   Business profile, right?
11       MR. PERRONG:  Objection to form.
12       A.  I've seen -- I've seen something on-line
13   about it.
14       Q.  You've seen something on-line about it.
15   Have you ever tried to remove it?
16       A.  Yes.
17       Q.  What did you do?
18       A.  I contacted Google.
19       Q.  When did you realize it was up there?
20       A.  I don't remember.
21       Q.  Okay.  When you got this phone number
22   you said about three years ago, what was the
23   purpose you said you got this phone number for?
24       MR. PERRONG:  Objection to form.  Asked
25       and answered.

44

1        MR. SUMMA:  Just to clarify, I think he
2    ████████████████████████████████████
3    ██
4    number, right?  So I don't think that's been
5    asked and answered.
6    BY MR. SUMMA:
7        Q.  What made you say, Okay, I'm going to go
8    get another phone number?
9        A.  A previous number that I had before,
10   that I was getting so many calls that I did not
11   want that number anymore.
12       Q.  So you got this new phone number.  How
13   soon after you got this phone number did you
14   realize it was listed on-line for a business?
15       A.  I don't remember.  It's three years.
16       Q.  What efforts did you undertake to remove
17   the number from Google Business?
18       MR. PERRONG:  Objection.  Asked and
19   answered.  You can still answer.
20       A.  I went on what I believed to be the
21   Google notification and sent a message saying that
22   that business doesn't exist, or something like
23   that.
24       Q.  Did you ever follow up with them?
25       A.  I don't recall.  With who --

45

1        Q.  How much time did that process take
2    contacting Google --
3        MR. PERRONG:  Hold on.  You asked a
4    question, it was vague, so I'm going to object
5    to the form.  Because you said "them" without
6    clarifying who "them" is.  He asked you to
7    clarify who "them" is, and then you just moved
8    on to another question.
9        MR. SUMMA:  Okay.
10   BY MR. SUMMA:
11       Q.  What is your question, Mr. Connor?
12       A.  Can you repeat your last question?  You
13   referred to "them," and I didn't know who you were
14   talking about.
15       Q.  Let me start over this whole chapter and
16   start fresh.  When you contacted Google to ask
17   them to remove this number, how long did you spend
18   doing that?  How much time did that process take?
19       A.  I don't remember exactly.
20       Q.  Do you think it was more than an hour or
21   less than an hour?
22       A.  I don't -- I don't know -- I don't
23   remember exactly -- like I said, it's been over
24   three years since I did it.  So I don't remember
25   exactly how much time I spent doing it.

46

```
 1      Q.  And you -- do you receive a lot of
 2   ███████████████████████████████
 3          MR. PERRONG:  Objection to form.
 4      A.  I don't understand what you mean by "a
 5   lot."
 6      Q.  Do you receive more than one a day or
 7   less than one a day?
 8      A.  Less.
 9      Q.  More than one a week or less than one a
10   week?
11      A.  Probably less than one a week.
12      Q.  How many do you think you would receive
13   a month?
14      A.  Not many.
15      Q.  When you receive messages, are they
16   directed at Arbor Craft Builders, or are they
17   directed at an individual?
18          MR. PERRONG:  Objection to form.
19      A.  I don't remember getting any other
20   messages for Arbor Craft, that I can recall.
21      Q.  Okay.
22      A.  Maybe.  I don't remember any other ones
23   specifically.
24      Q.  Do you agree that the fact that the
25   number is on Google Business is problematic, in
```

47

```
 1   terms of trying to avoid telemarketing messages?
 2          MR. PERRONG:  Objection to form.
 3      A.  No.
 4      Q.  You would agree with me that the number
 5   is publicly available on-line, right?
 6          MR. PERRONG:  Objection to form.
 7      A.  Yes.
 8      Q.  And you would agree with me that you
 9   don't want people to call you, right -- or, sorry.
10   Let me scratch that.  You don't want telemarketing
11   messages sent to you, generally speaking, correct?
12      A.  That's correct.
13      Q.  But you have a phone number that is
14   coincidentally listed on-line, correct?
15          MR. PERRONG:  I'm sorry.  What's that?
16   BY MR. SUMMA:
17      Q.  You have a number that is coincidentally
18   listed on-line, correct?
19          MR. PERRONG:  Objection to form.
20      A.  That's right.
21      Q.  And you contacted Google to get them to
22   take it down, right?
23      A.  Yes.
24      Q.  But you never did anything besides
25   contact Google that one time, correct?
```

48

```
 1      A.  I put it on the Do Not Call Registry.
 2      Q.  Sure.  But you didn't have any further
 3   communication with Google about the number since
 4   that one time, right?
 5      A.  As a consumer, my understanding is that
 6   when you put your number on the Do Not Call
 7   Registry, it's a message to everyone.
 8      Q.  Okay.  But you never bilaterally had a
 9   conversation with Google about this phone number
10   besides that one time; is that correct?
11      A.  I personally don't know how to -- I've
12   never had a conversation with anybody -- I don't
13   think they allow you to have conversations at
14   Google.  They don't answer a phone.  So it's
15   impossible to call them.  You can't get anybody on
16   the phone.
17      Q.  Sure.  You know how to file a legal
18   Complaint, right?
19          MR. PERRONG:  Objection to form.
20      A.  Related -- I know how to file a TCPA
21   claim.
22      Q.  You've never initiated legal action
23   regarding this number against Google?
24          MR. PERRONG:  Objection to form.
25      A.  No.
```

49

```
 1          MR. PERRONG:  And also, I will say, this
 2   touches on attorney-client privilege to the
 3   extent that it asks whether or not we've
 4   discussed the propriety of suing Google for
 5   this.
 6   BY MR. SUMMA:
 7      Q.  How much time per year do you spend
 8   working on your legal claims related to
 9   telemarketing?
10      A.  I don't know.
11      Q.  And I understand you're not answering
12   with absolute certainty; I'm just trying to get a
13   ballpark.  So in that vein, do you think you spend
14   an hour a week or less than an hour a week on your
15   TCPA or telemarketing claims?
16      A.  I don't know.  I don't chart my time.
17   And -- I don't chart my time, so I don't know how
18   I would calculate that.  It's not like an attorney
19   who bills by the hour.  I don't know.
20      Q.  I know.  And I'm not trying to get a
21   specific number.  Like I said before, you're at a
22   party and someone says, Hey, Mr. Connor, how much
23   time do you spend pursuing those telemarketing
24   claims, what would you say?
25          MR. PERRONG:  Objection.  Asked and
```

Jay Connor - June 27, 2025

**50**

```
 1      answered.  You can answer to the extent that
 2   you --
 3      A.  I would say I don't know.  It depends on
 4   the day.
 5      Q.  Do you think you spend more time working
 6   on your telemarketing claims, or do you think you
 7   spend more time on your work with Jay Connor, LLC?
 8      A.  Again, I don't chart my hours for the
 9   business or for the calls.
10      Q.  You can't give us any type of estimation
11   as to how much time you spend working on your job
12   or telemarketing claims?
13      A.  I don't think -- I think it would be
14   speculative.  I don't know.
15      Q.  I get that you're speculating.  I'm not
16   going to hold your feet to the fire.  But please
17   give us a ballpark to the best of your ability,
18   and I'll move on.
19      A.  It depends on the situation.  If I have
20   a job I'm working on, I don't spend any time on
21   telemarketing.  If I get a call and I have
22   something due, I'll spend that entire day on
23   telemarketing, or I'll turn it over to my
24   attorneys.
25      Q.  Do you have the assistance of attorneys
```

**51**

```
 1   in the other telemarketing claims that you made
 2   besides this one?
 3      A.  Currently?
 4      Q.  I guess over the past five years, you
 5   know, are attorneys helping you or are they not
 6   helping you?
 7      A.  I've had -- I've had other
 8   representation.
 9      Q.  Sure.  But on the ones where you're on
10   the filing as pro se, is there an attorney there
11   helping you out as well?
12         MR. PERRONG:  This very clearly impacts
13   attorney-client privilege, right?
14         MR. SUMMA:  I want to know, is there or
15   is there not?
16         MR. PERRONG:  If he's getting help from
17   an attorney in his pro se cases, then that
18   fact is obviously privileged.
19         MR. SUMMA:  All right.  I'll move on.
20   BY MR. SUMMA:
21      Q.  Just a little clean-up here.  The three
22   phone numbers that you have, do you have three
23   separate phone devices?  Do you have three phones?
24      A.  No.
25      Q.  They all go to your S22?
```

**52**

**53**

54

1   Court?
2       A.  No.
3           MR. SUMMA:  I think that is -- I'm going
4   to take a quick look at my notes to make sure
5   we're done, and I'll turn it over.
6           MR. PERRONG:  Yeah.  We'll take a
7   five-minute break.
8           MR. SUMMA:  Five works for me.  See you
9   at 11:27.
10          (The deposition went off the record.)
11  BY MR. SUMMA:
12      Q.  Okay.  Just to clean up something from
13  earlier, you've filed lawsuits in South Carolina
14  state court, right?
15      A.  Right.
16      Q.  And you've filed lawsuits in federal
17  court in different areas around the country,
18  right?
19      A.  I didn't hear the last part.
20      Q.  You've filed lawsuits in federal court
21  in different parts of the country, right?
22      A.  Right.
23      Q.  And you're aware that there are
24  different parts of the TCPA, right?
25      A.  That's right.

55

1       Q.  Some of them relate to automatic
2   telephone dialing systems, right?
3       A.  Right.
4       Q.  Other portions relate to the Do Not Call
5   Registry, right?
6       A.  Right.
7       Q.  Have you ever sued in federal court,
8   besides this lawsuit, for the Do Not Call Registry
9   portion of the TCPA?
10      A.  Can you say that last part again,
11  please?
12      Q.  Is this the first lawsuit you've ever
13  brought related to the Do Not Call Registry
14  provisions of the TCPA?
15          MR. PERRONG:  I'm going to object to
16  form.  Do you understand the question?
17      A.  I understand it; I think so, but I can't
18  remember which case.
19          MR. SUMMA:  Okay.  All right.  I think
20  that's all I have.
21          EXAMINATION
22  BY MR. KNOWLES:
23      Q.  I'll just have a few questions.  Hello,
24  Mr. Connor.  It's nice to meet you.  I'm Tim
25  Knowles.  I represent Woosender.

56

1   The message that's at issue in this
2   case, when did you receive that message?
3           MR. PERRONG:  Objection to form.
4       A.  I think I received -- when did I receive
5   it or when did I see it first?
6       Q.  When did you receive it?
7       A.  I think on the 13th of February or the
8   -- I don't remember the -- the 23rd or the 13th.
9   I can't remember exactly.
10      Q.  Would it be safe to say it was in
11  February of 2024?
12      A.  Yes.
13      Q.  What was your reaction when you received
14  that message?
15          MR. PERRONG:  Objection to form.
16      A.  My reaction?  I don't recall my reaction
17  at the moment.
18      Q.  Did you have any response to that
19  message?
20      A.  I think I did respond to it.
21          MR. KNOWLES:  I'm going to share a
22  document.  We can mark this Connor 3.  Give me
23  a second.
24          (Deposition Exhibit No. 3, Text
25  messages, was marked for identification.)

57

1           MR. PERRONG:  And, Tim, can you just
2   endeavor to speak a little louder?  We're
3   having a little of a hard time hearing you.
4           MR. KNOWLES:  Sure.  I've got a new
5   microphone here.  Is this all right?
6           MR. PERRONG:  Maybe a little better.
7   We'll see.
8           MR. KNOWLES:  Are you having an issue,
9   Dan, or the court reporter?
10          THE COURT REPORTER:  No.  I can hear you
11  fine.
12          MR. KNOWLES:  I had to send a request to
13  share my screen.  I don't know who is -- okay.
14  BY MR. KNOWLES:
15      Q.  Can you see this document?
16      A.  Yes.
17      Q.  So we can agree, on the upper right-hand
18  corner is a message that's in a blue box, correct?
19      A.  Yes.
20      Q.  Is that the message that's at issue in
21  this case?
22          MR. PERRONG:  Objection to form.
23      A.  Is that the wording that was used?
24      Q.  I'm asking, is that the message that you
25  saw that instigated the lawsuit in this case?

---

**58**

1    A.  It wasn't in that form, but it appears
2  to be the same message, wording.
3    Q.  And on the left side, we see messages in
4  gray boxes, correct?
5    A.  Yes.
6    Q.  And the first message says, "How much
7  does it cost?"  Correct?
8    A.  Yes.
9    Q.  Is that a message that you sent in
10 response to the earlier text message?
11   A.  Yes.
12   Q.  And it looks like that was sent on March
13 1st of 2024?
14   A.  Yes.
15   Q.  When did you first view that message
16 from Sally about the Zing website design?
17   A.  I don't recall exactly -- the exact day
18 I viewed it.
19   Q.  Was it the same day, do you know, that
20 you sent that response, "How much does it cost?"
21   A.  I don't recall exactly.
22   Q.  Why did you send that message, "How much
23 does it cost?"
24       MR. PERRONG:  Objection to form.
25   A.  Because it didn't give a company name or

---

**59**

1  the name of the person sending it.
2    Q.  So would it be correct to say you were
3  trying to start a conversation to get that
4  information?
5        MR. PERRONG:  Objection to form.
6    A.  I was trying to find out who was texting
7  me.
8    Q.  And why were you trying to do that?
9        MR. PERRONG:  Objection to form.
10   A.  So I could ask them to stop.
11   Q.  Were you doing that because you were
12 trying to identify somebody you could file a
13 lawsuit against?
14       MR. PERRONG:  Objection to form.
15   A.  Possibly.
16   Q.  You see it says "Reply 'not interested'
17 to opt out," right?
18   A.  Right.
19   Q.  If you were trying to get them to stop,
20 why didn't you just reply "not interested"?
21       MR. PERRONG:  Objection to form.
22   A.  I wanted to know who it was.
23   Q.  Did you have any sort of an emotional
24 reaction to receiving that message from Zing
25 website designs?

---

**60**

1        MR. PERRONG:  Objection to form.
2    A.  Emotional?
3    Q.  Correct, yeah.
4    A.  Other than it wasted my time, no.
5    Q.  When you say wasted your time, are you
6  talking about the time you spent reading that
7  message?
8    A.  Not just that.
9    Q.  What else are you referring to?
10   A.  Trying to figure out who it is and why
11 they're texting me.
12   Q.  When you say why they were texting you,
13 did you have some understanding that they were
14 texting you for some reason other than asking you
15 to use their website services?
16   A.  I was trying to determine --
17       MR. PERRONG:  Objection to form.
18   A.  I was trying to determine why they were
19 texting a number that I had registered on the Do
20 Not Call Registry.
21   Q.  How much time did you spend reading the
22 initial message?
23   A.  I don't recall.
24   Q.  Did this message cost you any extra
25 minutes on your phone plan?

---

**61**

1    A.  I don't believe so.
2    Q.  Did it cause any wear and tear to your
3  device?
4        MR. PERRONG:  Objection to form.
5    A.  I'm sure that it used the battery when I
6  was checking it.
7    Q.  So I want to share a document.  We'll
8  mark this Connor 4.
9        (Deposition Exhibit No. 4, AT&T Prepaid
10 Account History, was marked for identification.)
11 BY MR. KNOWLES:
12   Q.  Do you see this document?
13   A.  Yes.
14   Q.  What is this?
15   A.  A page out of my phone bill.
16   Q.  At the top it says "AT&T Prepaid,"
17 correct?
18   A.  Yes.
19   Q.  Are all of your accounts with AT&T?
20   A.  Which accounts are you referring to?
21   Q.  Well, you said you had three cellphone
22 numbers, correct?
23   A.  Correct.
24   Q.  In 2024, were all of them with AT&T?
25   A.  Correct.  Yes.

Jay Connor - June 27, 2025

62

1    **Q.** Is this the bill that you reviewed when
2  you determined that you had received two text
3  messages?
4    **A.** I believe so, yes.
5    **Q.** And it says here that it's data and text
6  usage details for the date of February 23rd, 2024,
7  correct?
8    **A.** Correct.
9    **Q.** And this is only for February 23rd of
10  2024, correct?
11    **A.** I believe so, yes.
12    **Q.** Can we agree that it says "from February
13  23rd, 2024, to February 23rd, 2024"?
14    **A.** Yes.
15    **Q.** Do you normally receive your phone bills
16  sort of individually from day-to-day?
17    MR. PERRONG: Objection to form.
18    **A.** No.
19    **Q.** Is this something that you looked up
20  on-line?
21    **A.** Yes.
22    **Q.** So did you specifically search for the
23  date, February 23rd of 2024?
24    **A.** Yes.
25    **Q.** Why were you searching for that date?

