**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

JAY CONNOR, individually and on behalf of all others similarly situated,

Case No. 1:24-cv-02286

Plaintiff,

v.

SERVICEQUIK INC. d/b/a
ZING BUSINESS MANAGEMENT
SOFTWARE

Defendant.

**PLAINTIFF'S OPPOSITION TO THE DEFENDANT SERVICEQUIK INC.'S**
**MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 2

LEGAL STANDARD ...................................................................................................... 3

ARGUMENT .................................................................................................................. 3

   1.   A text message "call" is a "call" under the TCPA. ................................................. 3

   2.   Mr. Connor received two text message calls. ..................................................... 11

   3.   Defendant fails to meet the statutory requisites for its claimed safe harbor under the TCPA. .................................................................................................................. 16

   4.   Defendant fails to meet the statutory requisites for its claimed safe harbor under the SCTPPA. ............................................................................................................... 18

   5.   Response to Statement of Undisputed Material Facts ........................................ 19

   6.   Statement of Additional Disputed Facts ............................................................. 20

## INTRODUCTION

This Court should deny Defendant ServiceQuik Inc's ("ServiceQuik" or "Defendant")'s motion for summary judgment. Aimed at preventing unwanted intrusions into Americans' daily lives, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, affords substantial protections against unwanted telemarketing. The South Carolina Telephone Privacy Protection Act, ("SCTPPA"), SC Code § 37-21-10, extends similar protections to holders of South Carolina telephone numbers, like Plaintiff. Significantly, the TCPA (and SCTPPA) impose liability on companies, like ServiceQuik, who send marketing text message calls to cell phones without consent. That's exactly what occurred here. ServiceQuik now seeks summary judgment by attempting to distance itself from the very telemarketing operation it created, controlled, and profited from. This motion should be denied because it is not merely possible that a reasonable jury could enter a verdict in Plaintiff's favor; no reasonable jury could do otherwise.

ServiceQuik's business model relies, in part, on text message advertising. But that business model has a problem: because ServiceQuik sent text message calls to telephone numbers, like Plaintiff's, which were assigned to customers who never asked to receive them, ServiceQuik violated the explicit text of the TCPA's Do Not Call Registry provision. ServiceQuik's motion for summary judgment relies on multiple misapprehensions about the law. For starters, ServiceQuik seizes on a minority of recent caselaw incorrectly holding that the TCPA does not apply to text message calls, a position that conflicts both with the statutory text and a mountain of courts holding otherwise. Similarly, ServiceQuik argues that the Plaintiff received only one text message, a fact which is, at worst, disputed, and at best, demonstrably false. Finally,

ServiceQuik argues that it's entitled to a statutory safe harbor as an affirmative defense, despite adducing no evidence to show that it meets the statutory criteria and with the evidence adduced showing the opposite. ServiceQuik is liable under the plain text of the statute and has not met its burden of demonstrating that it is entitled to summary judgment. This case must proceed, and summary judgment ought to be denied.

## FACTUAL BACKGROUND

Plaintiff Jay Connor is a South Carolina resident who uses his residential 843-area code number for personal, residential, and household purposes. Second Am. Compl. ("SAC") ¶¶ 6, 20, 23–26. Mr. Connor personally registered his number on the National Do Not Call Registry in 2022. SAC ¶ 22. Defendant ServiceQuik Inc. is a Colorado-headquartered company that sells websites. SAC ¶ 7. On February 23, 2024, Mr. Connor received two text message calls to his number from the telephone number 720-927-8973. SAC ¶ 29. The first message read: "Hi, this is Sally from Zing website design. We're offering a fully built website for only $19/month for businesses like Arbor Craft Builders- no contrac" SAC ¶ 30. The second read: "t! Can I send you a sample of our work? Reply 'not interested' to opt out." SAC ¶ 31. Together, the two messages constituted TCPA- and SCTPPA- violative telephone solicitations for ServiceQuik's website design services. The existence of two separate text messages is confirmed by Mr. Connor's AT&T billing records, which reflect two distinct incoming text/message entries from 720-927-8973 on February 23, 2024. Exhibit A, Exhibit B. Although Mr. Connor's phone displayed the messages as a single visual unit for ease of reading, AT&T's carrier records confirm that the messages were received in two distinct call transmissions. Connor Dep. 80:12-22; 31:24-25; 32:1-5; Ex. A; Ex. B. ServiceQuik had

no written procedures for compliance with the TCPA. Exhibit C, RFP 14. ServiceQuik
did not train its personnel regarding Do Not Call compliance Cameron Dep. 42:9-25,
43:1-10. ServiceQuik used no process to prevent telephone solicitations to any number
on the Do Not Call Registry. Ex. C, Rog. 10). ServiceQuik never subscribed to or
purchased the national do-not-call database. Cameron Dep. 40:3-5.