63

1    MR. PERRONG: Objection.
2  Attorney-client privilege; instructing the
3  witness not to answer.
4  BY MR. KNOWLES:
5    **Q.** Were you specifically performing a
6  search in connection with the lawsuit that you
7  filed in South Carolina?
8    MR. PERRONG: Objection. I'm going to
9  object as to privilege. Can we -- can we get
10  a stipulation -- or can we stipulate that this
11  was -- I would be comfortable stipulating that
12  this was searched for pursuant to his
13  attorney's instructions in this litigation.
14    MR. KNOWLES: When you say "this
15  litigation," which case are you talking about?
16    MR. PERRONG: In preparation for or in
17  the course of this case, the federal case.
18    MR. KNOWLES: And you're instructing him
19  not to answer the prior question, correct?
20    MR. PERRONG: I think to -- like I said,
21  I'm willing to stipulate that that was my
22  instruction to him, or I'm willing to disclose
23  that this was part of my instruction to him in
24  terms of documents to gather and/or collect in
25  anticipation of or while this litigation was

64

1  ongoing.
2  BY MR. KNOWLES:
3    **Q.** So you're aware that this lawsuit that
4  we're here for today is in connection with an
5  allegation that you received two separate text
6  messages in violation of the Do Not Call list,
7  correct?
8    **A.** Yes.
9    **Q.** Do you have any other claims that you've
10  made in connection with allegations that you
11  received two separate calls under the Do Not Call
12  list?
13    MR. PERRONG: Objection to form. I
14  don't quite understand the question. Are you
15  asking if he had more than one -- if he's
16  asserting more than one cause of action in the
17  lawsuit?
18    **Q.** No. Not just in this lawsuit, but any
19  other claims that you've made, aside from this
20  one, alleging that you received two separate text
21  messages in violation of the Do Not Call Registry?
22    **A.** Yes.
23    **Q.** And how many of those do you have?
24    **A.** One.
25    **Q.** What court is that in?

65

1    **A.** The District of South Carolina.
2    **Q.** When you received -- I'm going to stop
3  sharing this. When you received that text
4  message, the one that's at issue in this case, did
5  you discuss it with anybody?
6    MR. PERRONG: Objection, to the extent
7  that it asks for attorney-client privileged
8  information.
9  BY MR. KNOWLES:
10    **Q.** Other than your attorney, did you
11  discuss that text message with anybody?
12    **A.** Not that I recall.
13    **Q.** And we're clear that when you received
14  that message, it was your understanding that you
15  had received one text message, correct?
16    **A.** It was presented to me as one text
17  message through my device.
18    **Q.** And it was your understanding that you
19  had received one text message, correct?
20    **A.** That's how I saw it. That's how it
21  appeared on my phone.
22    **Q.** I want to share a document. I'm going
23  to mark it Connor 5.
24    (Deposition Exhibit No. 5, Google Maps
25  e-mail regarding Arbor Craft Builders, was marked

66

1    for identification.)
2    BY MR. KNOWLES:
3        Q.  Do you see this document?
4        A.  Yes.
5        Q.  Can we agree that this -- well, why
6    don't you tell me what this is.
7        A.  It's an e-mail, I think.  Can you scroll
8    up a little bit, please?
9        Q.  In terms of the scrolling up, this is
10   the best I can do.  I can go this direction.
11       A.  That's what I meant.  Right.  I see it.
12       Q.  Okay.  Do you know what this is?
13       A.  That was my attempt to notify Google
14   that the Arbor Craft listing was incorrect.
15       Q.  And would it be correct to say that you
16   reached out to Google on March 14th of 2022?
17       A.  I don't remember specifically that day,
18   but, according to the e-mail, yes.
19       Q.  Do you know anybody who has ever worked
20   for Arbor Craft Builders?
21       A.  No.
22       Q.  Have you ever worked in any way with
23   Arbor Craft Builders?
24       A.  Not to my knowledge, no.
25       Q.  Do you have any idea how your phone

67

1    number came to be listed on a Google Business page
2    for them?
3            MR. PERRONG:  Objection to form.
4        A.  I do not know.
5        Q.  Did you review any documents in
6    preparation for this deposition?
7        A.  Yes.
8        Q.  And what did you review?
9        A.  I reviewed the Complaint -- or the
10   Amended Complaint.  And that was about it.
11       Q.  When you received the text message
12   that's at issue in this case, did you save a copy
13   of that text message?
14       A.  Can you repeat that again, please?  I'm
15   sorry.
16           MR. PERRONG:  And objection to form.
17   BY MR. KNOWLES:
18       Q.  When you received the text message that
19   is at issue in this case, did you save a copy of
20   that message?
21       A.  Yes.
22       Q.  And why did you do that?
23       A.  Well, I sent it to myself so I could
24   present it as an Exhibit when I determined that I
25   was going to -- I saved it when I determined I was

68

1    going to file a lawsuit.
2        Q.  When did you make that determination?
3        A.  Sometime after -- I mean, shortly after
4    March 1st, I think.  I got the text in late
5    February.  I filed the case in mid March.
6        Q.  So that would be -- could we say early
7    March of 2024?
8        A.  Something like that.
9        Q.  Have you saved any other documents in
10   connection with the claims you're making in this
11   case?
12       A.  Well, the phone bill that you have.  I
13   think I may have -- the text exchange you
14   presented, I think I may have saved that.  Um, I
15   think I sent them a letter.  I think I have that.
16       Q.  When you say "them," who are you
17   referring to?
18       A.  I think I sent them an e-mail or a
19   letter prior to the lawsuit.  I can't remember for
20   sure.
21       Q.  Let me just ask, when you say "them,"
22   who are you referring to?
23       A.  Um, ServiceQUIK.
24       Q.  Have you incurred any attorney's fees in
25   connection with this case?

69

1            MR. PERRONG:  Objection.
2    Attorney-client privilege; instructing the
3    witness not to answer.
4            MR. KNOWLES:  I'm sorry.  You are
5    claiming attorney's fees, correct?
6            MR. PERRONG:  Objection.
7    Attorney-client privilege; instructing the
8    witness not to answer.
9            MR. KNOWLES:  I'm asking you, Mr.
10   Perrong.  Are part of the claims made in this
11   case related to attorney's fees?
12           MR. PERRONG:  Yes.  The state law claims
13   has an attorney's fees provision, as well as
14   the class claims on the TCPA.
15           MR. KNOWLES:  So I'm asking, have you
16   incurred any attorney's fees in connection
17   with this case?
18           MR. PERRONG:  I have -- yes.  I have
19   incurred attorney's fees.
20           MR. KNOWLES:  I'm asking the witness
21   have you paid --
22   BY MR. KNOWLES:
23       Q.  Let's ask, have you paid any attorney's
24   fees in connection with this case?
25           MR. PERRONG:  Objection.  Because it

Jay Connor - June 27, 2025

## 70

1  asks as to the details of our fee arrangement,
2  that's attorney-client privilege.
3      MR. KNOWLES:  Are you going to, at some
4  point, disclose your fee arrangement?
5      MR. PERRONG:  In connection with a
6  motion for a class certification if a class is
7  certified or a fee award in terms of the state
8  court claims.
9      MR. KNOWLES:  So I think, if that's part
10  of the claim, I don't see how you get around
11  me asking questions about this right now.
12      MR. PERRONG:  I'm not sure that you're
13  entitled to know what our fee structure is or
14  the amount of our hourly rate in connection
15  just because there's -- there's an attorney's
16  fee hook for which we would be entitled to our
17  attorney's fees in this matter.  Certainly I
18  think, to the extent that you can come up with
19  case law saying that there is, we would be
20  happy to review it.  But I don't think that
21  you're entitled to -- I certainly am not aware
22  of any case law saying you're entitled to it
23  just because there's an attorney's fee hook.
24      MR. KNOWLES:  I want to be very clear
25  about what you're saying.  You're saying that

## 71

1  right now, at this deposition, you're
2  prohibiting discovery into the amount of
3  attorney's fees possibly paid, the amount
4  incurred, the hourly rate that you might be
5  charging him or anything of that nature; is
6  that accurate?
7      MR. PERRONG:  That's accurate, unless we
8  see case law otherwise; certainly, we would
9  take a look at it.
10      MR. KNOWLES:  Would you be willing to
11  present him for another deposition in that
12  case?
13      MR. PERRONG:  To the extent that you
14  want to suspend and get us case law and get
15  us, you know -- I think, to the extent that
16  you have a -- I mean, look, if you're going to
17  ask for our attorney-client fee agreement in
18  discovery -- which the discovery period is
19  closed anyway.  But to the extent that you
20  wanted to ask for it, we would probably object
21  on that same basis, unless we saw compelling
22  contrary case law.
23      If we did, we'd probably present our
24  attorney-client -- we'd stipulate to present
25  our attorney-client agreement.  If we don't

## 72

1  see applicable case law, we'd withhold on the
2  basis of privilege.
3      MR. KNOWLES:  In your experience, do you
4  claim attorney's fees without disclosing a fee
5  agreement or an hourly rate or anything like
6  that?
7      MR. PERRONG:  We typically do not
8  disclose the fee agreement and make a motion
9  for attorney's fees in class -- as is normal
10  in class action practice, we make the motion
11  for attorney's fees at class -- once a class
12  is certified and certification -- and a
13  judgment is rendered in terms of that or a
14  settlement -- class settlement; or in terms of
15  an individual case, at the close of
16  litigation, with respect to attorney's fees --
17  with a request for attorney's fees if we're
18  getting individual attorney's fees that we're
19  entitled to under the statute.
20      MR. KNOWLES:  Just so I'm clear, and we
21  can move on from this.  But just so I'm clear,
22  you're instructing the witness not to answer
23  these questions?
24      MR. PERRONG:  I'm instructing the
25  witness not to answer, with the understanding

## 73

1  that to the extent -- I think to the extent we
2  can get some sort of understanding or
3  agreement on the record, to avoid you or any
4  of us needing to take Mr. Connor's deposition
5  again, would our attorney-client fee
6  agreement, A, resolve your line of
7  questioning?  B, if the answer to that is yes,
8  then can we come to some sort of understanding
9  or stipulation on the record as to, if you'll
10  get us case law saying that you're entitled to
11  it, we'll review it and provide it, if that's
12  the case?
13      If not, then we're going to object and,
14  you know -- certainly, to the extent if there
15  is ambiguous case law, we'll just file --
16  we'll just indicate that there is a discovery
17  dispute and bring in the Court.
18      MR. KNOWLES:  As long as my
19  understanding is that you're instructing him
20  not to answer, we'll move on.  I'm not sure I
21  heard that --
22      MR. PERRONG:  Let me call my co-counsel
23  and see as to what we want to do, if you can
24  give me five minutes.
25      MR. KNOWLES:  Let's do that at the end.

Jay Connor - June 27, 2025

74

1     Because I think I'm wrapping up.
2  BY MR. KNOWLES:
3     Q.  You mentioned, Mr. Connor, earlier, that
4  you have a phone that will, I think, take two
5  separate messages and join it into one message.
6  Is that accurate?
7     A.  That's how I understand it, yes.
8     Q.  When did you come to that understanding?
9     A.  When I saw the phone bill.
10     MR. PERRONG:  And also I would instruct
11  that that's partly attorney-client privilege
12  and trial preparation and expert privilege as
13  well.
14     Q.  Prior to reviewing the phone bill, did
15  you have any understanding that you had a phone
16  that, in your words, would take two messages and
17  join them into one message?
18     A.  No.
19     MR. KNOWLES:  I don't have any other
20  questions.
21     MR. PERRONG:  Okay.  If you want to go
22  back on the fee question, I can -- I can state
23  what -- I can make a statement as to that if
24  you wanted to have that.  But to the extent
25  that it's attorney-client privilege, to avoid

75

1  waiving the privilege, I would -- I would
2  instruct -- I would state the basis of what
3  waiver -- like, I would answer on Mr. Connor's
4  behalf to avoid him making statements that
5  would otherwise go beyond what I would be
6  willing to have him waive as to privilege.
7     MR. KNOWLES:  So what is your statement?
8     MR. PERRONG:  So that is that there is
9  an hourly rate that myself and my co-counsel
10  are working on.  Courts have approved rates
11  for reasonable hourly work higher than that,
12  which we intend to seek as part of either a
13  lodestar or similar sort of arrangement in
14  this litigation.
15     MR. KNOWLES:  What's the rate?
16     MR. PERRONG:  It's our contention that
17  the rate is privileged, and we're not willing
18  to disclose it at this time.
19     MR. KNOWLES:  What is the amount of
20  attorney's fees incurred up until today?
21     MR. PERRONG:  We're not willing to
22  disclose that at this time.
23     MR. KNOWLES:  That could be one thing I
24  look at as trying to make a reasonable offer
25  on a case.  How can I do that if you're not

76

1  going to disclose to me the amount of
2  attorney's fees to date?
3     MR. PERRONG:  Certainly to the extent
4  that we want to have Rule 408 communications,
5  we can have those.  But that's outside the
6  scope of this deposition.
7     MR. KNOWLES:  I have no other questions.
8  Anything from you, Mr. Perrong, or, Mr.
9  Summa?
10     MR. PERRONG:  Yes.  Give me five to ten
11  minutes to formulate some Redirect questions,
12  and I'll be back with you.
13     (The deposition went off the record.)
14        EXAMINATION
15  BY MR. PERRONG:
16     Q.  Mr. Connor, what is your understanding
17  of what TCPA money is legally characterized as?
18     A.  For the statutory damages and injuries
19  from receiving calls in violation of the statute.
20     Q.  You don't want the calls that you
21  receive; is that right, Mr. Connor?
22     A.  That's right.
23     Q.  You do nothing to want or deserve them,
24  right?
25     MR. KNOWLES:  Objection to form.

77



78

1      A.   Um, occasionally I'll use it socially.
2      Q.   Do you use it for any other purposes
3  besides socially?
4      A.   No.
5      Q.   Do you use it for providing to any other
6  businesses not on telemarketing calls?
7      A.   Ask me that again, please.
8      Q.   Do you use the number to provide to
9  businesses other than in the course of a
10 telemarketing call?
11     A.   I don't remember.  I may have, but I
12 don't remember.
13     Q.   And for what purpose would you have done
14 that?
15     A.   Privacy.  There's some people or
16 businesses that I don't want to have my main
17 numbers.
18     Q.   Have you ever been threatened as a
19 result of your TCPA advocacy?
20     A.   Yes.
21     Q.   How have you been threatened as a result
22 of your TCPA advocacy?
23     A.   I've had a telemarketer threaten to come
24 to my house and blow my head off; rape my mom.
25 They've inserted my telephone number in caller

79



80

1      A.   I want to verify the time and the date
2  of a call -- an alleged call.
3      Q.   In other words, you want to review the
4  accuracy of the evidence as you're proceeding in a
5  lawsuit?
6      A.   That's right.
7      Q.   Throughout the course of this deposition
8  you've heard both Mr. Summa and Mr. Knowles refer
9  to this case as -- or the communications that you
10 received as "the message."  Is that your
11 understanding of what you received?
12     A.   I now understand that it was two
13 messages.
14     Q.   And why do you understand it was two
15 messages?
16     A.   Because it came over to my phone in two
17 separate messages and was presented to me as one
18 message in my phone.
19     Q.   And that's reflected in your telephone
20 records?
21     A.   Yes.
22     Q.   So the assumption that the defendants
23 have that you only received one message is
24 incorrect?
25          MR. KNOWLES:  Objection to form.

81

1      A.   Yes.
2      Q.   So your understanding is, whenever the
3  attorneys that deposed you today, Mr. Summa and
4  Mr. Knowles, refer to a message, that they're in
5  fact referring to what you understand are two
6  messages?
7      A.   Correct.
8      Q.   Do you track by hour how much work you
9  do in your Jay Connor, LLC?
10     A.   No.
11     Q.   How are you compensated for the work
12 that you perform for Jay Connor, LLC?
13     A.   Most every job is determined by the job
14 being completed.
15     Q.   Do telemarketing calls disturb from your
16 work at Jay Connor, LLC?
17     A.   Yes.
18     Q.   As part of -- did you want the message
19 -- did you want the text messages that are the
20 subject of this litigation?
21     A.   No.
22     Q.   In fact, you asked Google to remove your
23 number from the erroneous Google Business listing,
24 correct?
25     A.   The best way I knew how, yes.

Jay Connor - June 27, 2025

---

82

1     Q.   Is it your understanding that telephone
2  companies, as a matter of course, reassign numbers
3  to other customers once they've been terminated?
4     A.   Yes.
5     Q.   To be clear, you have no connection with
6  or dealings with Arbor Craft Builders; is that
7  right?
8     A.   That's right.
9     Q.   You didn't pay Arbor Craft Builders for
10  your telephone number, did you?
11     A.   No.
12     Q.   Arbor Craft Builders did not give you
13  their telephone number, did they?
14     A.   No.
15     Q.   Why -- with respect to your parents,
16  ██████████████████████████████████████
17  harm on you?
18     A.   It may keep me from getting a call from
19  them.
20     Q.   In fact, I think it was your testimony
21  ██████████████████████████████████████
22     A.   That's right.
23     Q.   And you do that to receive calls from
24  your parents?
25     A.   I want to be available for them at any

---

83

1  time.
2     Q.   So if, God forbid, your parents were to
3  go to the hospital in the middle of the night --
4  one of your parents were to go to the hospital in
5  the middle of the night, they would call you on
6  that number and it would wake you up?
7     A.   It would be a number they know they can
8  reach me at.  They've got all my numbers, but they
9  know that number is on all the time.
10     MR. PERRONG:  I have no further
11  questions.
12          RE-EXAMINATION
13  BY MR. SUMMA:
14     Q.   Do you normally -- when you say you
15  review your phone billing records, are they
16  normally on like a per-day basis or a per-month
17  basis?
18     A.   You access them on-line in any form you
19  want, in any time period you choose.
20     Q.   Right.  But when you say you review your
21  phone records, typically is that you review a
22  particular day's phone's records, or are you
23  looking at the month?  How do you typically review
24  them?
25     MR. PERRONG:  Objection to form.