## LEGAL STANDARD

Under Rule 56, summary judgment is proper if the evidentiary materials in the
record show that there is "no genuine dispute as to any material fact" and that one party
is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The evidence, all facts,
and any inferences that may permissibly be drawn from the facts must be viewed in the
light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus.
Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image
Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). A district court in this posture may not
weigh evidence or make credibility determinations. *Concrete Works of Colorado, Inc. v.
City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). Rather, the court must
determine whether "the evidence presents a sufficient disagreement to require
submission to a jury or whether it is so one-sided that one party must prevail as a matter
of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## ARGUMENT

### 1. A text message "call" is a "call" under the TCPA.

As its first basis for summary judgment, Defendant argues that a text message
cannot be a "call" under the TCPA. As an initial matter, the law of this case seems to
preclude that argument. *Connor v. ServiceQuick Inc.*, No. 1:24-CV-02286-CNS-NRN,

3

2025 WL 2855393, at *2 n.3 (D. Colo. Oct. 8, 2025) (noting that the FCC's delegated authority has "interpreted the TCPA's reference to a "telephone call" to include text messages."). A court "has the power to revisit prior decisions of its own … in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Gross v. Pirtle*, 116 F. App'x 189, 196 (10th Cir. 2004). Nothing about the Court's previous decision holding that text messages are "calls" is clearly erroneous, even taking into account the Defendant's law. Defendant's argument is thus contravened by Defendant's own loss *in this very case*, which itself cited (albeit indirectly) to 47 C.F.R. § 64.1200(e).

That regulation makes the Do Not Call regulations applicable to text messages. 47 C.F.R. § 64.1200(e) ("The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or *telemarketing calls or text messages* to wireless telephone numbers."). And the three cases Defendant cites are contravened by many more[1] cases disagreeing with their reasoning and holding that a text message is a "call" under the TCPA, including through applying this regulation. *Wilson v. Hard Eight Nutrition LLC*, 804 F. Supp. 3d 1141, 1151 (D. Or. 2025); *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 WL 3140725, at *2 (N.D. Ill. Nov. 10, 2025); *Wilson v. MEDVIDI Inc.*, No. 5:25-CV-03996-BLF, 2025 WL 2856295, at *2 (N.D. Cal. Oct. 7, 2025); *Wilson v. Skopos Fin., LLC*, No. 6:25-CV-00376-MC, 2025 WL 2029274, at *4 (D. Or. July 21, 2025); *Hudson v. Palm Beach Tan, Inc.*, No.

---

[1] Even this list is not comprehensive. Every month additional decisions continue to add to the "growing consensus" that text messages are calls. *Better Mortg. Corp.*, 2025 WL 3493815 at *5, *9.

1:23CV486(WO)(JEP), 2024 WL 4190513, at *6 (M.D.N.C. Aug. 12, 2024); *Bosley v. A Bradley Hosp. LLC*, No. 25-CV-22336, 2025 WL 2686984, at *5 (S.D. Fla. Sept. 19, 2025); *Evers v. CampaignSidekick, LLC*, No. 24 CV 11067, 2025 WL 2896818, at *4 (N.D. Ill. Oct. 10, 2025). These authorities show this Court was right the first time.

Defendant cites three out of circuit authorities, *Jones v. Blackstone Med. Servs., LLC*, *Davis v. CVS Pharmacy, Inc.*, and *Sayed v. Naturopathica Holistic Health, Inc.*, for the proposition that a text message is not a "call." In each, the courts considered the fact that text messages did not exist in 1991, when the TCPA was enacted, and further insisted that nobody describes text messages as telephone "calls" in ordinary conversation. *Jones*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025). Of course, text messaging didn't exist yet when the TCPA was passed in 1991. But that is no matter: The plain meaning of the word "call" in the TCPA has long been understood to encompass any attempt to communicate by phone, "regardless of whether that call is communicated by voice or text." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *see* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

But although "every statute's *meaning* is fixed at the time of enactment," there is nothing odd about old text finding "new *applications*" as times change. *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). To see why the TCPA comfortably encompasses a text message as a "call," consider a 1991 law that bars "vehicles" from a park. That law applies equally to Cybertrucks and to sedans, even though the former didn't exist at the time. So, too, here: The TCPA prohibits sending text message calls to phone numbers on the national Do Not Call List, just as it prohibits traditional voice calls. To interpret a statutory term, courts look to its "ordinary meaning" "at the time