---

84

1     A.   When I get a call and I want to try to
2  determine where it originated, I'll pull the
3  records for that day.
4     Q.   And you did that prior to filing the
5  state court action, right?
6     A.   I believe so.
7     Q.   And then subsequent, obviously, you said
8  in your Complaint that it was "the" text, correct?
9     A.   Well, as I saw it -- as I saw it, yes.
10     Q.   So you refer to it as "the" text after
11  having seen your records?
12     A.   Again, we're talking over a year ago.
13  So I don't remember the exact of the timeline of
14  when I reviewed it, and I wasn't aware of the
15  phenomenon or however you -- the word you used to
16  describe the combination of two messages into a
17  single text.  But when I saw the single text on my
18  phone, that's why I alleged a single text.
19     Q.   To the extent that there was two
20  messages, you received them exactly at the same
21  time, right?
22     A.   According to the phone bill, yes.
23     Q.   You suffered no financial penalty as a
24  result of there being two messages instead of one?
25     MR. PERRONG:  Objection to form.

---

85

1     A.   Well, a larger message is going to take
2  more phone capacity.  It's going to use more
3  battery.
4     Q.   Okay.  Your testimony is that a larger
5  message is going to take more phone capacity and
6  take more memory?
7     A.   Yes.
8     Q.   Okay.  You weren't billed by AT&T for
9  either of these messages, right?
10     MR. PERRONG:  Objection to form.
11     A.   Correct.
12     Q.   You didn't even know --
13     MR. PERRONG:  I want to clarify
14  something as to your previous question,
15  though, because I don't think I quite
16  understand it.  When you say "billed," do you
17  actually mean physically charged, or do you
18  mean what appeared on his bill?
19  BY MR. SUMMA:
20     Q.   Were you charged for receiving these
21  messages?
22     MR. PERRONG:  With that, you can answer.
23     A.   No.  It was part of the phone plan which
24  I'm charged for.
25     MR. SUMMA:  Sorry.  Just to clean it

---

Jay Connor - June 27, 2025

86

1  up -- this is a question for Mr. Perrong.  I
2  assume that you discussed strategy or whatever
3  during the break in the deposition?
4       MR. PERRONG:  I'm sorry.  What's the --
5  firstly, it's not my deposition.
6       MR. SUMMA:  I can ask him.
7       MR. PERRONG:  You can't ask -- okay.
8  Ask him a question, and I'll review it and
9  assert any objections on the record.
10 BY MR. SUMMA:
11      **Q.   So during the break in the deposition,**
12 **Mr. Connor, did you have discussions with your**
13 **attorney that relate to strategy of how to answer**
14 **and respond to questions in this deposition?**
15      MR. PERRONG:  Objection.  Instructing
16 the witness not to answer; attorney-client
17 privilege.  Furthermore, it's vague as to what
18 break you're speaking to.
19      MR. SUMMA:  The most recent break.
20      MR. PERRONG:  Objection to
21 attorney-client privilege.
22      MR. SUMMA:  Are you willing to say
23 anything to that, Mr. Perrong?
24      MR. PERRONG:  Objection to
25 attorney-client privilege.

87

1  BY MR. SUMMA:
2       **Q.   Mr. Connor, what is hush.com?**
3       MR. PERRONG:  Objection.  Outside the
4  form of Redirect.  Instructing the witness not
5  to answer.
6       MR. SUMMA:  Can you just let him answer,
7  subject to the --
8       MR. PERRONG:  Objection.  It's outside
9  the form of Redirect.  You had the opportunity
10 to question the witness.  You're asking him a
11 new question that has no bearing on any
12 question that you asked.  I'm instructing the
13 witness not to answer.
14      MR. SUMMA:  Okay.  So the rule says a
15 person may instruct the deponent not to answer
16 only when necessary to preserve a privilege,
17 to enforce a limitation ordered by the Court
18 or to present a motion under Rule 30(d)3.  Do
19 you intend to present a motion to Rule 30(d)3?
20      MR. PERRONG:  It is a limitation imposed
21 by the rules as to the scope of Redirect.  I
22 can pull it up for you.
23      MR. SUMMA:  Sure.  Show me where it says
24 that.  I hear your objection.  Just typically
25 it's taken subject to the objection.  Right?

88

1       MR. PERRONG:  No.  Because I'm
2  instructing the witness not to answer.
3       MR. SUMMA:  Right.  But --
4       MR. PERRONG:  Under Rule 30(c)(2), it
5  states that an "Objection at the time of
6  examination, whether to evidence, to a party's
7  conduct, to the officer's qualifications, to
8  the manner of taking the deposition or to any
9  aspect of the deposition must be noted on the
10 record but the examination still proceeds.
11      "The testimony is subject to any
12 objection.  The objection must be stated
13 concisely, in a non-argumentative and
14 non-suggestive manner.  A person may instruct
15 a deponent not to answer, only when necessary
16 to preserve a privilege, to enforce a
17 limitation ordered by the Court or to present
18 a motion under Rule 30(b)(3)."
19      If we look at Rule 30(b)(3), the motion
20 to "terminate or limit on any grounds at any
21 time during the deposition; the deponent or a
22 party may move to terminate or limit it on the
23 ground that it is being conducted in bad faith
24 or in a manner that unreasonably annoys,
25 embarrasses or oppresses the deponent or

89

1  party.
2       "The motion may be filed in the court
3  where the action is pending or the deposition
4  is being taken.  If the" objection -- "If the
5  objecting deponent or party so demands, the
6  deposition must be suspended for the time
7  necessary to obtain the order."
8       Moving to the scope of Cross-Examination
9  and Redirect Examination, under Federal Rule
10 of Evidence 611, a trial judge, which this is,
11 of course, testimony taken in anticipation of
12 trial, would specifically -- Rule 611(b)
13 allows "Cross-Examination on any matter
14 relevant to any issue in the case, including
15 credibility."
16      The issue here, I believe -- and again,
17 I'm just reviewing your objection and stating
18 our objection on the record on the fly, and
19 we, of course, reserve the right to continue,
20 is the Judge -- it's the Judge's discretion as
21 to whether or not the scope of Redirect is
22 going to be limited to the matters on Direct
23 Examination and Cross.  Asking about this Hush
24 matter has nothing to do with the questions
25 that you asked.

Jay Connor - June 27, 2025

90

1    MR. SUMMA: So it's on the Exhibit that
2  we presented, right?
3    MR. PERRONG: In what Exhibit?
4    MR. SUMMA: hush.com; I want to know
5  what hush.com is.
6    MR. PERRONG: You had the opportunity,
7  particularly as it was an Exhibit -- you had
8  the opportunity to ask him on Direct. You
9  didn't ask him. Your time is gone. You can't
10  ask him additional questions on Cross that you
11  didn't ask on Direct.
12    MR. SUMMA: So I think this is like any
13  other objection, right? Rule of Evidence 401,
14  relevance, you object --
15    MR. PERRONG: So --
16    MR. SUMMA: -- first of all, it's
17  preserved. But it's taken subject to the
18  objection. So this isn't one of those
19  situations where it's privileged. Right? I
20  hear you. Maybe the Judge will not let the
21  answer get admitted, right, on 401 or however.
22  But the deposition continues --
23    MR. PERRONG: But Rule 30(c)(1) states
24  that, "The examination and Cross-Examination
25  of a deponent would proceed as they would at

91

1  trial," under Rule 615.
2    MR. SUMMA: Sure. And that's a
3  different rule of civil procedure.
4    MR. PERRONG: A rule of evidence.
5    MR. SUMMA: I'm not saying your
6  objection is dumb in terms of the rules of
7  evidence. I'm saying the rules of the
8  deposition are that you take the testimony
9  subject to the objection, except for --
10    MR. PERRONG: But it's not subject to
11  the objection. Because at trial, if you ask
12  him an additional question on Cross, the Judge
13  is going to say that the objection is
14  sustained or overruled and make that
15  determination on the record. If the objection
16  is sustained, the witness doesn't answer the
17  question.
18    MR. SUMMA: Right.
19    MR. PERRONG: If you want to continue
20  down this road, we'll move to limit or
21  terminate the deposition, and we'll call the
22  Court and ask the Court to make a
23  determination on the record as to whether or
24  not you're allowed to ask a question outside
25  the scope, that explicitly goes outside of

92

1  Rule 30(c)(1).
2    MR. SUMMA: So --
3    MR. PERRONG: That's a limitation -- a
4  person may instruct a deponent not to answer
5  only when necessary, A, to preserve a
6  privilege. We're not contending that's
7  privilege, so that is out. B, to enforce a
8  limitation ordered by the Court. The
9  limitation technically is not ordered by the
10  Court, but it's ordered by the rules. Rule
11  30(c)(1), which states that "The examination
12  and Cross-Examination of a deponent would
13  proceed as they would at trial under the rules
14  of evidence."
15    MR. SUMMA: I think your objection would
16  be very valid at a trial or however. Okay?
17  But I mean, I don't think it's grounds -- I
18  think you have to -- if you're going to limit
19  the deposition, it has to be because of the
20  Court-ordered limitation, because you're
21  trying to assert a privilege -- you just
22  said --
23    MR. PERRONG: And that's the limitation
24  imposed by the rules. So I'm going to
25  instruct the witness not to answer, based on

93

1  the limitation that's imposed by the rules.
2    MR. SUMMA: Tim, do you have any
3  thoughts on that?
4    MR. KNOWLES: I'm not jumping into this.
5  I do have another question or two.
6    MR. SUMMA: Okay. So I mean, I think
7  you've got to stop the deposition and move for
8  a protective order. That's really what you've
9  got to do if you really want to play that
10  game. I'm just trying to get basic
11  information out of him. It's a deposition.
12  We're not at trial. There's no Judge; there's
13  no prejudice.
14    It's an objection, right, under the
15  rules of evidence, as you say. Right? So I
16  mean, it's not proper to instruct a witness
17  not to answer based on some evidentiary thing.
18  I don't think that you have any grounds to
19  instruct him not to answer. Right? You've
20  already said it's not because of privilege;
21  you've already said it's not for the Court.
22  You're trying to equate the Court with the
23  rules.
24    You know, maybe what we do is we
25  continue everything else, right, and then we

Jay Connor - June 27, 2025

94

1    save this question for the end, and then
2    you're either going to have to move -- stop
3    the deposition and move for a protective
4    order --
5        MR. PERRONG:  That's not how it works.
6        MR. SUMMA:  So I hear you.  Okay?  And
7    maybe I'm wrong.  Okay?  But I can't just take
8    your word for it in terms of how it works.
9    All I know is what I know and what I'm reading
10   in the rules.  And I don't think your
11   objection is valid under the rules.  It would
12   make sense --
13       MR. PERRONG:  So I'll tell you what, if
14   you want to do that, then what we're going to
15   do is we will suspend the deposition for the
16   time necessary to obtain an order from the
17   Court on this issue.  And we can call chambers
18   right now, and I'm sure Judge Neureiter's
19   chambers -- I imagine that Judge Neureiter
20   would be available.
21       MR. SUMMA:  Okay.  Call him up.
22       THE COURT REPORTER:  Are we off the
23   record?
24       MR. SUMMA:  I guess.
25       MR. PERRONG:  No, no, no.  We're on the

95

1    record.  We're calling the Court.  We need a
2    record of that.
3        MR. SUMMA:  Well, you blacked your
4    video.
5        MR. PERRONG:  Yeah.  Because I'm looking
6    for the Court's number.
7        Good morning.  I have -- I am counsel
8    for Plaintiff in the case of Jay Connor versus
9    ServiceQUIK, Inc.  We're currently in
10   deposition with Mr. Connor, and a dispute has
11   arisen as to the propriety of a line of
12   questioning that we would like to obtain the
13   Judge's order on.
14       UNKNOWN PERSON:  Okay.
15       MR. PERRONG:  So the line of questioning
16   is a question regarding something that was not
17   brought up on Direct Examination.  The
18   plaintiff's position is that the plaintiff
19   should not answer because it is outside the
20   scope of Redirect examination.  So I didn't
21   know what the procedure was, if the Judge is
22   available to rule on the objection, or if that
23   needs to be continued to a different date and
24   time.
25       UNKNOWN PERSON:  You've contacted the

96

1    clerk's office.  So if you have the contact
2    information for chambers, I suggest you use
3    it.  We do not direct the call to chambers.
4    All I can tell you, regarding your question,
5    is if you would like the Judge to rule on
6    something, from the clerk office's standpoint,
7    you need to file a motion and await the ruling
8    there.
9        MR. PERRONG:  I understand.  It just
10   looks like I've called the wrong number, then.
11   Sorry.  Bye-bye.
12       MR. SUMMA:  Also, it definitely relates
13   because --
14       MR. PERRONG:  Hello.  My name is Andrew
15   Perrong.  I am counsel for the plaintiff in
16   the case of Connor versus ServiceQUIK, Inc.
17   We're currently in deposition with Mr. Connor
18   and a dispute has arisen as to the propriety
19   of an objection and line of questioning on the
20   record.
21       We were wondering if Judge Neureiter
22   would be available to hear the objection and
23   make a ruling on the record.
24       UNKNOWN PERSON:  Can you give me a case
25   number?

97

1        MR. PERRONG:  Certainly.  The case
2    number is 24-cv-2286.
3        UNKNOWN PERSON:  How long do you plan on
4    being in the deposition?  And can you move on
5    to other topics and come back to this?  The
6    Judge is on the bench in a criminal matter.
7        MR. PERRONG:  Certainly.
8        UNKNOWN PERSON:  And he's hearing
9    testimony.  I can't say for sure how long it's
10   going to take.
11       MR. PERRONG:  No.  We don't want to
12   take --
13       UNKNOWN PERSON:  -- (video buffering) --
14   amenable to this -- to doing this.  So I'm
15   sure he'll be available at some point.
16       MR. PERRONG:  Certainly.  We can move on
17   to other matters in the meantime.  Would you
18   like to take down my number to give us a call?
19       UNKNOWN PERSON:  Yeah.
20       MR. PERRONG:  (215) -- (audio muted).
21       UNKNOWN PERSON:  And you are Plaintiff's
22   counsel?
23       MR. PERRONG:  That's right.
24       UNKNOWN PERSON:  I will -- as soon as he
25   gets off the bench, I'll run this by him.  Who

98

1    is being deposed?  The plaintiff is?
2         MR. PERRONG:  The plaintiff is being
3    deposed, that's correct.
4         UNKNOWN PERSON:  And we'll give you a
5    call back.
6         MR. PERRONG:  Thank you.
7         All right.  We can move on.
8         MR. SUMMA:  Just on that, part of this
9    is -- it appears to be an employment thing,
10   right?  And we're talking, and you talked on
11   your questions, about his employment and all
12   that stuff.  Right?  So I think it's relevant.
13   I think it's within the scope of Redirect,
14   frankly.
15        But this is beside the point.  You know,
16   if you want to limit it for whatever grounds,
17   I don't have any objection to you filing with
18   the Court.
19        MR. PERRONG:  We've already called the
20   Court.  So we'll wait for the Judge's ruling
21   on that objection.
22   BY MR. SUMMA:
23        Q.  So you don't know anyone at Arbor Craft
24   Builders, do you, Mr. Connor?
25        A.  No.

99

1         Q.  I guess that can be -- do you know any
2    guy named Nettles?  Do you know an attorney named
3    Mr. Nettles -- Jay Walter Nettles?
4         MR. PERRONG:  Objection to form.  You
5    can answer.
6         A.  That name does not sound familiar to me
7    at all.
8         Q.  What do you know about Arbor Craft
9    Builders?
10        MR. PERRONG:  Objection to form.
11        A.  I don't know anything really, other than
12   they -- their listing information on the Google.
13        Q.  You kind of exist in the construction
14   industry, so to speak?
15        A.  Yes.
16        Q.  But you've never come across anyone from
17   Arbor Craft Builders?
18        A.  No, not to my knowledge.
19        Q.  When you went and got this phone
20   number -- do you remember when?
21        MR. PERRONG:  Objection to form.
22        A.  Early 2022, I think.
23        Q.  Did you request a specific number or
24   just, Hey, give me any number?
25        A.  Um, I saw that number.