5

Congress enacted the statute," referencing dictionaries of the era. *Perrin v. United States*, 444 U.S. 37, 42 (1979). Here, the "ordinary, contemporary, common meaning" of the word "call" in this context is "'to communicate with or try to get into communication with a person by a telephone.'" *Satterfield*, 569 F.3d at 953–54 & n.3 (quoting *Webster's Third New International Dictionary* (2002)). There's no question that a text is a "telephone" communication; of course it is. It's sent to a "telephone number," just like other transmissions that can violate the Do Not Call List rules. *See* 47 U.S.C. § 227(c)(3)(F). It plainly fits within the definition of a "call," just as a voice call does.

*Jones* and its progeny[2] get statutory interpretation wrong in two important ways. *First*, they are wrong as a techno-historical matter. The courts' analysis in these cases systematically exclude the experiences and needs of deaf and hard-of-hearing individuals, who have used text-based communication for telephone calls since long before the TCPA was enacted in 1991. The *Davis* court's assertion that "no normal person refers to a text message, or thinks of a text message, as a 'call,'" is flawed in that it excludes those who have used text-based communication to make "telephone calls" long before 1991. *Davis*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025).

For millions of Americans who rely on teletypewriter/telecommunications device for the deaf (TTY/TDD) technology, not to mention pagers, which were the precursors to modern cell phones, text messages are not just "telephone calls," they are often the *only* way these individuals can make and receive "telephone calls." When Congress enacted the TCPA in 1991, it was legislating against the backdrop of the recently enacted ADA and the longstanding use of text-based telephone call technology used by

---

[2] The same faulty reasoning is embraced nearly identically in all three cases.

the deaf community and millions of individuals and businesses who used teletypewriters and pagers. "The contemporary definition of "telephone call" was therefore not limited to oral or vocal communications. It encompassed any communication made using a telephone." *Wilson v. Better Mortg. Corp.*, 2025 WL 3493815, *5 (S.D.N.Y. Dec. 5, 2025). Congress knew that telephone "calls" could take multiple forms, including voice calls or text messages. To interpret "call" in a way that excludes text-based communication is to ignore this historical context. If a text "call" to a TTY device or pager can violate the TCPA, a text "call" to a cell phone can too, because it shows "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1004–05 (N.D. Ill. 2010).

Second, *Jones* and its progeny get the statutory interpretation wrong by applying the wrong standard. Courts look to statutes' ordinary "meaning at the time of … adoption" to interpret them, not "modern intuition." *New Prime, Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). As Judge Engelmayer explained, "the meaning of "telephone call" in 1991—when the TCPA was enacted—was broad enough to encompass text messages." *Better Mortg. Corp.*, 2025 WL 3493815, at *5. As he elucidated:

> The ordinary public meaning of "telephone call" when the TCPA was enacted in 1991 was a communication made by telephone. *See, e.g.*, Webster's Ninth New Collegiate Dictionary 197 (1989) ("the act of calling on the telephone," *i.e.*, "to get or try to get into communication by telephone," or "to deliver (a message) by telephone"); Webster's Third New International Dictionary 318 (1993) ("to communicate with or try to get into communication with a person by telephone"); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 (9th Cir. 2009) (same). The contemporary definition of "telephone call" was therefore not limited to oral or vocal communications. It encompassed any communication made using a telephone.
>
> Text messages fit easily within that broad definition. It is undisputed that text

7

messages are communications sent by telephone. They therefore fall within the ordinary public meaning of "telephone call" as that term was used when the TCPA was enacted.

The problem with applying modern parlance to a statute written in 1991, as

*Jones* and its progeny did, is that modern parlance can be misleading as times change.

*See id.* at 114-16. As the Court explained in *Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-CV-

00343, 2026 WL 202930, at *4-5 (S.D. Tex. Jan. 26, 2026):