100

1         Q.  Okay.  So you picked this number?
2         A.  Right.
3         Q.  Why did you pick this number?
4         A.  I thought it would be easy to remember
5    for me and my parents -- or for me, more than
6    anybody.
7         Q.  Did you know it was listed on-line when
8    you picked this number?
9         MR. PERRONG:  I'm sorry.  I didn't hear
10   the last part of your question.
11   BY MR. SUMMA:
12        Q.  Did you know it was listed on-line when
13   you picked this number?
14        MR. PERRONG:  Objection to form.
15        A.  I don't recall.
16        Q.  You don't recall, but it's possible you
17   knew?
18        MR. PERRONG:  Objection to form.
19        A.  I don't remember the timeline of when I
20   realized it was on-line.
21        Q.  Sure.  So you would agree with me that
22   it's possible that you knew it was on-line and
23   then you chose that number?
24        MR. PERRONG:  Objection to form.  I'm
25   not really sure how that could even be

101

1    possible.  How would he know --
2         MR. SUMMA:  Excuse me.  You are not the
3    witness.  Let him answer, please.
4         MR. PERRONG:  I'm trying to clarify the
5    question here.  Because how is it possible
6    that he would know -- he's already testified
7    that he doesn't know anything about Arbor
8    Craft.  So how is it possible -- and he's also
9    testified he was provided that choice of
10   number.  So I don't really understand what the
11   line of questioning is.
12        MR. SUMMA:  You don't have to
13   understand.
14        MR. PERRONG:  No.  Because I need to be
15   able to understand to clarify the question.
16   Because the form is vague and ambiguous.  I
17   don't know how it's physically possible to --
18   I guess --
19        MR. SUMMA:  I don't get to ask a
20   question because you don't think it's
21   physically possible; is that what you're
22   saying?
23        MR. PERRONG:  You can ask a question.  I
24   don't understand the question.  Because, in my
25   mind, how can he look -- if you want to

## 102

1    rephrase the question -- rephrase the
2    question. Because I don't understand it.
3  BY MR. SUMMA:
4        **Q.  It's possible that you knew this number**
5  **was listed on-line before you selected this**
6  **number?**
7        MR. PERRONG:  Are you asking if he
8    searched for the number on-line prior to --
9        MR. SUMMA:  I'm asking exactly what I
10   asked. So you're kind of --
11       MR. PERRONG:  I'm going to object to the
12   form. Because, quite frankly, I don't
13   understand the questions that you --
14       MR. SUMMA:  It sounds like you are
15   trying to suggest an answer, Mr. Perrong.
16       MR. PERRONG:  I'm not trying to suggest
17   an answer. The question, to the extent he
18   understands the question -- I don't understand
19   the question. To the extent he understands
20   the question, he can answer it.
21  BY MR. SUMMA:
22       **Q.  Please answer, Mr. Connor.**
23       A.  I don't remember. I remember that I
24   contacted Google and tried to get them to take it
25   off. It's been a long --

## 103

1        **Q.  Is it possible -- sorry. Please finish.**
2        A.  I don't remember.
3        **Q.  So it's possible that you knew this**
4  **number was listed on-line before you went and**
5  **selected it at the AT&T store or wherever?**
6        MR. PERRONG:  Objection to form.
7        A.  I don't think so, no.
8        MR. SUMMA:  All right. That's all I've
9    got for the Cross -- or for the Redirect -- or
10   for the Recross, rather.
11       Maybe Tim has some stuff, and we can do
12   that while we're waiting on the Judge.
13       MR. KNOWLES:  I have one question.
14            RE-EXAMINATION
15  BY MR. KNOWLES:
16       **Q.  So I believe that Mr. Perrong asked you**
17  **why you understand that you received two text**
18  **messages. Do you recall that?**
19       A.  Can you repeat that again, please?
20       **Q.  Yeah. I believe that Mr. Perrong asked**
21  **you why you understand that you received two text**
22  **messages. Do you recall that?**
23       A.  I think so, yes.
24       **Q.  And you responded that it was because**
25  **you looked at your bill?**

## 104

1        A.  That's right.
2        **Q.  Was it also because of a conversation**
3  **that you had with somebody?**
4        MR. PERRONG:  Objection, to the extent
5    that it asks for attorney-client privileged
6    information.
7        MR. KNOWLES:  And I think by asking the
8    question in the manner you did, you waived any
9    attorney-client privilege, because it
10   specifically was asking --
11       MR. PERRONG:  And I have no objection to
12   him answering if this was based on a
13   conversation that he had with his attorney.
14       MR. KNOWLES:  I'm sorry. What was that
15   response?
16       MR. PERRONG:  I have no objection to him
17   answering to the extent that it asks questions
18   regarding -- rather, I should clarify. To the
19   extent that it has -- to the extent that he
20   can answer without revealing discussions that
21   he had with me or his attorneys, then, fine.
22   But to the extent that that's informed by
23   that -- he can say that he talked to me.
24       MR. KNOWLES:  Well, my question was, was
25   your understanding that you received two text

## 105

1    messages also because of a conversation that
2    you had with your attorney?
3        MR. PERRONG:  Again, that directly asks
4    what our -- that's very clearly privileged
5    information as to what I told him or didn't
6    tell him.
7        MR. KNOWLES:  Right. And I'm saying I
8    think that door was opened because you asked
9    him the question initially.
10       MR. PERRONG:  What question do you
11   contend that I asked him initially that opened
12   the door to that?
13       MR. KNOWLES:  Why do you understand that
14   you received two text messages?
15       MR. PERRONG:  Why do you understand --
16   so ask him the same -- ask him the question as
17   to why his understanding is that he received
18   two text messages.
19  BY MR. KNOWLES:
20       **Q.  So why do you understand that you**
21  **received two text messages?**
22       A.  Well, I understand that if it goes over
23   160 characters --
24       MR. PERRONG:  Whoa, whoa, whoa. Move to
25   strike that. This again goes into

Jay Connor - June 27, 2025

---

**106**

1 conversations that we had -- you're -- he's
2 now disclosing attorney-client privilege.
3 So I'm going to instruct the witness not to
4 answer.
5         MR. KNOWLES:  I am kind of smiling --
6         MR. PERRONG:  I'm going to move to
7 strike the last prior portion of his
8 testimony.
9         MR. KNOWLES:  Let me be clear, I asked
10 him the exact question that you told me to ask
11 him.
12        MR. PERRONG:  Okay.
13        MR. KNOWLES:  So I don't know why you're
14 objecting --
15        MR. PERRONG:  The answer is based on --
16 can I communicate with my client regarding the
17 assertion of privilege?
18        MR. KNOWLES:  I don't think you can
19 while there is a pending question.
20        MR. PERRONG:  I can discuss whether or
21 not we're going to assert privilege.
22        MR. KNOWLES:  Just to be clear -- and
23 let me put on the record, that I asked the
24 exact question that you said was
25 permissible --

---

**107**

1         MR. PERRONG:  Right.  Which I want to
2 discuss what we can discuss without waiving
3 privilege.
4         MR. KNOWLES:  Just so I'm clear, I'd
5 like to start saying and finish without you
6 interrupting.
7         MR. PERRONG:  Go on.
8         MR. KNOWLES:  I asked the exact question
9 that you said was permissible to you.  So I
10 don't understand why you're now
11 objecting to that question when you said it
12 was okay.
13        MR. PERRONG:  Because he is
14 inadvertently waiving privilege in his
15 response.
16        MR. KNOWLES:  Again, it's my position
17 that you opened the door to a waiver on this
18 response by asking him this question.
19        MR. PERRONG:  Okay.  So let me discuss
20 with my client the extent of our privilege
21 objection, and we will get back to you.
22        (The deposition went off the record.)
23        MR. PERRONG:  Mr. Knowles, you can ask
24 the question again.  And I've instructed my
25 client as to privilege issues.  So we're

---

**108**

1 prepared to provide a response.
2         MR. KNOWLES:  Okay.  I just want to note
3 my objection for the record, the fact that you
4 shut your camera and microphone off and
5 discussed with your client while there was a
6 question pending.
7         Are we able to get that question read
8 back?  I totally forget what it was.
9         MR. SUMMA:  I'll join in that objection.
10        (The court reporter read back the
11 previous question.)
12 BY MR. KNOWLES:
13        Q.  So I'll ask that question.  Why do you
14 understand that you received two text messages?
15        MR. PERRONG:  Objection to
16 attorney-client privilege.  But I will permit
17 the witness to answer.
18        A.  I reviewed my phone bill after talking
19 -- discussing the case with Andrew and saw the two
20 text messages.  I realized after doing some Google
21 research on my own and discussing it with him that
22 it was two text messages.
23        MR. KNOWLES:  I do not have any other
24 questions.
25        MR. PERRONG:  Mr. Summa, if you wanted

---

**109**

1 to go back, because we haven't had the Court
2 call us back yet on that question, I'll let
3 you ask the question about Hush.  Because I
4 also reviewed the Exhibits, and it is on the
5 Exhibit.  So to the extent that you want to
6 pull up that Exhibit and ask him about what
7 that means on the Exhibit, I'll let you ask
8 that.
9         MR. SUMMA:  Do you care if I see how we
10 do without it, just for time?
11        MR. PERRONG:  I'm sorry?
12        MR. SUMMA:  Do you care if I just --
13 without pulling it up, ask him, just for time?
14 I'll pull it up.  That's fine.  I'll pull it
15 up.
16        MR. KNOWLES:  I think I'll be able to
17 get it faster than you.  Are we looking at it,
18 Daniel?
19        MR. SUMMA:  Yes, sir.
20        FURTHER EXAMINATION
21 BY MR. SUMMA:
22        Q.  So, Mr. Connor, what are we looking at
23 here?
24        A.  It appears to be the civil action cover
25 sheet.

---



```
                                                  110
```

```
                                                  111
 1           C E R T I F I C A T E
 2   STATE OF SOUTH CAROLINA:
 3   COUNTY OF CHARLESTON:
 4        I, EVE WILBANKS, Registered Professional
 5   Reporter and Notary Public, State of South Carolina
 6   at Large, certify that I was authorized to and did
 7   stenographically report the foregoing deposition;
 8   and that the transcript is a true record of the
 9   testimony given by the witness.
10        I further certify that I am not a
11   relative, employee, attorney or counsel of any of
12   the parties, nor am I a relative or employee of any
13   of the parties' attorney or counsel connected with
14   the action, nor am I financially interested in the
15   action.
16        WITNESS MY HAND AND OFFICIAL SEAL this
17   14th day of July, 2025, in the City of Charleston,
18   County of Charleston, State of South Carolina.
19
20
21
           Eve Wilbanks,
22         Registered Professional Reporter
           and Notary Public
23
           My commission expires:
24         October 3, 2034
25
```

Jay Connor - June 27, 2025

112

```
 1                      ERRATA SHEET
         I have read the transcript of my deposition
 2  and find that no changes are necessary.
                _____
 3                      JAY CONNOR

 4

 5      Having read the transcript of my deposition, I

 6  wish to make the following corrections (Please

 7  state reason):

 8  Page _____ Line _____:

 9  Page           Line _____:

10           Page              Line       :

11  Page           Line       :

12  Page           Line       :

13  Page           Line       :

14  Page           Line       :

15  Page           Line       :

16  Page              Line       :

17  Page           Line       :

18  Page              Line       :

19  Page              Line       :

20      _____
                        JAY CONNOR
21

22      Sworn to and subscribed before me this
    day of            , _____,
23  County, _____
                _____
24                      Notary Public
        My commission expires
25
```

Jay Connor - June 27, 2025

Page 1

**A**

**a.m** 1:16
**A@perrongla...** 2:5
**ability** 31:25 50:17 77:11
**able** 101:15 108:7 109:16
**absolute** 49:12
**access** 83:18
**Account** 3:17 61:10
**accounts** 61:19 61:20
**accuracy** 80:4
**accurate** 71:6,7 74:6
**action** 1:3 4:11 28:8 32:21,23 33:25 48:22 64:16 72:10 84:5 89:3 109:24 111:14 111:15
**activities** 11:3 24:21
**add** 16:2
**addition** 24:15
**additional** 23:22 90:10 91:12
**admitted** 90:21
**advice** 14:11
**advocacy** 78:19 78:22
**affiliated** 23:24 110:8
**affiliation** 43:5
**ago** 4:18,20 5:4 6:2,5,7 42:21 43:22 84:12
**agree** 21:1 35:14 46:24 47:4,8 57:17 62:12 66:5 100:21
**agreed** 4:2

**agreement** 71:17 71:25 72:5,8 73:3,6
**ahead** 9:19
**allegation** 64:5
**allegations** 64:10
**alleged** 33:2 38:24 39:9 80:2 84:18
**alleging** 64:20
**allow** 48:13
**allowed** 9:14 91:24
**allows** 89:13
**alternate** 24:17
**ambiguity** 17:21
**ambiguous** 73:15 101:16
**amenable** 97:14
**Amended** 67:10
**amount** 16:20 70:14 71:2,3 75:19 76:1
**and/or** 63:24
**Andrew** 2:3 7:3 41:14 96:14 108:19
**annoys** 88:24
**anonymously** 24:7,14
**answer** 6:25 7:10,17,22 8:9 9:19,24 10:5 19:20 25:13 28:15 36:19 39:12,20 42:3 44:19 48:14 50:1 63:3,19 69:3,8 72:22 72:25 73:7,20 75:3 85:22 86:13,16 87:5 87:6,13,15 88:2,15 90:21 91:16 92:4,25

93:17,19 95:19 99:5 101:3 102:15,17,20 102:22 104:20 106:4,15 108:17
**answered** 22:25 43:25 44:5,19 50:1
**answering** 7:7 49:11 104:12 104:17
**anticipation** 63:25 89:11
**anybody** 48:12 48:15 65:5,11 66:19 100:6
**anymore** 44:11
**anyway** 71:19
**app** 53:17,18
**appear** 53:3
**appeared** 65:21 85:18
**appears** 58:1 98:9 109:24
**applicable** 72:1
**appreciate** 22:11 43:2
**approved** 75:10
**approximately** 5:4 18:19 41:9
**Arbor** 3:19 43:4 43:5 46:16,20 65:25 66:14,20 66:23 82:6,9 82:12 98:23 99:8,17 101:7
**area** 12:3 13:25
**areas** 54:17
**arisen** 95:11 96:18
**arrangement** 70:1,4 75:13
**aside** 64:19
**asked** 22:24 41:1

42:4 43:24 44:5,18 45:3,6 49:25 81:22 87:12 89:25 102:10 103:16 103:20 105:8 105:11 106:9 106:23 107:8
**asking** 5:14 28:13 39:14,14 40:19 57:24 60:14 64:15 69:9,15,20 70:11 87:10 89:23 102:7,9 104:7,10 107:18
**asks** 39:16 49:3 65:7 70:1 104:5,17 105:3
**aspect** 88:9
**assert** 86:9 92:21 106:21 110:15
**asserting** 64:16
**assertion** 106:17
**assigned** 52:25
**assistance** 50:25
**associated** 43:9 52:22
**assume** 5:13 18:23 22:13 86:2
**assumption** 80:22
**AT&T** 3:17 25:21 61:9,16 61:19,24 85:8 103:5
**attached** 31:16
**attempt** 9:3 66:13
**attorney** 9:4 17:20,23 36:15 40:25 41:2,13 42:17 49:18

51:10,17 65:10 86:13 99:2 104:13 105:2 111:11,13
**attorney's** 41:3 42:8 63:13 68:24 69:5,11 69:13,16,19,23 70:15,17,23 71:3 72:4,9,11 72:16,17,18 75:20 76:2
**attorney-client** 7:2,12 36:18 39:11 41:9 42:2 49:2 51:13 63:2 65:7 69:2,7 70:2 71:17,24 71:25 73:5 74:11,25 86:16 86:21,25 104:5 104:9 106:2 108:16
**attorneys** 50:24 50:25 51:5 81:3 104:21
**audio** 97:20
**August** 38:6,20 40:16
**authorized** 111:6
**automatic** 55:1
**available** 47:5 82:25 94:20 95:22 96:22 97:15
**Avenue** 2:4
**average** 18:15
**avoid** 29:14 42:12 47:1 73:3 74:25 75:4
**avoids** 43:3
**await** 96:7

Jay Connor - June 27, 2025

Page 2

award 70:7
aware 32:3
  54:23 64:3
  70:21 84:14
awareness 32:19

**B**

B 73:7 92:7
back 29:22
  53:22 74:22
  76:12 97:5
  98:5 107:21
  108:8,10 109:1
  109:2
backing 29:21
bad 88:23
ballpark 49:13
  50:17
bankruptcy
  12:11,16 13:3
based 92:25
  93:17 104:12
  106:15
basic 93:10
basically 14:10
  29:9
basis 15:1,9 19:8
  34:18 71:21
  72:2 75:2
  83:16,17
battery 61:5
  85:3
bearing 87:11
began 17:13
  41:9
beginning 41:8
behalf 1:3 75:4
believe 6:11 13:6
  20:21 25:16
  61:1 62:4,11
  84:6 89:16
  103:16,20
believed 44:20
Bell 2:13
bench 97:6,25

best 6:13 26:1
  50:17 66:10
  81:25
better 57:6
beyond 75:5
bids 15:19 16:4
big 17:4 37:21
bigger 16:7,11
  16:12 17:3
  28:1 37:19
bilaterally 48:8
bill 34:9,10
  61:15 62:1
  68:12 74:9,14
  84:22 85:18
  103:25 108:18
billed 85:8,16
billing 37:5,9
  40:11,13,18,21
  41:16,17,23,24
  83:15
bills 49:19 62:15
bit 11:12 12:13
  12:15,18 29:22
  38:13 66:8
blacked 95:3
blow 78:24
blue 2:13 28:3
  30:18 57:18
bogged 31:4
box 1:22 57:18
boxes 58:4
break 36:6,9,10
  36:16 40:4
  54:7 86:3,11
  86:18,19
breaking 36:4
bring 73:17
Broad 2:8
brother 27:11
brought 55:13
  95:17
buffering 97:13
Builders 3:19
  43:4,6 46:16