There is nothing in the meaning of "telephone" that excludes the function of a text message. Remarkably relevant here is the classic case of *In re Erickson*, 815 F.2d 1090 (7th Cir. 1987). In that case, Judge Easterbrook considered a Wisconsin statute that made certain farming property unavailable to satisfy a civil judgment, allowing a farmer to retain "one mower" and "one hay loader." *Id.* at 1091-92. Just one problem: since the law's passage in 1935, farm technology had changed considerably. Old horse-drawn "mowers" were replaced by hydraulic, tractor-mounted haybines with hay conditioners, and "hay loaders" were replaced by automatic bailing/tying machines. *Id.* at 1092-93. And yet, the court found that the new technology was embraced by the old terms. Specifically, Judge Easterbrook wrote that a "'mower' is not limited to the thing called a mower today," because "[a] statutory word of description does not designate a particular item (e.g., "a Massey-Ferguson Mower, Model GY—2589, manufactured in 1935, serial number 3875808") but a *class of things* that share some important feature." *Id.* at 1092 (emphasis added). Indeed, "a mower with a built-in stereo cassette deck would still be a 'mower', . . . because it would still cut the hay," yet with "a second function, entertainment, just as the haybine has a second function, crushing the hay." *Id.* at 1093.

The Court finds this reasoning persuasive here. Defendant seems to define "telephone call" as "a call from a telephone as existed in 1991"—that is, *only* able to communicate by voice. But if "telephone" was as absolutely defined by its sound-transmission ability as required by that reading, it would prevent an otherwise unlawful voice call using a telephone with *any* modern features from falling under the statute. Thus, voice calls from almost every modern telephone—most of which can text, among many other capabilities—would not qualify as a "telephone call" under § 227(c)(5). "[T]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (quotation omitted). Just as a mower that both cuts and conditions hay is still a mower, a telephone which communicates texts and voice is still a telephone. And just as an aircraft built a hundred years from now such that it "could not have been dreamed today" can be embraced by 2012 statute regulating aircraft, so can a call from a telephone built in 2025—or 2125 for that matter—be embraced by a 1991 statute. Scalia & Garner, *supra*, at 16. Later meaning ascribed

8

to words like "text message" cannot affect the Courts analysis of the original meaning of the phrase; in fact, considering the broad original meaning of "call" in 1991, society reasonably might have decided to refer to all telephone communications as "calls." That society does not today has no bearing here.

None of Defendant's remaining arguments should hold any weight. As an initial matter, the FCC exercised its Congressionally-authorized authority to provide explicit statutory protection in the TCPA's implementing regulations, and not mere interpretative guidance, to subscribers who use their wireless telephone numbers to receive text messages. *See* 47 C.F.R. § 64.1200(e) (confirming that all Do Not Call List regulations are applicable to "telephone solicitations or telemarketing calls or text messages to wireless telephone numbers"). As an appropriately promulgated administrative regulation authorized by Congress, that statutory pronouncement has the force and effect of law, even after *Loper Bright*. *Chrysler Corp. v. Brown*, 441 U.S. 281, 282 (1979). The Supreme Court has also weighed in on the issue. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call'".). And, the Ninth Circuit Court of Appeals explicitly reaffirmed its holding in *Satterfield* that text messages are "calls," after, and with full knowledge of, *Jones* and its progeny. *Howard v. Republican Nat'l Comm.*, No. 23-3826, --- F.4th ---, 2026 WL 90273 (9th Cir. Jan. 13, 2026). Finally, as Plaintiff has explained, there is no reason why the term "call" could not have included text-based communication, as telephone calls that utilized text unquestionably existed in 1991.

Defendant's strained interpretation of the legislative record hardly shows that Congress intended to protect only voice calls, nor is it particularly illuminating, for "floor statements by individual legislators rank among the least illuminating forms of legislative history." *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 307 (2017). Regardless, it's easy to

9

see why interpreting the term "call" in the TCPA furthers the guiding purpose of the Do

Not Call List, "to protect residential telephone subscribers' privacy rights to avoid

receiving *telephone solicitations* to which they object." *Id.* § 227(c)(1). The key operative

term is "telephone solicitations," which are defined in the TCPA as "the initiation of a

telephone call *or message* for the purpose of encouraging the purchase or rental of, or

investment in, property, goods or services, which is transmitted to any person." *Id.*

§ 227(a)(4). That definition is "more concerned with the purpose of the telephone

communications than the form in which those communications are transmitted." *Wilson*

*v. Medvidi*, 2025 WL 2856295, at *3 (N.D. Cal. 2025). "Defendant's invitation to inject a

distinction between written and oral telephone solicitations is contrary both to the

remedial bent of the TCPA and precedent." *Id.* It also contravenes the long-established

precedent on the remedial purposes of the TCPA. *Esquivel v. Mona Lee, Inc.*, No. 3:25-

CV-00607, 2025 WL 3275607, at *3 (S.D. Cal. Nov. 24, 2025). This is not to mention

that Defendant's strained approached leaves telephone subscribers "at the mercy of

advancing technology" and permits it to "erode the privacy guaranteed by the" TCPA

merely because technology has advanced. *Kyllo v. United States*, 533 U.S. 27, 28

(2001) (extending Fourth Amendment protections to new technology).