65:25 66:20,23
  82:6,9,12
  98:24 99:9,17
building 15:16
business 1:8
  13:16 16:3
  20:24,25 43:10
  44:14,17,22
  46:25 50:9
  67:1 81:23
businesses 78:6
  78:9,16
buster 9:13
Bye-bye 96:11

**C**

C 2:1 11:19,19
  111:1,1
calculate 49:18
call 6:11 23:14
  24:14 47:9
  48:1,6,15
  50:21 55:4,8
  55:13 60:20
  64:6,11,21
  73:22 78:10
  80:2,2 82:16
  82:18 83:5
  84:1 91:21
  94:17,21 96:3
  97:18 98:5
  109:2
called 24:16
  96:10 98:19
caller 78:25 79:2
calling 95:1
calls 34:22 35:3
  35:4,4,10,16
  44:10 50:9
  52:4,9,11
  64:11 76:19,20
  77:14,25 78:6
  79:3,13 81:15
  82:23
camera 108:4

capacity 15:22
  85:2,5
card 52:19,20,24
cards 52:24
care 109:9,12
Carmel 2:4
Carolina 1:23
  2:9 6:20 11:14
  29:24 30:10
  34:1 54:13
  63:7 65:1
  110:1 111:2,5
  111:18
case 6:9,13,17
  6:19,22 7:18
  18:17,17 21:23
  26:8 28:8
  29:14,16,17
  36:23 55:18
  56:2 57:21,25
  63:15,17,17
  65:4 67:12,19
  68:5,11,25
  69:11,17,24
  70:19,22 71:8
  71:12,14,22
  72:1,15 73:10
  73:12,15 75:25
  79:15 80:9
  89:14 95:8
  96:16,24 97:1
  108:19
cases 5:17 17:25
  18:7 32:16
  51:17
cash 15:7
cause 61:2 64:16
cell 22:17
cellphone 21:10
  23:7 61:21
  79:6
cellphones 21:6
  21:10 53:14
certain 14:12
certainly 70:17

70:21 71:8
  73:14 76:3
  97:1,7,16
certainty 49:12
**CERTIFICATE**
  3:6
certification
  70:6 72:12
certified 1:19
  70:7 72:12
certify 111:6,10
cetera 15:21
chambers 94:17
  94:19 96:2,3
changes 112:2
chapter 45:15
characterized
  76:17
characters
  105:23
charge 15:13
charged 34:13
  34:17 85:17,20
  85:24
charging 71:5
Charleston 1:23
  2:9 11:15,18
  12:3 13:25
  14:9 29:25
  31:1 38:20
  111:3,17,18
chart 49:16,17
  50:8
checking 61:6
children 12:9
choice 101:9
choose 14:17,17
  83:19
chose 100:23
City 111:17
civil 1:3 28:7
  91:3 109:24
claim 18:14
  48:21 70:10
  72:4 79:20

Jay Connor - June 27, 2025

Page 3

claiming 69:5
claims 7:15,20
    10:17,18 11:8
    13:4 17:18
    18:12,19 19:16
    20:3,12 21:3
    23:20 35:23
    49:8,15,24
    50:6,12 51:1
    64:9,19 68:10
    69:10,12,14
    70:8 79:25
clarification
    28:15
clarify 5:10 25:6
    26:17 27:17
    30:9 44:1 45:7
    85:13 101:4,15
    104:18
clarifying 13:8
    45:6
class 69:14 70:6
    70:6 72:9,10
    72:11,11,14
clean 37:2 54:12
    85:25
clean-up 51:21
clear 9:6 18:6
    22:20 65:13
    70:24 72:20,21
    82:5 106:9,22
    107:4
clearly 51:12
    105:4
clerk 96:6
clerk's 96:1
client 9:17 15:5
    21:8 106:16
    107:20,25
    108:5
clients 13:24
    14:20
close 39:24
    72:15
closed 71:19

110:14
co-counsel 73:22
    75:9
coincidentally
    47:14,17
collect 63:24
college 11:18,22
COLORADO
    1:1
combination
    84:16
combine 32:1
come 16:5 70:18
    73:8 74:8
    78:23 97:5
    99:16
comes 40:14
comfortable
    23:16 63:11
commission
    111:23 112:24
Common 29:24
communicate
    26:9 106:16
communication
    7:11 31:4,5,6
    34:14 40:25
    48:3 53:19
    106:2
communications
    6:24 7:12 76:4
    80:9
companies 82:2
company 6:12
    11:24 58:25
    110:8
compared 16:9
compelling
    71:21
compensated
    81:11
Complaint 3:14
    27:21 29:20
    33:14 48:18
    67:9,10 84:8

completed 81:14
compound 40:3
con- 32:14
concatenation
    32:7,11
concept 32:16
concisely 88:13
concluded
    110:25
conduct 88:7
conducted 88:23
confidential
    7:10
connected
    111:13
connection 63:6
    64:4,10 68:10
    68:25 69:16,24
    70:5,14 82:5
Connor 1:3,14
    3:1 4:6,9 7:14
    13:12,16 17:6
    19:13 20:3,13
    28:2 30:9
    36:14 37:3
    38:1 42:14
    45:11 49:22
    50:7 55:24
    56:22 61:8
    65:23 74:3
    76:16,21 77:8
    77:12 81:9,12
    81:16 86:12
    87:2 95:8,10
    96:16,17 98:24
    102:22 109:22
    112:3,20
Connor's 73:4
    75:3
considering
    79:19
construction
    11:24 99:13
consumer 48:5
contact 24:7,13

47:25 96:1
contacted 43:18
    45:16 47:21
    95:25 102:24
contacting 45:2
contain 3:22
    28:25
contemporane...
    8:13,23,24
contempt 53:25
contend 105:11
contending 92:6
contention 75:16
continue 9:6
    89:19 91:19
    93:25
continued 95:23
continues 90:22
contrary 71:22
conversation
    48:9,12 59:3
    104:2,13 105:1
conversations
    48:13 106:1
coordinating
    15:19 16:4,4
copper 15:15,18
    15:24
copy 31:16
    67:12,19
corner 57:18
correct 5:5 6:20
    8:20 13:12,16
    15:25 18:1
    19:13 23:20
    24:3 25:24
    29:12 30:15,16
    37:6,13 47:11
    47:12,14,18,25
    48:10 52:22
    53:4 57:18
    58:4,7 59:2
    60:3 61:17,22
    61:23,25 62:7
    62:8,10 63:19

64:7 65:15,19
    66:15 69:5
    81:7,24 84:8
    85:11 98:3
    110:3
corrections
    112:6
correctly 32:10
cost 16:15 58:7
    58:20,23 60:24
counsel 4:4 95:7
    96:15 97:22
    111:11,13
count 14:22 23:4
country 54:17
    54:21 79:2
County 29:25
    31:1 38:20
    111:3,18
    112:23
couple 23:8
course 63:17
    77:18 78:9
    79:15,17,22,24
    80:7 82:2
    89:11,19
court 1:1 3:14
    8:15 9:10
    27:20 28:14
    29:24 30:10
    32:20,23 33:8
    33:14,18 34:1
    53:23 54:1,14
    54:17,20 55:7
    57:9,10 64:25
    70:8 73:17
    84:5 87:17
    88:17 89:2
    91:22,22 92:8
    92:10 93:21,22
    94:17,22 95:1
    98:18,20
    108:10 109:1
    110:2,17
Court's 25:11

95:6
**Court-ordered**
92:20
**Courts** 75:10
**cover** 28:7 38:2
109:24
**Craft** 3:19 43:4
43:5 46:16,20
65:25 66:14,20
66:23 82:6,9
82:12 98:23
99:8,17 101:8
**credibility** 89:15
**criminal** 97:6
**Cross** 89:23
90:10 91:12
103:9
**Cross-Examin...**
89:8,13 90:24
92:12
**currently** 23:13
51:3 95:9
96:17
**customers** 82:3
**cut** 36:1

**D**

**d/b/a** 1:7
**damages** 76:18
77:9
**Dan** 36:1 57:9
**Daniel** 2:7 4:9
33:6 109:18
**Daniel@sum...**
2:9
**data** 62:5
**date** 1:15 21:21
38:3 39:17,21
39:23 62:6,23
62:25 76:2
80:1 95:23
**day** 26:8 38:25
46:6,7 50:4,22
58:17,19 66:17
84:3 111:17

112:22
**day's** 83:22
**day-to-day**
62:16
**dealing** 23:19
**dealings** 82:6
**dedicated** 53:11
**defendant** 2:6
4:10 5:18 6:12
**defendants** 1:11
38:25 80:22
**definitely** 96:12
**deleted** 25:3
**demands** 89:5
**depends** 18:14
20:15,15 50:3
50:19
**deponent** 4:5
87:15 88:15,21
88:25 89:5
90:25 92:4,12
**deposed** 81:3
98:1,3
**deposing** 9:4
**deposition** 1:14
3:13,15,16,17
3:18 4:12,14
4:25 5:2 7:8
9:25 33:13
36:12,16 39:5
54:10 56:24
61:9 65:24
67:6 71:1,11
73:4 76:6,13
80:7 86:3,5,11
86:14 88:8,9
88:21 89:3,6
90:22 91:8,21
92:19 93:7,11
94:3,15 95:10
96:17 97:4
107:22 110:14
110:20,22,25
111:7 112:1,5
**describe** 84:16

**description** 3:11
13:21
**deserve** 76:23
**design** 58:16
**designs** 59:25
**destination**
32:17
**details** 62:6 70:1
**determination**
39:22 68:2
91:15,23
**determine** 41:8
60:16,18 84:2
**determined** 62:2
67:24,25 81:13
**development**
11:25 12:22,23
**device** 52:10,12
52:13,19 53:3
61:3 65:17
**devices** 51:23
53:7
**dialing** 55:2
**dictate** 9:16
**different** 5:24
25:17 54:17,21
54:24 91:3
95:23
**direct** 89:22 90:8
90:11 95:17
96:3
**directed** 46:16
46:17
**direction** 66:10
**directly** 105:3
**disclose** 63:22
70:4 72:8
75:18,22 76:1
**disclosing** 72:4
106:2
**discontinued**
23:3
**discover** 34:7
**discovered** 33:1
37:12

**discovery** 13:9
71:2,18,18
73:16
**discretion** 89:20
**discuss** 38:17
65:5,11 106:20
107:2,2,19
**discussed** 36:24
49:4 77:19
79:5 86:2
108:5
**discussing**
108:19,21
**discussion** 8:5
36:22 77:20
**discussions**
17:20 36:15
86:12 104:20
**dismiss** 3:15
32:22 38:19
39:6
**dismissed** 32:21
**dispute** 73:17
95:10 96:18
**disrupt** 9:4
**District** 1:1,1
6:19 65:1
**disturb** 81:15
**divorced** 12:5
**document** 28:4
28:18,20 29:23
30:6 37:22
56:22 57:15
61:7,12 65:22
66:3
**documents**
29:12 63:24
67:5 68:9
**doing** 14:14 21:8
45:18,25 59:11
97:14 108:20
**door** 105:8,12
107:17
**Drive** 2:12
**dropped** 22:16

**dual** 52:19,20
53:9
**due** 50:22
**dumb** 91:6

**E**

**E** 2:1,1 111:1,1
**e-mail** 3:18
33:11 39:3
65:25 66:7,18
68:18 110:5,6
110:7
**earlier** 4:22
40:17 54:13
58:10 74:3
**early** 68:6 99:22
**easy** 100:4
**ECF** 28:13
**efforts** 44:16
**eight** 21:16 22:7
**either** 14:6 75:12
85:9 94:2
**embarrasses**
88:25
**emergencies**
26:9
**emotional** 59:23
60:2
**employee** 111:11
111:12
**employees** 14:15
**employment**
13:10,14 98:9
98:11
**endeavor** 57:2
**ends** 29:5
**enforce** 87:17
88:16 92:7
**entered** 13:3
**entire** 50:22
**entitled** 70:13,16
70:21,22 72:19
73:10
**equal** 34:25
**equate** 93:22

**ERRATA** 3:7
112:1
**erroneous** 81:23
**eSIM** 52:25
**ESQUIRE** 2:3,7
2:11
**estimation** 50:10
**et** 15:20
**Eve** 1:18 111:4
111:21
**evidence** 7:6
80:4 88:6
89:10 90:13
91:4,7 92:14
93:15
**evidentiary**
93:17
**exact** 16:20
21:21 33:3
35:7 37:15
58:17 84:13
106:10,24
107:8
**exactly** 4:19
16:16 17:8
18:22 19:22
40:9 45:19,23
45:25 56:9
58:17,21 84:20
102:9
**examination** 3:2
3:3,3,5 4:7
55:21 76:14
88:6,10 89:9
89:23 90:24
92:11 95:17,20
109:20
**example** 15:11
16:6,7
**exchange** 68:13
**excluding** 22:16
**exclusively**
13:11
**Excuse** 8:3 101:2
**Exhibit** 3:13,13

3:15,16,17,18
31:17 33:10,13
33:13 39:3,5
56:24 61:9
65:24 67:24
90:1,3,7 109:5
109:6,7
**Exhibits** 3:10
109:4
**exist** 44:22 99:13
**existing** 15:17
**experience** 14:10
72:3
**expert** 74:12
**expires** 111:23
112:24
**explicitly** 91:25
**extension** 17:9
**extent** 39:16,18
40:22 41:1
49:3 50:1 65:6
70:18 71:13,15
71:19 73:1,1
73:14 74:24
76:3 84:19
102:17,19
104:4,17,19,19
104:22 107:20
109:5
**extra** 60:24

**F**

**F** 111:1
**facilitate** 17:15
**fact** 46:24 51:18
77:2,13,14
81:5,22 82:20
108:3
**facts** 5:19
**fair** 5:15 13:20
22:13 24:25
39:8
**faith** 9:9 88:23
**familiar** 32:6,15
99:6

**familiarize** 38:8
**family** 26:11
**far** 77:8
**fashion** 8:21
**fast** 36:8
**faster** 109:17
**fax** 23:9,9
**February** 30:24
56:7,11 62:6,9
62:12,13,23
68:5
**federal** 6:19 8:15
9:15 10:11,11
10:19 30:14
54:16,20 55:7
63:17 89:9
110:2
**fee** 15:1 16:18
34:15 70:1,4,7
70:13,16,23
71:17 72:4,8
73:5 74:22
**feel** 23:16
**fees** 68:24 69:5
69:11,13,16,19
69:24 70:17
71:3 72:4,9,11
72:16,17,18
75:20 76:2
**feet** 50:16
**fell** 19:25
**figure** 9:11,12
60:10
**figures** 16:19
17:10
**file** 33:17 40:6
48:17,20 59:12
68:1 73:15
96:7
**filed** 7:18 17:8,9
17:24 18:7
29:23 30:9
32:4 38:20
40:1,15 54:13
54:16,20 63:7

68:5 89:2
**filing** 27:17
51:10 84:4
98:17
**filings** 27:13
29:12
**financial** 84:23
**financially**
111:14
**find** 59:6 112:2
**fine** 57:11
104:21 109:14
**finish** 103:1
107:5
**fire** 50:16
**Firm** 2:7
**first** 7:18 17:19
38:25 41:7,12
55:12 56:5
58:6,15 90:16
**firstly** 86:5
**five** 11:9,9 13:10
13:15 16:19
17:10,25 18:8
23:2,6 24:2
25:15,18,20
51:4 54:8
73:24 76:10
79:6,7
**five-minute** 54:7
**fix** 14:3
**fly** 89:18
**folks** 15:2
110:24
**follow** 44:24
**following** 15:19
112:6
**forbid** 83:2
**forced** 12:16
**foregoing** 111:7
**forget** 108:8
**form** 6:23 7:16
7:21,25 8:2,8
8:19,20 9:3,7
9:14,16,21,23

10:4,6,13,20
11:5 12:21
13:5,17,22
14:5 15:8 16:1
16:14 17:7
18:4,13,16,20
18:25 19:9,17
20:5,14 21:4
22:22 24:9,23
25:5,25 27:14
28:12,19 29:13
30:4 31:7 32:8
32:18 33:23
34:4,11,23
35:1,12,17
40:2 43:11,24
45:5 46:3,18
47:2,6,19
48:19,24 52:23
53:20 55:16
56:3,15 57:22
58:1,24 59:5,9
59:14,21 60:1
60:17 61:4
62:17 64:13
67:3,16 76:25
77:4,10,16
80:25 83:18,25
84:25 85:10
87:4,9 99:4,10
99:21 100:14
100:18,24
101:16 102:12
103:6
**formulate** 76:11
**found** 40:1
**four** 25:16
**frankly** 98:14
102:12
**frequently** 40:10
**fresh** 45:16
**Friday** 1:15
**friends** 14:6
26:11,12 27:2
**further** 3:5 48:2