Once Defendant's flawed interpretation of the statute is set straight, the analysis

here is straightforward: Plaintiff received multiple unwanted marketing text message

calls, and those calls indisputably violated the FCC's Do Not Call List rules. 47 C.F.R. §

64.1200(c)(2), (e). Mr. Connor therefore "received more than one telephone call within

any 12-month period … in violation of the regulations," and may sue to enforce his

"privacy rights to avoid receiving telephone solicitations" that he does not want. 47

U.S.C. § 227(c)(1), (5). For the foregoing reasons, this Court should hold that Mr.
Connor received text message "calls."[3]

## 2. Mr. Connor received two text message calls.

At the very least, the evidentiary record here shows that there exists a dispute as
to whether Mr. Connor received one text message "call" or two sufficient to preclude
summary judgment on the issue. As an initial matter, the Defendant's argument that
legislative intent somehow counsels against a finding that the Plaintiff received more
than one message runs contrary to recent Supreme Court precedent. "[T]he text of a
law controls over purported legislative intentions unmoored from any statutory text."
*Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022). A Court may not "replace the
actual text with speculation as to Congress' intent." *Id.* Thus, what matters for summary
judgment purposes is whether Defendant has demonstrated that no reasonable jury
could find that the Plaintiff received two text message calls, precisely as the statute
requires. Defendant has not met that standard, either as a legal or as a factual matter.

First, consider the legal requirements for the claim. The subject provision, 47
U.S.C. § 227(c)(5), provides a right of action to any "person who has received more
than one telephone call within any 12-month period by or on behalf of the same entity in

---

[3] Even if the Court were to hold that a text message was not a "call" under the TCPA, or were to hold that
the Plaintiff received only one text message call, and dismiss the Plaintiff's TCPA claims (which it should
not), the Plaintiff's state law claims survive. Unlike the TCPA, the SCTPPA does not premise recovery on
more than one call; to the contrary, it establishes a private right of action for any "person who is aggrieved
by *a violation* of this chapter" to recover "actual losses in addition to damages in the amount of one
thousand dollars for *each violation*." SC Code § 37-21-80(A). And, the SCTPPA explicitly establishes that
a "telephone solicitation" includes a "text or media message." SC Code § 37-21-20(6). If the Court were to
so hold, maintenance of the state law claims would not necessitate a remand to state court. The Class
Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2)(A), vests in the federal courts "original jurisdiction of
any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of
interest and costs, and is a class action in which—(A) any member of a class of plaintiffs is a citizen of a
State different from any defendant." That being the case here, this Court can maintain the claims at issue
here in the event it dismisses Plaintiff's federal claims (which it should not).

11

violation of the regulations prescribed under this subsection." That language merely requires that the Plaintiff demonstrate that he received (1) multiple calls, and that (2) at least one of those calls violates at least one of the provisions "promulgated" thereunder. The statute sets out two distinct conditions, a numerosity gate – "more than one telephone call" from the same entity within 12 months, and a violations gate – at least one call in "violation of the regulations" under § 227(c). Those "regulations" pertain to "telephone solicitations," which include a "call or message" 47 U.S.C. § 227(c)(3); (a)(4).[4] As will be explained below, telephone company records establish at the very least a disputed factual question on the issue sufficient to preclude summary judgment.

As a legal matter, nothing in the text says that any of the "more than one" calls cannot occur simultaneously. To the contrary, the TCPA also prohibits *simultaneous* calling conduct that would cause "two or more telephone lines of a multi-line business [to be] engaged simultaneously." 47 U.S.C. § 227(b)(1)(D). If Congress had intended the threshold to be "more than one violative call *after x amount of time*," it knew how to say so. No part of that language requires that the calls not occur simultaneously; to the contrary, they must occur "within any 12-month period." Thus, there is no cognizable legal reason why, for complex technical reasons, what was transmitted from ServiceQuik's telephone carrier to Mr. Connor's telephone carrier as two simultaneous text messages and was reassembled into a single text message for ease of reading on

---

[4] On Page 6 of its motion, Defendant cites to the authorities Plaintiff does, including *Wilson* and *Howard*, which undermine Defendant's argument that a text message is not a "call." Regardless, these cases did not interpret "telephone calls" as "telephone communications," nor is it clear how this supposed "interpretation" is at all relevant to the statutory language at issue. The term "telephone communications" only appears once in *Wilson* and *Mujahid* in a different context entirely. As explained here, the statutory language controls.

a smartphone should not constitute two "calls" under the TCPA. The fact remains that
two text message "calls" were sent to Mr. Connor's telephone carrier AT&T, which were
then reassembled on Mr. Connor's phone, as reflected in AT&T's records. Mr. Connor
pled that he believed he only received one message in the state court action because
he did not review his telephone records or fully understand how his phone operated.
Plaintiff subsequently obtaining his records revealed the reality of two transmissions.