83:10 109:20
111:10
**Furthermore**
86:17

**G**

**Galaxy** 52:17,17
53:17
**game** 93:10
**gather** 5:12
14:16 63:24
**general** 14:2
35:4,4
**generally** 11:22
20:11 47:11
**getting** 36:2
44:10 46:19
51:16 72:18
82:18
**Gillon** 15:15
**give** 15:6,11
24:17 26:13,15
50:10,17 56:22
58:25 73:24
76:10 77:25
79:10 82:12
96:24 97:18
98:4 99:24
**given** 15:1 17:18
111:9
**gives** 23:22
**giving** 16:6
23:16 29:14
**Glenside** 2:4
**go** 9:10,19 12:15
25:3 29:22
36:8 44:7
51:25 66:10
74:21 75:5
83:3,4 107:7
109:1
**God** 83:2
**goes** 91:25
105:22,25
**going** 5:11,13

9:8,10,14,20
12:19 18:3
22:1,13,21
25:10,12 27:16
27:23 28:9
29:18,22 31:3
31:18 33:5,10
37:16 38:7,10
38:15 40:23
41:4 42:1,10
42:11 44:7
45:4 50:16
53:7,22 54:3
55:15 56:21
63:8 65:2,22
67:25 68:1
70:3 71:16
73:13 76:1
85:1,2,5 89:22
91:13 92:18,24
94:2,14 97:10
102:11 106:3,6
106:21
**good** 5:7 9:9
37:24 95:7
**Google** 3:18 23:8
23:12,18 24:2
25:18 43:9,18
44:17,21 45:2
45:16 46:25
47:21,25 48:3
48:9,14,23
49:4 65:24
66:13,16 67:1
77:19,24 81:22
81:23 99:12
102:24 108:20
**gotcha** 13:2 14:1
24:1
**graduated** 11:19
**gray** 58:4
**great** 36:11
**Greenville** 11:14
**ground** 88:23
**grounds** 10:2,7

10:10,12,14
88:20 92:17
93:18 98:16
**guess** 10:25 11:8
12:15,18,19,20
14:3 21:10
22:15 24:19,21
27:19 33:10
38:9 41:15
51:4 52:3
79:23 94:24
99:1 101:18
**guy** 99:2

**H**

**halfway** 36:7
**HAND** 111:16
**handyman**
13:20 20:24,25
**happy** 70:20
**harassed** 79:12
**hard** 19:2 57:3
**harm** 77:14
82:17
**harms** 77:13
**he'll** 97:15
**head** 11:11
42:20 78:24
**hear** 54:19 57:10
87:24 90:20
94:6 96:22
100:9
**heard** 10:21 11:1
73:21 80:8
**hearing** 57:3
97:8
**held** 53:25
**Hello** 55:23
96:14
**help** 5:10 14:15
15:18 24:11
51:16 53:6
**helped** 12:1
15:14
**helping** 51:5,6

51:11
**helps** 53:18
**hereto** 4:3 31:16
**Hey** 49:22 99:24
**higher** 75:11
**highlighting**
28:17
**hire** 14:2,13,17
14:18,19
**history** 3:17
53:22 61:10
**hold** 39:24 45:3
50:16 110:13
110:19
**home** 19:3
**homeowners**
13:24 14:2
**homes** 14:8,8
**hook** 70:16,23
**hopefully** 21:8
42:12
**hospital** 83:3,4
**hour** 36:2,3
45:20,21 49:14
49:14,19 81:8
**hourly** 70:14
71:4 72:5 75:9
75:11
**hours** 26:8 50:8
**house** 14:3 78:24
**hundred** 18:24
19:12,23
**hundred-thou...**
16:16
**Hush** 89:23
109:3 110:9
**hush.com** 87:2
90:4,5 110:4,5

**I**

**ID** 79:2
**ID's** 79:1
**idea** 66:25
**identification**
33:15 39:6

56:25 61:10
66:1
**identified** 38:24
39:8,14 40:7
40:16
**identify** 24:24
39:9 59:12
**imagine** 94:19
**impacts** 51:12
**impose** 82:16
**imposed** 87:20
92:24 93:1
**impossible** 48:15
**improvements**
12:2
**inadvertently**
107:14
**including** 89:14
**income** 18:11
19:12,15,20
21:2 77:6,10
77:15
**incorporated**
31:17
**incorrect** 66:14
80:24
**incurred** 68:24
69:16,19 71:4
75:20
**INDEX** 3:1,10
**indicate** 73:16
**individual** 46:17
72:15,18
**individually** 1:3
62:16
**industry** 99:14
**information**
36:18 39:25
59:4 65:8
93:11 96:2
99:12 104:6
105:5
**informed** 104:22
**initial** 60:22
**initially** 105:9,11

initiated 48:22
injuries 76:18
inserted 78:25
installing 15:24
instance 23:2
instant 22:2,2,5
  25:22 26:22
instigated 57:25
instruct 25:12
  42:3 74:10
  75:2 87:15
  88:14 92:4,25
  93:16,19 106:3
instructed
  107:24
instructing 6:24
  7:9 8:8 36:19
  39:11 63:2,18
  69:2,7 72:22
  72:24 73:19
  86:15 87:4,12
  88:2
instruction
  63:22,23
instructions
  40:25 41:3
  42:9 63:13
insurance 15:20
intend 75:12
  87:19
intention 9:5
interested 59:20
  111:14
interested' 59:16
interrupt 21:20
interrupting
  107:6
interviewing
  10:24
investigating
  79:19,22,24
involved 6:9
issue 7:5 40:24
  56:1 57:8,20
  65:4 67:12,19

89:14,16 94:17
issues 107:25

_____

**J**

Jay 1:3,14 3:1
  4:6 13:11,16
  17:6 19:13
  20:3,13 50:7
  77:8,12 81:9
  81:12,16 95:8
  99:3 112:3,20
job 15:3,12 16:7
  16:8,11,12,15
  16:17,18 17:3
  17:11,12 20:13
  21:8 50:11,20
  81:13,13
job-by-job 15:9
jobs 17:14
join 74:5,17
  108:9
judge 89:10,20
  90:20 91:12
  93:12 94:18,19
  95:21 96:5,21
  97:6 103:12
Judge's 89:20
  95:13 98:20
judgment 12:14
  72:13
July 111:17
jumping 93:4
June 1:15

_____

**K**

keep 23:13 26:7
  82:18,21
kind 11:21 14:25
  15:23 16:8,12
  24:7 99:13
  102:10 106:5
knew 81:25
  100:17,22
  102:4 103:3
know 5:10 9:4

10:18 11:11
  12:13,14 16:15
  17:8,19,22
  20:20,23 21:5
  21:7,13 22:9
  26:4,14,16
  27:6 32:10,12
  35:3,5,13
  36:20,21,22
  37:10,14,15
  38:8 41:8
  42:19 43:1,8
  45:13,22 48:11
  48:17,20 49:10
  49:16,17,19,20
  50:3,14 51:5
  51:14 57:13
  58:19 59:22
  66:12,19 67:4
  70:13 71:15
  73:14 83:7,9
  85:12 90:4
  93:24 94:9,9
  95:21 98:15,23
  99:1,2,8,11
  100:7,12 101:1
  101:6,7,17
  106:13
knowledge 16:3
  66:24 99:18
Knowles 2:11,12
  3:3,4 26:17,21
  26:25 33:6,12
  55:22,25 56:21
  57:4,8,12,14
  61:11 63:4,14
  63:18 64:2
  65:9 66:2
  67:17 69:4,9
  69:15,20,22
  70:3,9,24
  71:10 72:3,20
  73:18,25 74:2
  74:19 75:7,15
  75:19,23 76:7

76:25 77:4,16
  80:8,25 81:4
  93:4 103:13,15
  104:7,14,24
  105:7,13,19
  106:5,9,13,18
  106:22 107:4,8
  107:16,23
  108:2,12,23
  109:16 110:24
known 14:7
  41:14

_____

**L**

L 4:1
Large 111:6
larger 85:1,4
late 68:4
law 2:3,7 10:18
  69:12 70:19,22
  71:8,14,22
  72:1 73:10,15
lawsuit 29:24
  30:10,15 31:2
  32:4 55:8,12
  57:25 59:13
  63:6 64:3,17
  64:18 68:1,19
  80:5
lawsuits 54:13
  54:16,20
learn 7:20 10:17
  11:12
learned 35:22
leash 39:19
leave 26:8
led 12:19
left 11:22 12:25
  12:25 58:3
legal 27:13,17
  29:12 48:17,22
  49:8
legally 19:19
  76:17
Lenmar 2:12

let's 11:12 21:6
  25:1 30:17
  36:9 43:4 52:3
  69:23 73:25
letter 68:15,19
life 35:19
limit 88:20,22
  91:20 92:18
  98:16
limitation 87:17
  87:20 88:17
  92:3,8,9,20,23
  93:1
limited 32:19
  89:22
line 23:10 30:22
  31:10,12,14
  36:5 73:6
  95:11,15 96:19
  101:11 112:8,9
  112:10,11,12
  112:13,14,15
  112:16,17,18
  112:19
list 14:16 17:18
  17:24,24 64:6
  64:12
listed 44:14
  47:14,18 67:1
  100:7,12 102:5
  103:4
Listen 9:13
listing 66:14
  81:23 99:12
litigants 9:2
litigation 53:22
  63:13,15,25
  72:16 75:14
  77:18 81:20
little 11:12 12:13
  12:14,18 16:25
  17:1 28:1
  29:22 38:13,15
  51:21 57:2,3,6
  66:8

Jay Connor - June 27, 2025

Page 8

| | | | | |
|---|---|---|---|---|
| **LiveNote** 1:19 | 15:20 42:6 | 48:7 53:17 | 34:13 76:17 | 92:5 94:16 |
| **LLC** 2:3,7,12 | 68:10 75:4 | 56:1,2,14,19 | **month** 46:13 | 112:2 |
| 13:12,16 17:6 | **MANAGEME...** | 57:18,20,24 | 83:23 | **need** 8:13,22,24 |
| 19:13 20:3 | 1:8 | 58:2,6,9,10,15 | **monthly** 19:8 | 10:9,12 14:9 |
| 50:7 77:8,12 | **managing** 15:23 | 58:22 59:24 | 34:15 | 15:5 26:8 |
| 81:9,12,16 | **manner** 88:8,14 | 60:7,22,24 | **months** 40:20 | 27:16 36:3 |
| **lodestar** 75:13 | 88:24 104:8 | 65:4,11,14,15 | **morning** 95:7 | 40:23 95:1 |
| **long** 4:20 7:14 | **Maps** 3:18 65:24 | 65:17,19 67:11 | **mortgage** 19:5,7 | 96:7 101:14 |
| 15:6 17:15,16 | **March** 30:7,10 | 67:13,18,20 | **mother** 44:2 | **needed** 15:10,10 |
| 21:13 26:11 | 40:15 58:12 | 74:5,17 80:10 | **motion** 3:15 | 15:18 |
| 36:4 45:17 | 66:16 68:4,5,7 | 80:18,23 81:4 | 32:22 33:1 | **needing** 73:4 |
| 73:18 97:3,9 | **mark** 33:10 | 81:18 85:1,5 | 38:2,19 39:5 | **needs** 95:23 |
| 102:25 | 56:22 61:8 | **messages** 3:16 | 40:6 70:6 72:8 | **neighbors** 14:7 |
| **long-time** 27:2 | 65:23 | 30:14 32:1,16 | 72:10 87:18,19 | 26:12 27:3 |
| **look** 10:10 15:12 | **marked** 33:7,14 | 37:4 40:17 | 88:18,19 89:2 | **Nettles** 99:2,3,3 |
| 30:17 37:8 | 39:3,6 56:25 | 46:2,15,20 | 96:7 | **Neureiter** 94:19 |
| 54:4 71:9,16 | 61:10 65:25 | 47:1,11 52:4 | **move** 11:15,17 | 96:21 |
| 75:24 88:19 | **married** 12:4,7 | 52:11 53:2,16 | 37:3 50:18 | **Neureiter's** |
| 101:25 | **material** 3:22,23 | 56:25 58:3 | 51:19 72:21 | 94:18 |
| **looked** 37:5 | **matter** 70:17 | 62:3 64:6,21 | 73:20 88:22 | **never** 14:22 |
| 41:16,17 62:19 | 79:17 82:2 | 74:5,16 79:2,4 | 91:20 93:7 | 47:24 48:8,12 |
| 103:25 | 89:13,24 97:6 | 80:13,15,17 | 94:2,3 97:4,16 | 48:22 99:16 |
| **looking** 19:1,1 | **matters** 36:25 | 81:6,19 84:16 | 98:7 105:24 | **new** 44:12 57:4 |
| 31:20 35:7 | 89:22 97:17 | 84:20,24 85:9 | 106:6 | 87:11 |
| 37:17 38:1 | **McGraw** 2:12 | 85:21 103:18 | **moved** 45:7 | **nice** 55:24 |
| 83:23 95:5 | **mean** 11:6 22:19 | 103:22 105:1 | **moving** 33:17 | **night** 83:3,5 |
| 109:17,22 | 26:12 35:3 | 105:14,18,21 | 89:8 | **non-argument...** |
| **looks** 58:12 | 46:4 68:3 | 108:14,20,22 | **Mt** 2:4 | 88:13 |
| 96:10 | 71:16 79:25 | **met** 41:7 | **multifamily** | **non-objection...** |
| **lot** 12:23 16:10 | 85:17,18 92:17 | **microphone** | 15:16 | 8:21 |
| 17:14 18:10 | 93:6,16 | 57:5 108:4 | **multiple-part** | **non-suggestive** |
| 24:25 43:3 | **means** 109:7 | **mid** 12:24 68:5 | 40:3 | 88:14 |
| 46:1,5 | **meant** 6:4 35:2 | **middle** 83:3,5 | **muted** 97:20 | **normal** 72:9 |
| **louder** 57:2 | 66:11 | **mind** 28:10 | | **normally** 62:15 |
| | **meet** 41:12 | 30:17,22 | **N** | 83:14,16 |
| **M** | 55:24 | 101:25 | **N** 2:1 4:1 | **Notary** 1:19 |
| **M** 2:11 | **memory** 85:6 | **minutes** 36:3,10 | **name** 4:9 58:25 | 111:5,22 |
| **mad** 41:6 | **mention** 5:8 | 36:11 60:25 | 59:1 96:14 | 112:24 |
| **main** 23:16 | **mentioned** 17:12 | 73:24 76:11 | 99:6 | **note** 30:6 108:2 |
| 78:16 | 26:23 74:3 | **mischaracteri...** | **named** 99:2,2 | **noted** 88:9 |
| **maintenance** | **message** 30:13 | 19:18 | **nature** 71:5 | **notes** 54:4 |
| 12:2 14:11 | 30:25 31:3 | **mom** 78:24 | **necessarily** | **notification** |
| **majority** 21:2 | 32:2 33:22 | **moment** 56:17 | 23:21 35:6 | 44:21 |
| 77:6 | 34:3,8,14,18 | **money** 18:10 | **necessary** 87:16 | **notify** 66:13 |
| **making** 8:1,7 | 40:16 44:21 | 19:19 20:2,12 | 88:15 89:7 | **number** 3:11 |

21:17,23 22:2
22:3,5,6,8 23:3
23:9,9,15,18
23:22 24:15,16
24:17,17 25:18
25:23,23 26:7
26:7,10,10,13
26:14,15,18,19
26:21,22 27:3
27:8,12,13,20
28:10,13,14
29:2,5,8,15,16
29:17 30:22
31:19 35:5,20
43:8,21,23
44:4,8,9,11,12
44:13,17 45:17
46:2,25 47:4
47:13,17 48:3
48:6,9,23
49:21 52:4,5
52:16,18,25
53:9 60:19
67:1 77:24
78:8,25 79:5,6
79:11 81:23
82:10,13,16,21
83:6,7,9 95:6
96:10,25 97:2
97:18 99:20,23
99:24,25 100:1
100:3,8,13,23
101:10 102:4,6
102:8 103:4
**numbers** 21:10
21:14 22:16,17
22:24 23:1,5,7
23:8,12,17,24
23:25 24:2,12
25:1,2,12,17
25:19,21 26:3
26:5 28:3
29:15 34:20
35:9,23 51:22
52:22 53:3,7

61:22 77:19
78:17 82:2
83:8

_____

**O**

**O** 4:1
**oath** 33:18,21
**object** 8:23,25
9:2,6,14,16,20
10:20 18:4
22:21 25:10
42:1 45:4
55:15 63:9
71:20 73:13
90:14 102:11
**objecting** 9:23
10:4,13 42:5
89:5 106:14
107:11
**objection** 6:23
7:16,21,23 8:2
8:8,22,23 9:8,9
10:2,8,10,13
10:14 11:5
12:21 13:5,17
13:22 14:5
15:8 16:1,14
17:7 18:13,16
18:20,25 19:9
19:17 20:5,14
21:4 24:9,23
25:5,25 27:14
28:12,19 29:13
30:4 31:7 32:8
32:18 33:23
34:4,11,23
35:1,12,17
36:17,25 39:10
40:2,22 42:7
42:12 43:11,24
44:18 46:3,18
47:2,6,19
48:19,24 49:25
52:23 53:20
56:3,15 57:22