What Defendant did is no different than needing to make another call because a
long call dropped, or needing to split a long letter into two envelopes because it will not
fit in a single envelope. As the Plaintiff noted in opposition to the Motion to Dismiss,
courts have not hesitated to find multiple "calls" were placed in violation of the statute
when technical reasons resulted in the transmission of simultaneous calls. *See Albrecht
v. Oasis Power, LLC*, No. 18 C 1061, 2018 WL 11269232, at *1 (N.D. Ill. Oct. 11, 2018)
(denying motion to dismiss when Plaintiff received four simultaneous calls that were
made for the purpose of leaving a single ringless voicemail). Indeed, Defendant's
consumer privacy reasoning is easily turned on its head, for it is unquestionable that
reading a longer message (or, more accurately, messages) is more costly, annoying,
inconvenient, and a greater invasion of privacy than a single, shorter message. Pub.L.
102-243, § 2, Dec. 20, 1991, 105 Stat. 2394. If Defendant had chosen to send a short
message, Plaintiff likely would not have a TCPA claim. But Defendant chose to send a
message so long that it necessitated being broken up and sent as two messages. That
conscious choice is the Defendant's and the Defendant's alone; this is no different than
two occupants of a vehicle having a claim against another car that hits them in a single
accident or speaking so long that it necessitates a second call. Defendant has thus

failed to show that it is entitled to judgment as a matter of law on the issue.

Turning to the factual requirements for summary judgment, it is clear that Defendant is unable to meet its burden of demonstrating that no reasonable juror could hold, based on the evidence presented, that the Plaintiff received two calls. Minimally, how many text messages Plaintiff and each member of the Class received is a disputed factual question that will require a jury to determine at trial.

To see why, consider that most courts hold that a telephone carrier's records are typically dispositive, or, at least create disputed facts, in a TCPA suit. For example, in *Brown v. NRA Grp., LLC*, the Court found, at summary judgment, that the plaintiff received 35 calls because the plaintiff's "cell phone records show 35 such calls, but the Defendant only acknowledges 31," and defendant did not produce "any evidence supporting its figure." No. 6:14-CV-610-ORL-31, 2015 WL 3562740, at *1 n.1 (M.D. Fla. June 5, 2015). So too here. The Plaintiff's undisputed AT&T phone records, Exhibit A, and the authenticated, subpoenaed records from AT&T, Exhibit B, show two text messages from the Defendant. Defendant only asserts (without adducing *any* admissible evidence) that it sent a single message. Notably, it doesn't even dispute could possibly have been broken up and sent as two messages. It thus has produced no evidence substantiating its contention that it only sent one message.

It's unclear why Defendant attempts to distinguish *Hinman* on the basis that it was brought under a different part of the TCPA. Plaintiff cited that case, and brings it again here, including in the context of *Brown*, to simply show how telephone company billing records are used in TCPA cases to establish how many calls were placed to a particular telephone number. These records may be sufficient at summary judgment.

*Hinman v. M & M Rental Ctr., Inc.*, 596 F. Supp. 2d 1152, 1156 (N.D. Ill. 2009). Further

citations abound, and show that the issue can cut both ways. For example, in *Pugliese*

*v. Pro. Recovery Serv., Inc.*, the Court granted summary judgment to the defendant

when the plaintiff's "cell phone records show that she was never called or contacted by

PRS."  No. 09-12262, 2010 WL 2632562, at *8 (E.D. Mich. June 29, 2010).