58:24 59:5,9
59:14,21 60:1
60:17 61:4
62:17 63:1,8
64:13 65:6
67:3,16 69:1,6
69:25 76:25
77:4,16 80:25
83:25 84:25
85:10 86:15,20
86:24 87:3,8
87:24,25 88:5
88:12,12 89:4
89:17,18 90:13
90:18 91:6,9
91:11,13,15
92:15 93:14
94:11 95:22
96:19,22 98:17
98:21 99:4,10
99:21 100:14
100:18,24
103:6 104:4,11
104:16 107:21
108:3,9,15
**objections** 7:24
8:7,12,17 9:17
86:9
**obtain** 89:7
94:16 95:12
**obtained** 29:10
**obviously** 5:11
5:13 17:23
29:5 33:17
37:11 43:8
51:18 84:7
**occasionally**
23:14 78:1
**October** 111:24
**offer** 75:24
**office** 1:22 15:17
96:1
**office's** 96:6
**officer's** 88:7
**OFFICIAL**

111:16
**Oh** 42:22
**okay** 4:16 5:17
8:5 9:13 10:22
10:25 12:4
13:8 14:1,20
14:23 17:20
18:23 19:11
21:6 22:3
25:22 27:23
28:9,23 30:3
31:22 34:7
37:16 41:24
42:10,15,23
43:21 44:7
45:9 46:21
48:8 52:2,13
54:12 55:19
57:13 66:12
74:21 85:4,8
86:7 87:14
92:16 93:6
94:6,7,21
95:14 100:1
106:12 107:12
107:19 108:2
110:4
**old** 6:1
**older** 5:20,22
**on-line** 43:12,14
44:14 47:5,14
47:18 62:20
83:18 100:7,12
100:20,22
102:5,8 103:4
**once** 4:15 5:3
25:21 40:19
72:11 82:3
**ones** 46:22 51:9
**ongoing** 64:1
**opened** 105:8,11
107:17
**opportunity**
8:20 87:9 90:6
90:8

**opposed** 28:13
**oppresses** 88:25
**opt** 59:17
**order** 25:11 89:7
93:8 94:4,16
95:13
**ordered** 87:17
88:17 92:8,9
92:10
**originally** 11:13
**originated** 84:2
**out-of-state**
13:20,23,24
14:1
**out-of-town** 12:1
**outside** 76:5
87:3,8 91:24
91:25 95:19
**overruled** 91:14
**owner** 12:1
**owners** 12:1,2
15:14 16:11

_____

**P**

**P** 2:1,1 4:1
**p.m** 110:25
**page** 3:11 28:10
28:13,14,16
29:18,23 30:17
30:18,19 31:18
38:7,16 61:15
67:1 112:8,9
112:10,11,12
112:13,14,15
112:16,17,18
112:19
**paid** 14:25 16:13
69:21,23 71:3
**paperwork**
15:20
**parents** 26:6
27:9,11 29:9
44:3 82:15,24
83:2,4 100:5
**part** 53:21 54:19

55:10 63:23
69:10 70:9
75:12 81:18
85:23 98:8
100:10
**participating**
9:9
**particular** 83:22
**particularly**
34:24 90:7
**parties** 4:3
111:12
**parties'** 111:13
**partly** 74:11
**parts** 54:21,24
**party** 5:20 6:3
6:13,15 35:8
49:22 88:22
89:1,5
**party's** 88:6
**pay** 34:15 82:9
**payment** 19:7
**penalty** 84:23
**pending** 89:3
106:19 108:6
**Pennsylvania**
2:4,13
**people** 14:13
15:23 24:7,13
26:4,13,15
27:5 47:9
78:15 79:3
**per-day** 83:16
**per-job** 14:25
**per-month**
83:16
**perform** 81:12
**performing** 63:5
**period** 71:18
83:19
**periodically**
41:21
**permissible**
106:25 107:9
**permit** 108:16

**Perrong** 2:3,3
3:3 6:23 7:4,9
7:16,21 8:1,6
8:14 9:12,23
10:4,9,20 11:5
12:21 13:5,17
13:22 14:5
15:8 16:1,14
17:7 18:3,13
18:16,20,25
19:9,17 20:5
20:14 21:4
22:21 24:9,23
25:5,8,10,25
27:14,16,25
28:12,19 29:13
30:4,6 31:7
32:8,18 33:23
34:4,11,23
35:1,12,17
36:1,9,17,24
37:19,24 38:12
39:10,16 40:2
40:22 41:10,12
42:1,7 43:11
43:24 44:18
45:3 46:3,18
47:2,6,15,19
48:19,24 49:1
49:25 51:12,16
52:23 53:20
54:6 55:15
56:3,15 57:1,6
57:22 58:24
59:5,9,14,21
60:1,17 61:4
62:17 63:1,8
63:16,20 64:13
65:6 67:3,16
69:1,6,10,12
69:18,25 70:5
70:12 71:7,13
72:7,24 73:22
74:10,21 75:8
75:16,21 76:3

76:8,10,15
83:10,25 84:25
85:10,13,22
86:1,4,7,15,20
86:23,24 87:3
87:8,20 88:1,4
90:3,6,15,23
91:4,10,19
92:3,23 94:5
94:13,25 95:5
95:15 96:9,14
96:15 97:1,7
97:11,16,20,23
98:2,6,19 99:4
99:10,21 100:9
100:14,18,24
101:4,14,23
102:7,11,15,16
103:6,16,20
104:4,11,16
105:3,10,15,24
106:6,12,15,20
107:1,7,13,19
107:23 108:15
108:25 109:11
110:13,19,23
**person** 59:1
87:15 88:14
92:4 95:14,25
96:24 97:3,8
97:13,19,21,24
98:4
**personally** 48:11
**phenomenon**
84:15
**Philadelphia**
42:25
**phone** 23:1 25:1
25:23 29:2,5
31:24,25 34:9
34:10,15 35:20
35:23 37:5,9
40:11,13,21
42:15,16 43:21
43:23 44:8,12

44:13 47:13
48:9,14,16
51:22,23 52:21
53:6,12,18,21
60:25 61:15
62:15 65:21
66:25 68:12
74:4,9,14,15
80:16,18 83:15
83:21 84:18,22
85:2,5,23
99:19 108:18
**phone's** 83:22
**phones** 35:15
51:23 53:8
**physical** 52:21
53:1
**physically** 85:17
101:17,21
**pick** 100:3
**picked** 100:1,8
100:13
**place** 40:14
**places** 14:12
**plaintiff** 1:5 2:2
5:18,21 6:8,10
6:17 30:24
95:8,18 96:15
98:1,2
**plaintiff's** 3:13
33:14 95:18
97:21
**plan** 9:22 60:25
85:23 97:3
**play** 93:9
**Pleas** 29:24
**please** 5:9 18:2
32:9 50:16
52:8 55:11
66:8 67:14
78:7 101:3
102:22 103:1
103:19 112:6
**point** 9:11 36:5
70:4 97:15

98:15
**portion** 55:9
106:7
**portions** 55:4
**position** 95:18
107:16
**possible** 100:16
100:22 101:1,5
101:8,17,21
102:4 103:1,3
**possibly** 20:9,10
21:5 35:18
59:15 71:3
**POST** 1:22
**potentially** 15:4
**practice** 72:10
**preceding** 11:9
**prejudice** 93:13
**Prepaid** 3:17
61:9,16
**preparation**
63:16 67:6
74:12
**prepared** 108:1
**present** 32:2
67:24 71:11,23
71:24 87:18,19
88:17
**presented** 65:16
68:14 80:17
90:2
**preserve** 87:16
88:16 92:5
**preserved** 7:24
8:12,18,25
90:17
**preserving** 8:6
**prevent** 7:7
**previous** 44:9
85:14 108:11
**primarily** 27:10
**prior** 19:18
63:19 68:19
74:14 84:4
102:8 106:7

Jay Connor - June 27, 2025

Page 11

privacy 23:22
78:15
privilege 7:2
36:24 39:11
40:24 41:9
42:2 49:2
51:13 63:2,9
69:2,7 70:2
72:2 74:11,12
74:25 75:1,6
86:17,21,25
87:16 88:16
92:6,7,21
93:20 104:9
106:17,21
107:3,14,20,25
108:16
privileged 36:18
39:17 41:5
51:18 65:7
75:17 90:19
104:5 105:4
pro 51:10,17
probably 14:24
16:25 18:6
28:2 46:11
71:20,23
problem 8:10
problematic
46:25
procedure 91:3
95:21
proceed 90:25
92:13
proceeding 80:4
proceeds 88:10
process 17:16
45:1,18
profane 79:2
Professional
1:18 111:4,22
profile 43:10
prohibiting 71:2
projects 12:23
12:24 14:11

proper 93:16
properties 12:3
13:1
propriety 49:4
95:11 96:18
prosecuted
33:25
protective 93:8
94:3
provide 73:11
78:8 108:1
provided 101:9
providing 78:5
provision 69:13
provisions 55:14
Public 1:19
111:5,22
112:24
publicly 47:5
pull 84:2 87:22
109:6,14,14
pulling 109:13
purchased 25:3
purpose 7:25
23:19 24:7,11
43:23 78:13
79:10
purposes 23:4
77:22,24 78:2
79:21
pursuant 42:8
63:12
pursue 11:8
pursuing 7:15
13:3 49:23
put 27:12,23
29:16 32:15
48:1,6 106:23

_____

Q

qualifications
88:7
question 5:1,9
6:10 7:7 8:19
9:3,19,21,24

10:2,5,15 23:4
26:5 39:20
40:3,10,14
41:15 45:4,8
45:11,12 55:16
63:19 64:14
74:22 85:14
86:1,8 87:10
87:11,12 91:12
91:17,24 93:5
94:1 95:16
96:4 100:10
101:5,15,20,23
101:24 102:1,2
102:17,18,19
102:20 103:13
104:8,24 105:9
105:10,16
106:10,19,24
107:8,11,18,24
108:6,7,11,13
109:2,3
questioning 73:7
95:12,15 96:19
101:11
questions 55:23
70:11 72:23
74:20 76:7,11
83:11 86:14
89:24 90:10
98:11 102:13
104:17 108:24
quick 37:2 54:4
quite 64:14
85:15 102:12
quoted 3:22,23

_____

R

R 2:1 111:1
radio 10:21,22
10:23
ramped 11:3,6
range 22:10
rape 78:24
rate 70:14 71:4

72:5 75:9,15
75:17
rates 75:10
RE-EXAMIN...
3:4,4 83:12
103:14
reach 26:8 83:8
reached 66:16
reaction 56:13
56:16,16 59:24
read 3:23 10:11
38:7 108:7,10
110:15 112:1,5
reading 4:4 60:6
60:21 94:9
ready 38:9,17
real 37:2
realize 37:4
43:19 44:14
realized 100:20
108:20
really 17:22
24:20 26:4
41:20 93:8,9
99:11 100:25
101:10 107:10
reason 23:21
29:10 60:14
112:7
reasonable
75:11,24
reassembled
32:17
reassign 82:2
recall 39:21
44:25 46:20
56:16 58:17,21
60:23 65:12
100:15,16
103:18,22
receive 34:2 35:6
35:16 46:1,6
46:12,15 52:2
52:10 53:9,16
56:2,4,6 62:15

76:21 82:23
received 6:11
30:25 31:23
33:22 34:8,21
37:4 56:4,13
62:2 64:5,11
64:20 65:2,3
65:13,15,19
67:11,18 80:10
80:11,23 84:20
103:17,21
104:25 105:14
105:17,21
108:14
receiving 59:24
76:19 85:20
recognize 28:3,4
28:21
recollection 26:1
39:18
recommend
14:17
record 4:25 8:7
8:17 24:21
28:10 29:21
31:19 36:12,14
41:17 54:10
73:3,9 76:13
86:9 88:10
89:18 91:15,23
94:23 95:1,2
96:20,23
106:23 107:22
108:3 110:14
110:16,18
111:8
records 37:5,9
40:11,13,18,21
41:4,16,23,25
42:15,16 79:14
79:18,22 80:20
83:15,21,22
84:3,11
Recross 103:10
Redirect 76:11

87:4,9,21 89:9
89:21 95:20
98:13 103:9
**redo** 15:14
**refer** 22:1 31:2
80:8 81:4
84:10
**referred** 31:5,9
45:13
**referring** 26:20
60:9 61:20
68:17,22 81:5
**reflected** 80:19
**refuse** 9:7
**regarding** 3:19
25:11 48:23
65:25 95:16
96:4 104:18
106:16
**registered** 1:18
60:19 111:4,22
**Registry** 48:1,7
55:5,8,13
60:20 64:21
**regular** 15:1,6
23:25 53:17
**relate** 7:25 8:18
55:1,4 86:13
**related** 5:25 6:2
6:7 18:8 36:22
48:20 49:8
55:13 69:11
**relates** 96:12
**relation** 20:1
**relative** 111:11
111:12
**relevance** 8:22
90:14
**relevant** 89:14
98:12
**rely** 77:9
**remember** 4:16
4:18,20 6:6,13
13:6 16:19
19:22 21:21

27:12,15,20,22
33:3 35:21,25
39:23 40:9
41:18 43:20
44:15 45:19,23
45:24 46:19,22
55:18 56:8,9
66:17 68:19
77:19 78:11,12
79:8 84:13
99:20 100:4,19
102:23,23
103:2
**remove** 43:15
44:16 45:17
81:22
**rendered** 72:13
**rent** 19:3
**repeat** 18:2
45:12 52:8
67:14 103:19
**rephrase** 40:23
102:1,1
**replaced** 15:17
**replacement**
16:11 25:23
**reply** 59:16,20
**report** 111:7
**REPORTED**
1:18
**reporter** 1:19,19
33:8 57:9,10
94:22 108:10
110:17 111:5
111:22
**REPORTER'S**
3:6
**represent** 4:10
55:25
**representation**
51:8
**REPRESENT...**
2:2,6,10
**reproduced** 3:23
**request** 24:15

38:11 57:12
72:17 99:23
**research** 108:21
**reserve** 89:19
**reserved** 4:5
**residences** 15:16
**residential** 15:16
**resolve** 6:22 73:6
**respect** 20:7
24:19 72:16
82:15
**respectfully** 21:9
**respective** 4:4
**respond** 56:20
86:14
**responded**
103:24
**response** 56:18
58:10,20
104:15 107:15
107:18 108:1
**responses** 13:9
**restroom** 36:4
**result** 78:19,21
84:24
**reveal** 7:11 41:2
**revealing** 104:20
**review** 34:10
40:11,20 41:20
41:22,24 67:5
67:8 70:20
73:11 79:14,15
79:17,21 80:3
83:15,20,21,23
86:8
**reviewed** 34:9
42:14,16 62:1
67:9 84:14
108:18 109:4
**reviewing** 40:12
40:17,18 74:14
89:17
**right** 4:24 5:6,12
6:15,16,21
8:12 9:18 11:1

11:2 13:4
17:18 18:9
19:14 20:18,19
21:11,25 22:2
24:4,20 26:24
27:3,6,7,17
29:6,7 30:11
30:12,20 31:8
31:11,13,25
32:3,5 33:18
33:19,20,22,24
34:3 37:7,17
39:25 40:1
41:5 42:5,9
43:10 44:4
47:5,9,20,22
48:4,18 51:13
51:19 53:12,13
53:14,15 54:14
54:15,18,21,22
54:24,25 55:2
55:3,5,6,19
57:5 59:17,18
66:11 70:11
71:1 76:21,22
76:24 77:1,3,5
77:15 80:6
82:7,8,22
83:20 84:5,21
85:9 87:25
88:3 89:19
90:2,13,19,21
91:18 93:14,15
93:19,25 94:18
97:23 98:7,10
98:12 100:2
103:8 104:1
105:7 107:1
110:2,11,15
**right-hand**
57:17
**road** 91:20
**robocalls** 79:1
**role** 16:3
**ROMAN** 2:3

**roof** 15:15,17,18
15:24 16:11,17
**roofing** 17:11
**room** 43:2
**routinely** 34:12
**rude** 21:7
**rule** 6:23 7:4,6
35:4 76:4
87:14,18,19
88:4,18,19
89:9,12 90:13
90:23 91:1,3,4
92:1,10 95:22
96:5
**rules** 9:15 10:1
10:11,11 87:21
91:6,7 92:10
92:13,24 93:1
93:15,23 94:10
94:11
**ruling** 96:7,23
98:20
**run** 23:23 97:25