The case of *Holt v. MRS BPO, LLC* is perhaps most illustrative for the

circumstances at the procedural posture here, however. In *Holt*, the parties cross-

moved for summary judgment, with the plaintiff moving for summary judgment on 19

calls contained in a list plaintiff maintained, but plaintiff's telephone records from Sprint

showed only five calls, only two of which the Court was able to reconcile with the

plaintiff's list. No. 12 C 2571, 2013 WL 5737346, at *3-4 (N.D. Ill. Oct. 21, 2013). The

Court went on to explain why summary judgment in favor of either party was

inappropriate, "Holt is correct that this may explain the difference between the

documented calls in the Sprint call records and the additional calls Holt claims she

received from MRS. However, a reasonable jury could also believe, for example, that

some of the calls were never made or that the screen shots were taken of someone

else's phone. . . . But the fact Holt has provided a plausible explanation does not mean

it is the only explanation. MRS, again, claims it did not dial any calls to Holt's number,

which supports the reasonable inference that the five documented calls to Holt could

have been routed to her cell phone through a different number. . . . As such, summary

judgment on her TCPA claim in Count IV is denied." *Id.*

At bottom, Defendant has not demonstrated that it is entitled to judgment as a

matter of law, because the plain text of the statute simply requires the receipt of "more

15

than one" call, at least one of which must have been placed in "violation of the

regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). Defendant has

also failed to point to *any* admissible evidence for the proposition that it placed only one

call; to the contrary, the evidence Plaintiff has adduced shows that the Plaintiff received

two such calls, and as such, there exists a genuine issue for a jury to determine.

   3. **Defendant fails to meet the statutory requisites for its claimed safe harbor
      under the TCPA.**

         As another reason for why Defendant feels it should be granted summary

judgment, Defendant claims that should be entitled to the safe harbor contained in 47

U.S.C. § 227(c)(5), which makes it an "affirmative defense" to a TCPA action to show

that the defendant has implemented "*reasonable* practices and procedures to effectively

prevent telephone solicitations in violation of the regulations prescribed under this

subsection." The bare "minimum standards" for these "reasonable" practices are

codified at 47 C.F.R. § 64.1200(c)(2)(i). *Klassen v. Advanced Mktg. & Processing, Inc.*,

No. 8:21-CV-761-MSS-MRM, 2023 WL 11910565, at *3 (M.D. Fla. Mar. 1, 2023). Those

standards include:

> (a) the establishment and implementation of written procedures [];
> (b) the training of its personnel [];
> (c) maintenance [] of a list of numbers that the seller may not contact;
> (d) the use of a process to prevent telephone solicitations to any telephone
> number [on the Do Not Call List, and maintenance of records]; and
> (e) the purchase of the national do-not-call database.

> *Id.* (quoting 47 C.F.R. § 64.1200(c)(2)(i)).

         Defendant has not met its burden of demonstrating at summary judgment that it

has met *any* of the required standards to even potentially begin to avail itself of this safe

harbor. To the contrary, as the discovery adduced in this matter has unquestionably

16

shown, Defendant (a) had no written procedures for compliance with the TCPA (Exhibit C, RFP 14); (b) did not train its personnel regarding Do Not Call compliance (Cameron Dep. 42:9-25, 43:1-10); (c) used no process to prevent telephone solicitations to any number on the Do Not Call Registry, and has taken the position it was not required to (Exhibit C, Interrogatory 10); and (d) never subscribed to or purchased the national do-not-call database (Cameron Dep. 40:3-5).

Defendant has thus failed to meet at least four of the five required *minimum* standards to demonstrate that it has established "reasonable" practices and procedures to meet this safe harbor. *Id.*; *see also Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 129 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017) (holding that defendant must establish it meets each of the standards in 47 C.F.R. § 64.1200(c)(2)(i) in order to fall within the "safe harbor" provision). The case law is clear: if you don't meet the statutory requirements, you don't qualify for the safe harbor. *Mey v. Liberty Home Guard, LLC*, No. 5:23-CV-281, 2026 WL 486556, at *3 (N.D.W. Va. Jan. 5, 2026) ("Liberty has not demonstrated that it had implemented the minimum compliance requirements at § 64.1200(c)(2)(1) [sic]."); *Tyner v. Hi.Q, Inc.*, No. CIV-21-608-F, 2022 WL 17490500, at *7 (W.D. Okla. Dec. 7, 2022) (failure to meet any element of the safe harbor defeats the affirmative defense); *LaGuardia v. Designer Brands Inc.*, No. 2:20-CV-2311, 2021 WL 4125471, at *10 (S.D. Ohio Sept. 9, 2021) (same).

What's more, when asked to state "all facts in support of any affirmative defenses" Defendant has raised, Defendant stated only, "Defendant refers to facts alleged in its pleadings thus far, and reserves the right to supplement. Defendant's entire marketing campaign is intended for businesses only, as most individuals do not

want a personal website. Businesses cannot be placed on the Do Not Call Registry." As
Defendant has not established the statutory requisite for the safe harbor affirmative
defense under the TCPA, *Benzion v. Vivint, Inc.*, No. 12-61826-CIV, 2014 WL
11531368, at *6 (S.D. Fla. Jan. 17, 2014) (holding safe harbor is an affirmative defense
for which the defendant bears the burden of proof), Defendant is not entitled to
judgment as a matter of law on this affirmative defense.