___

**S**

**S** 2:1 4:1,1
**S20** 52:17
**S22** 51:25 52:6
**S24** 52:6,15
**safe** 56:10
**Sally** 58:16
**Samsung** 52:13
53:21
**sanctioned**
53:23
**save** 67:12,19
94:1
**saved** 67:25 68:9
68:14
**saw** 13:19 57:25
65:20 71:21
74:9 84:9,9,17
99:25 108:19
**saying** 5:9 7:3
22:11 28:10

| | | | | |
|---|---|---|---|---|
| 32:10 35:8 44:3,21 70:19 70:22,25,25 73:10 91:5,7 101:22 105:7 107:5 | seek 75:12 seen 17:24 43:12 43:12,14 84:11 selected 102:5 103:5 send 57:12 58:22 | sic 29:25 36:2 side 58:3 sign 110:15 signature 28:25 29:3 38:17 significant 20:24 | 102:14 source 77:15 South 1:23 2:9 6:20 11:14 29:24 30:10 33:25 54:13 | 10:10,12,18 27:20 28:8,14 30:10 32:20,23 33:14 34:1 54:14 69:12 70:7 74:22 |

says 28:16 30:7
30:23 49:22
58:6 59:16
61:16 62:5,12
87:14,23 110:4
schedule 40:12
41:22
scope 76:6 87:21
89:8,21 91:25
95:20 98:13
scratch 47:10
screen 27:23
33:5 37:17
57:13
screenshot 31:24
scroll 28:9 31:18
38:10,12,15
66:7
scrolling 66:9
se 51:10,17
SEAL 111:16
search 62:22
63:6
searched 63:12
102:8
searching 62:25
second 14:8,8
23:15 24:15
33:1 34:8
37:12 38:24
39:9 40:7,16
56:23
see 38:3 54:8
56:5 57:7,15
58:3 59:16
61:12 66:3,11
70:10 71:8
72:1 73:23
109:9

sending 59:1
sense 94:12
sent 32:1 33:7
44:21 47:11
52:5 58:9,12
58:20 67:23
68:15,18 79:4
separate 51:23
53:11 64:5,11
64:20 74:5
80:17
separately 32:1
service 34:16
110:6,7
ServiceQUIK
1:7 2:6 4:10
27:21 68:23
95:9 96:16
services 60:15
settlement 7:11
72:14,14
settlements
19:25
seven 21:16 22:7
share 37:16
56:21 57:13
61:7 65:22
sharing 33:5
65:3
sheet 3:7 28:7
38:2 109:25
112:1
short 36:10
39:19
shortly 40:6 68:3
show 10:21,22
10:23 37:22
87:23
shut 108:4

significant 20:24
signing 4:4
SIM 52:19,20,24
52:24 53:1,9
similar 20:7 24:6
75:13
similarly 1:4
single 9:21 12:4
12:6 34:2
52:12 84:17,17
84:18
sir 109:19
situated 1:4
situation 50:19
situations 90:19
six 40:19
smaller 16:8
smiling 106:5
SMS 32:7,11
socially 78:1,3
SOFTWARE
1:8
somebody 10:24
14:9 23:23
59:12 104:3
soon 44:13 97:24
sorry 18:2 21:20
25:8 30:8 36:1
42:4 47:9,15
52:7,20 67:15
69:4 85:25
86:4 96:11
100:9 103:1
104:14 109:11
sort 59:23 62:16
73:2,8 75:13
sound 99:6
sounds 15:22
18:9 20:11
25:22 41:21

63:7 65:1
110:1 111:2,5
111:18
speak 24:8 25:4
57:2 99:14
speaker 3:24
speaking 19:19
47:11 86:18
special 53:18
82:16
specific 49:21
99:23
specifically 4:17
10:15 14:4
41:19 46:23
62:22 63:5
66:17 89:12
104:10
specifics 6:6
specify 9:7
speculating
50:15
speculative
50:14
spend 45:17
49:7,13,23
50:5,7,11,20
50:22 60:21
spent 45:25 60:6
split 32:17
stand 34:21
standpoint 96:6
start 32:21 45:15
45:16 52:3
59:3 107:5
started 17:16
starting 11:22
starts 17:15
state 3:13 10:1,7

75:2 84:5
111:2,5,18
112:7
stated 88:12
statement 74:23
75:7
statements 75:4
states 1:1 88:5
90:23 92:11
stating 89:17
statute 10:24
72:19 76:19
statutory 76:18
stenographica...
111:7
stipulate 63:10
63:21 71:24
stipulated 4:2
stipulating
63:11
stipulation
63:10 73:9
stop 16:5 33:5
59:10,19 65:2
77:2 93:7 94:2
store 103:5
strategically
39:25
strategy 9:1 86:2
86:13
stream 15:6
Street 2:8 15:15
strike 105:25
106:7
structure 70:13
stuff 10:19,19
14:3 16:9,21
98:12 103:11
sub 14:18,19

Jay Connor - June 27, 2025

Page 14

subcontractors
14:16
subject 29:16
30:14 81:20
87:7,25 88:11
90:17 91:9,10
submit 32:22
submitted 38:3
subscribed
112:22
subscriber
110:10
subsequent 84:7
sued 55:7
suffered 84:23
suggest 96:2
102:15,16
suing 49:4
Suite 2:8
Summa 2:7,7
3:2,4,5 4:8,9
7:1,6,13,23 8:3
8:11,15,16
9:20 10:1,6,16
18:5 22:23
25:7,9,14
26:23 27:1,18
30:8 33:9,16
36:6,11,13,20
37:1,21,25
38:14 39:2,7
39:13 40:4,5
41:6,11 42:4
42:10,13 44:1
44:6 45:9,10
47:16 49:6
51:14,19,20
54:3,8,11
55:19 76:9
80:8 81:3
83:13 85:19,25
86:6,10,19,22
87:1,6,14,23
88:3 90:1,4,12
90:16 91:2,5

91:18 92:2,15
93:2,6 94:6,21
94:24 95:3
96:12 98:8,22
100:11 101:2
101:12,19
102:3,9,14,21
103:8 108:9,25
109:9,12,19,21
110:11,19,21
summer 32:23
37:12,14
Summons 28:24
superintendent
11:24
supplemental
16:20
sure 11:6 13:7
15:20 18:6,21
19:25 20:17,23
21:5,18 22:9
22:12,13 27:22
33:9 35:7
40:14 41:6,18
41:19 42:6
48:2,17 51:9
54:4 57:4 61:5
68:20 70:12
73:20 87:23
91:2 94:18
97:9,15 100:21
100:25
suspend 71:14
94:15
suspended 89:6
sustained 91:14
91:16
swore 33:21
Sworn 4:6
112:22
systems 55:2

—————
T
—————
T 4:1,1 111:1,1
tables 11:23

take 15:9 17:14
31:25 36:10
45:1,18 47:22
54:4,6 71:9
73:4 74:4,16
85:1,5,6 91:8
94:7 97:10,12
97:18 102:24
taken 1:15 4:11
4:12,14,15 5:2
87:25 89:4,11
90:17
takes 77:11
talk 8:4,4 21:6
27:10 38:9
43:4
talked 17:22
98:10 104:23
talking 45:14
60:6 63:15
84:12 98:10
108:18
tapered 11:4
taxes 17:9
TCPA 5:22,25
6:2,6,7 10:17
18:8 19:16
48:20 49:15
54:24 55:9,14
69:14 76:17
77:9 78:19,22
tear 61:2
technicalities
15:24
technically 92:9
telemarketer
23:15 24:14,20
78:23
telemarketers
77:25
telemarketing
5:23 7:15
10:18 13:4
18:19 20:3,6
20:12 21:3

23:19 34:22
35:10,16,22
46:2 47:1,10
49:9,15,23
50:6,12,21,23
51:1 77:23
78:6,10 81:15
telephone 25:12
31:1 41:4 55:2
78:25 79:14,18
79:22 80:19
82:1,10,13
tell 5:14 9:13
12:13,18 13:11
14:3,4 18:11
18:18 31:14
52:2 66:6
94:13 96:4
105:6
telling 16:5
30:18,22 42:17
ten 4:17,21 5:4
6:2,5,7 14:22
25:2,7,9 36:10
36:11 76:10
term 32:7
terminate 88:20
88:22 91:21
110:20
terminated 82:3
terminating
110:21
terms 41:3 42:2
47:1 63:24
66:9 70:7
72:13,14 91:6
94:8
testified 29:9
40:17 101:6,9
testimony 3:1
19:19 79:8
82:20 85:4
88:11 89:11
91:8 97:9
106:8 111:9

text 3:16 30:25
30:25 31:3,5,6
31:9,16,23
32:2 33:2,22
34:2,6,17
37:13 38:24,25
39:9 40:7
52:11 53:2,17
56:24 58:10
62:2,5 64:5,20
65:3,11,15,16
65:19 67:11,13
67:18 68:4,13
81:19 84:8,10
84:17,17,18
103:17,21
104:25 105:14
105:18,21
108:14,20,22
texting 59:6
60:11,12,14,19
texts 31:5 52:10
Thank 13:8 16:6
22:25 26:25
30:8 33:12
98:6 110:23
theory 34:2
thereabout 6:5
thing 5:22,23
53:8 75:23
93:17 98:9
things 14:11,14
think 4:22 5:1,2
5:7 6:6 7:18
8:11 11:3
13:19 14:21
16:2,7 17:5,11
19:23,24 20:2
20:17 22:7
25:19 36:6
39:15,19 44:1
44:4 45:20
46:12 48:13
49:13 50:5,6
50:13,13 52:17

Jay Connor - June 27, 2025

Page 15

54:3 55:17,19
56:4,7,20
63:20 66:7
68:4,13,14,15
68:15,18 70:9
70:18,20 71:15
73:1 74:1,4
82:20 85:15
90:12 92:15,17
92:18 93:6,18
94:10 98:12,13
99:22 101:20
103:7,23 104:7
105:8 106:18
109:16 110:11
**thinking** 79:3
**third** 4:19,22
22:8 26:12
**thought** 34:5
100:4
**thoughts** 93:3
**thousand** 18:24
19:12
**threaten** 78:23
**threatened**
78:18,21
**three** 5:2,17 21:2
21:12,13,14,17
21:20,24 22:6
22:17,18 23:7
24:4,5 25:1,16
25:20,20 26:3
26:5 34:20
35:9 43:22
44:15 45:24
51:21,22,23
61:21
**Tim** 55:24 57:1
93:2 103:11
**time** 1:16 4:20
5:3,4,7 13:2,4
15:6 17:15
25:17 26:11
32:4 34:5
35:19 37:23

39:24 42:19
45:1,18,25
47:25 48:4,10
49:7,16,17,23
50:5,7,11,20
57:3 60:4,5,6
60:21 75:18,22
80:1 82:21
83:1,9,19
84:21 88:5,21
89:6 90:9
94:16 95:24
109:10,13
**timeframe** 25:6
**timeline** 84:13
100:19
**times** 5:3
**TIMOTHY** 2:11
**Tknowles@w...**
2:13
**today** 64:4 75:20
81:3
**told** 105:5
106:10
**tone** 5:12
**top** 11:11 28:3
28:11,18 42:20
61:16
**topics** 97:5
**totally** 108:8
**touches** 40:24
49:2
**track** 81:8
**transcript** 3:22
4:5 5:11,12
111:8 112:1,5
**traveled** 43:1
**trial** 74:12 89:10
89:12 91:1,11
92:13,16 93:12
**tried** 43:15
102:24
**trouble** 43:3
**true** 18:7 20:18
20:20 29:23

32:20,25 37:11
38:23 111:8
**trust** 36:7
**try** 29:14 84:1
**trying** 21:7
24:21,24 36:7
47:1 49:12,20
59:3,6,8,12,19
60:10,16,18
75:24 92:21
93:10,22 101:4
102:15,16
**turn** 50:23 54:5
**two** 4:23 15:16
24:2,4,5 32:1
37:4 52:21,24
53:14 62:2
64:5,11,20
74:4,16 80:12
80:14,16 81:5
84:16,19,24
93:5 103:17,21
104:25 105:14
105:18,21
108:14,19,22
**type** 14:2 50:10
53:8
**types** 18:12
**typical** 15:12
**typically** 37:8
72:7 83:21,23
87:24

_____
**U**

**U** 4:1
**Uh** 20:9
**Um** 26:6 68:14
68:23 78:1
99:25
**understand** 5:8
5:9,14 9:1
17:21 24:11
32:13 33:19
46:4 49:11
55:16,17 64:1

74:7 80:12,14
81:5 85:16
96:9 101:10,13
101:15,24
102:2,13,18
103:17,21
105:13,15,20
105:22 107:10
108:14
**understanding**
32:13 48:5
53:6 60:13
65:14,18 72:25
73:2,8,19 74:8
74:15 76:16
80:11 81:2
82:1 104:25
105:17
**understands**
102:18,19
**undertake** 44:16
**UNITED** 1:1
**UNKNOWN**
95:14,25 96:24
97:3,8,13,19
97:21,24 98:4
**unreasonably**
88:24
**unwanted** 77:14
79:13
**upgrades** 14:12
**upper** 57:17
**upside** 12:25
13:1
**usage** 62:6
**use** 23:14 24:13
26:7,11,13,14
27:10,13 29:8
36:3 52:10,14
60:15 77:23
78:1,2,5,8 85:2
96:2 110:6,7
**uses** 44:2
**usually** 24:24

_____
**V**

**vague** 10:15
45:4 86:17
101:16
**valid** 92:16
94:11
**value** 16:2
**varies** 18:17
**vein** 49:13
**verify** 80:1
**versus** 95:8
96:16
**video** 95:4 97:13
**view** 58:15
**viewed** 58:18
**violates** 25:11
**violation** 64:6,21
76:19
**virtual** 23:9
**Voice** 23:8,12,18
24:2 25:19
77:19,24
**volition** 42:16
**voluntarily**
32:22
**voluntary** 12:16
12:17
**vs** 1:6

_____
**W**

**wait** 98:20
**waited** 11:23
**waiting** 103:12
**waive** 75:6
**waived** 104:8
**waiver** 75:3
107:17
**waiving** 75:1
107:2,14
**wake** 83:6
**Walter** 99:3
**want** 9:5 12:14
17:19,22 23:24
24:18 36:21,21
37:2 44:11

Jay Connor - June 27, 2025



47:9,10 51:14
61:7 65:22
70:24 71:14
73:23 74:21
76:4,20,23
77:2 78:16
80:1,3 81:18
81:19 82:25
83:19 84:1
85:13 90:4
91:19 93:9
94:14 97:11
98:16 101:25
107:1 108:2
109:5 110:13
110:15
**wanted** 59:22
71:20 74:24
108:25
**wants** 23:15
**Warren** 2:12
**wasn't** 22:20
58:1 84:14
**wasted** 60:4,5
**way** 8:19 24:22
27:19 32:15
33:3 42:23
66:22 81:25
**we'll** 9:11,12
32:21 54:6
57:7 61:7
73:11,15,16,20
91:20,21 98:4
98:20
**we're** 9:14,14
25:10 31:19
36:2 42:25
54:5 57:2 64:4
65:13 72:17,18
73:13 75:17,21
84:12 92:6
93:12 94:14,25
95:1,9 96:17
98:10 103:12
106:21 107:25

**we've** 17:13 49:3
77:18 98:19
**wear** 61:2
**website** 58:16
59:25 60:15
**week** 46:9,10,11
49:14,14
**weird** 39:13
**went** 4:25 17:23
36:12 44:20
54:10 76:13
99:19 103:4
107:22
**weren't** 6:10
32:3 85:8
**whoa** 105:24,24
105:24
**Wilbanks** 1:18
33:9 111:4,21
**willing** 63:21,22
71:10 75:6,17
75:21 86:22
**wireless** 30:25
**wish** 37:21 112:6
**withhold** 72:1
**witness** 5:19
6:24 7:10 8:9
25:13 26:19,24
28:15 36:19
39:12 42:3
63:3 69:3,8,20
72:22,25 86:16
87:4,10,13
88:2 91:16
92:25 93:16
101:3 106:3
108:17 111:9
111:16
**witness's** 19:18
**wondering** 23:1
96:21
**Woosender** 1:10
2:10 55:25
**word** 32:12,14
84:15 94:8

**worded** 33:3
**wording** 57:23
58:2
**words** 34:8
74:16 80:3
**work** 11:21,25
12:25 13:20
14:13,16 15:2
16:10 17:17
20:25 33:11
50:7 75:11
77:11 81:8,11
81:16
**worked** 11:23
66:19,22
**workers** 16:4
**working** 17:13
17:14 24:20
49:8 50:5,11
50:20 75:10
**works** 8:14 54:8
94:5,8
**wrapping** 74:1
**wrong** 10:6
13:11 94:7
96:10
**wrote** 30:20

**X**

**Y**

**yeah** 8:6 17:2,4
18:3 22:20
37:21 41:10
54:6 60:3 95:5
97:19 103:20
**year** 15:14 20:1
20:15,16,25
34:1 37:15
40:8,19 42:21
49:7 84:12
**years** 4:18,21
5:4 6:2,5,7
11:9,9 13:10
13:15 14:7

17:25 18:8
21:2,15,16,17
21:21,24 22:6
22:7,8,15,18
23:2,6 24:2
25:2,7,9,15,18
25:20 26:2
41:14 43:22
44:15 45:24
51:4 79:6,7

**Z**

**Zing** 1:8 58:16
59:24
**ZOOM** 1:13

**0**

**1**

Jay Connor - June 27, 2025

Page 17