### 4. Defendant fails to meet the statutory requisites for its claimed safe harbor under the SCTPPA.

Seizing on similar language in the South Carolina Code, Defendant contends that
it is entitled to a similar safe harbor defense, or alternatively, the *bona fide* error
defense, under South Carolina law. The former defense incorporates by reference a
requirement that the defendant use "in ac*cordance with applicable federal regulations* a
version of the National Do Not Call Registry obtained from the administrator of the
registry no more than thirty-one days prior to the date a telephone solicitation is made."
SC Code § 37-21-70(C). As established above, Defendant has not met at least four of
the five "applicable federal regulations," nor did it use the National Do Not Call Registry
in any manner. (Exhibit C, Interrogatory 10, RFP 14). Similarly, under South Carolina
law, any "*bona fide* error" defense, including to the SCTPPA, requires the "maintenance
of procedures reasonably adapted to avoid error." *S.C. Dep't of Consumer Affs. v. Cash
Cent. of S.C. LLC*, 865 S.E.2d 789, 798 (S.C. Ct. App. 2021). A defendant cannot avail
itself of a *bona fide* error defense under South Carolina law unless the record shows
that it maintained such procedures reasonably adapted to avoid such error. *Id.* at 798-
99. This is a rigorous standard that requires objective good faith and the establishment

18

of reasonable formal policies. *Id.* Indeed, Defendant itself concedes that the Court

should "adopt the approach endorsed by the FCC above" in determining whether the

Defendant has adequately pled the existence of a *bona fide* error, and, correspondingly,

whether it has pled the maintenance of adequate procedures to avoid the error. (MSJ at

11). It being the case that Defendant has not met its burden of demonstrating the

maintenance of such procedures, the Court should deny any "reasonable practices" or

"*bona fide* error" defenses under the SCTPPA as Defendant has failed to meet the

applicable federal standards for an identical defense under federal law.

### 5. Response to Statement of Undisputed Material Facts

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted.

5.      Admitted.

6.      Denied. The text message was sent to Plaintiff. Exhibit B (AT&T

Subpoena Records).

7.      Denied. The first message read: "Hi, this is Sally from Zing website

design. We're offering a fully built website for only $19/month for businesses like Arbor

Craft Builders- no contrac" SAC ¶ 30. The second read: "t! Can I send you a sample of

our work? Reply 'not interested' to opt out." SAC ¶ 31.

8.      Admitted.

9.      Denied. Defendant did not obtain any legally sufficient consent to market

to any of the individuals, regardless of whom it thought it was contacting. Exhibit C, RFP

14.

10.    Admitted.

11.    Denied. Defendant purchased "leads" from a third party vendor, "Dara," on the website "Fiverr" that consisted of "buying scraped data that was live on the Internet" and simply "assume[d]" that the number was associated with a business and undertook no steps to verify this assumption. Bourke Dep. 18:12-25; 19:1-25; 20:1-24; 21:7-20.

## 6.  Statement of Additional Disputed Facts

1.    The Plaintiff received two text message calls. Exhibit A (AT&T Billing Records), Exhibit B (AT&T Subpoena Records).

2.    Although Mr. Connor's phone displayed the messages as a single visual unit and were sent at the exact same time, AT&T's carrier records confirm that the messages were received in two distinct call transmissions. Connor Dep. 80:12-22; Ex. A, Ex. B.

3.    Mr. Connor's telephone assembled the two text message calls it received into one for ease of reading. Connor Dep. 31:24-25; 32-1-5.

4.    ServiceQuik had no written procedures for compliance with the TCPA. Exhibit C, RFP 14.

5.    ServiceQuik did not train its personnel regarding Do Not Call compliance Cameron Dep. 42:9-25, 43:1-10.

6.    ServiceQuik used no process to prevent telephone solicitations to any number on the Do Not Call Registry. Exhibit C, Rog. 10.

7.    ServiceQuik never subscribed to or purchased the national do-not-call database. Cameron Dep. 40:3-5.

20

RESPECTFULLY SUBMITTED AND DATED this February 26, 2026.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
*Perrong Law LLC*
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I, Andrew Roman Perrong, hereby certify that this document filed through the

ECF system will be sent electronically to the registered participants as identified on the

Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as

non-registered participants on this date.

DATED this February 26, 2026.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.