**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

| | |
|---|---|
| JAY CONNOR, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>SERVICEQUIK INC. d/b/a ZING BUSINESS MANAGEMENT SOFTWARE<br><br>AND<br><br>WOOSENDER, INC.<br><br>　　　　　Defendants. | Case No. 1:24-cv-02286<br><br>**Reply to Response to Motion for Summary Judgment** |

　　Defendant Servicequik hereby replies to Plaintiff's Opposition to Defendant's motion for summary judgment filed on February 26, 2026. ECF 86. Defendant focuses this reply solely on the one vs. two text message issue and the safe-harbor issue and does not abandon its arguments on other points as raised in its Motion for Summary Judgment. ECF 82.

1. Regarding the one vs. two-messages issue, Plaintiff's attempt to muster legal authority for its 'two-message' theory fails upon review. The cited cases do not stand for the broad legal propositions Plaintiff attributes to them. For instance, on page 13 of their brief, Plaintiff states "courts have not hesitated to find multiple "calls" were placed in violation of the statute when technical reasons resulted in the transmission of simultaneous calls." In support of this, Plaintiff cites one unreported case: *Albrecht v. Oasis Power, LLC,* No. 18 C 1061, 2018 WL 11269232, at *1 (N.D. Ill. Oct. 11, 2018). *Albrecht* was not about distinguishing a single or multiple messages at all. It's entirely concerned with whether or not the

Plaintiff had Article III standing at the Motion to Dismiss stage for only alleging an "invasion of privacy" in general terms. Id at *1.

2. Similarly, Plaintiff claims, on page 16 of their brief, that "most courts hold that a telephone carrier's records are typically dispositive, or, at least create disputed facts, in a TCPA suit." In support, they point to a footnote of a single unreported case: *Brown v. NRA Group, LLC*, No. 6:14-CV-610-ORL-31, 2015 WL 3562740 (M.D. Fla. June 5, 2015). Even then, the footnote doesn't support Plaintiff's position. The issue in *Brown* was whether the calls were automated; it was not a legal determination that carrier logs override the actual content of a communication for the purpose of counting violations. The court's favoring of the movant's description of 35 calls vs 31 was attached to the first sentence of the factual background, and was not dispositive towards anything, nor was it a genuine issue of material fact that the court was considering. It also didn't matter to either party: the issue was whether the calls were "automatic" or not as to invoke §227(b)'s protections.

3. The unpublished decision of *Holt v. MRS BPO, LLC* also does not help the Court resolve the issue. No. 12 C 2571, 2013 WL 5737346 (N.D. Ill. Oct. 21, 2013). Rather, the Court was examining § 227(b) and whether the Defendant made any calls to the Plaintiff *at all*. Id at *3 ("MRS may not have initially dialed a cell phone number or even called a number without consent"). There was definitely an issue of fact in that case as the Plaintiff claimed it received nineteen calls and the Defendant said it made zero of them. That is not the case here. Defendant does not dispute that it sent a text message

that was received by the Plaintiff. This issue is simply about whether or not the 226-character message should count as "more than one telephone call within a 12-month period." There is no dispute as to what occurred, the question is simply how to interpret it. This is a classic example of what is appropriate for summary judgment. 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2725 (4th ed. 2016) ("when the only question is what legal conclusions are to be drawn from an established set of facts, the entry of a summary judgment usually should be directed").

4. Plaintiff is incorrect when it states that Defendant has not presented any admissible evidence in support of its claim of one call. In his deposition, Plaintiff agreed that he believed he received one text message and swore as much under oath in a state court action. He authenticated ECF 10-1 as what he submitted to the State Court, and admitted that he stated under oath that he received a single text message. Now, he argues the opposite.

5. While Plaintiff points to AT&T records showing two lines of transmission, he conspicuously offers no evidence of the actual two messages. Plaintiff's complaint stated:

> 29.　The first message read, "Hi, this is Sally from Zing website design. We're offering a fully built website for only $19/month for businesses like Arbor Craft Builders- no contrac"
> 30.　The second message read, "t! Can I send you a sample of our work? Reply 'not interested' to opt out.,'"

ECF 6, page 5.

However, this separation was not shown in discovery. Plaintiff's only factual support for their "split" theory is the carrier's metadata, not the actual experience

of the recipient. If the TCPA is concerned with privacy first and foremost, how could Congress have intended "more than one call in a 12-month period" to encompass a communication that is ultimately received and experienced as a single, uninterrupted intrusion? *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012) (stating the purpose of the TCPA was to prevent "intrusive nuisance calls.").

6. Responding to Plaintiff's footnote on page 12 of its motion, Defendant cites *Wilson* and *Mujahid* to illustrate how when Courts interpret a text to be a call, they do so under the guise of the text being a "telephone communication." *See Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 WL 3140725, at *2 (N.D. Ill. Nov. 10, 2025) ("Congress was more concerned with the purpose of the telephone communications it proscribed in the TCPA than the form in which those communications are transmitted.") *quoting Wilson v. MEDVIDI Inc.*, 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025). If that logic is to be followed, as Plaintiff urges this court to do, then the argument that a long text equals two calls fails. How is a single long text message akin to two "telephone communications" as understood in 1991? *See Wilson v. Better Mortg. Corp.,* No. 25 CIV. 5503 (PAE), 2025 WL 3493815, at *5 (S.D.N.Y. Dec. 5, 2025) ("It is undisputed that text messages are communications sent by telephone. They therefore fall within the ordinary public meaning of "telephone call" as that term was used when the TCPA was enacted").

7. If the Court were to adopt Plaintiff's argument, and count a long text message as two "calls" due to behind-the-scenes segmentation, it would open up a major can

of worms in relation to how information is sent and received in the modern digital age. By its nature, information is transferred, including this very pleading, through "packets" of data across the internet. The segmentation and re-assembly of smaller packets of data is simply how digital communications function these days. *How the Internet Works*, Stanford Univ., https://web.stanford.edu/class/msande91si/www-spr04/readings/week1/InternetWhitepaper.htm (last visited Mar. 5, 2025) (explaining that data is broken into packets for transmission and then reassembled at its destination).

Nevertheless, reasonable persons would not assume that this Reply is "more than one" pleading because it was transmitted across the internet in smaller packages and reassembled at the clerk's office's computer. Nor would one describe an email as "more than one email" simply due to this behind-the-scenes process. If the Court were to find that this long and unbeknownst-to-either-party segmented message were two messages, then determining what a "communication" is would involve opening and diving into hyper-technical documents and information related to the technical, invisible, transfer of data. This simply was not what Congress could have plausibly been referring to when they imposed liability for "more than one telephone call in a 12-month period."

8. Both parties cite *Klassen v. Advanced Mktg. & Processing, Inc.* in relation to Defendant's safe-harbor defense. 2023 WL 11910565 (M.D. Fla. Mar. 1, 2023). However, Plaintiff cites *Klassen* alongside a list of standards outlined in 47 C.F.R. § 64.1200(c)(2)(i), seemingly to support the notion that the list of procedures

outlined therein are an absolute requirement to invoke this defense. Both the context of *Klassen* and the literal language of *Klassen* refute this position.

The full context of *Klassen* is outlined in Plaintiff's motion, and thus needn't be repeated here, but Defendant would point out that *Klassen* acknowledged the regulation, but granted summary judgment to defendant without requiring it to meet all of the "standards" that Plaintiff here suggests are necessary. ("Because the Court finds that PMC has met the error prong of the safe harbor defense, the Court need not address whether PMC also met the standards set forth in C.F.R. § 64.1200(c)(2)(i)(A)-(E) to avoid liability."). *Klassen v. Advanced Mktg. & Processing, Inc.*, No. 8:21-CV-761-MSS-MRM, 2023 WL 11910565, at *5 (M.D. Fla. Mar. 1, 2023).

9. *Simmons v. Charter Commc'ns* also does not equate to Plaintiff's claimed meaning. The Simmons plaintiff, unlike the instant Plaintiff, specifically alleged that the Defendant violated regulations prescribed under the 47 C.F.R. § 64.1200. That regulation also has within it its own safe harbor provisions. Nothing in *Simmons* however, suggests that the list of standards that afford a telemarketer safe harbor under § 64.1200(c)(2)(i) are meant to supplant the plain-language safe harbor of the § 227(c)(5), which simply requires the Defendant to establish reasonable practices and procedures to prevent violations.

In any case, *Simmons* was pre-Loper Bright, and obviously now the Court must "interpret the TCPA under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 606 U.S. 146, 152 (2025).

      Defendant cites many examples in its motion of how they implemented reasonable practices and procedures to prevent soliciting people on the Do Not Call Registry, including only contacting businesses that have publicly listed Google Business profiles. Indeed the TCPA was designed to protect *residential* telephone subscribers: a distinction made to explicitly exclude business-to-business communications.

10. Plaintiff's interpretation of the South Carolina Telephone Privacy Protection Act (SCTPPA) is fundamentally flawed. There are two distinct safe-harbor provisions under South Carolina law: the federal mirror provision under S.C. Code § 37-21-70, and the broader "bona fide error" defense under S.C. Code § 37-21-80, which provides a defense where "the violation was not intentional and resulted from a bona fide error."

      Plaintiff's reliance on *S.C. Dep't of Consumer Affs. v. Cash Cent. of S.C. LLC*, 435 S.C. 192 (2021), is misplaced. That case does not mention the TCPA, nor does it establish a "rigorous standard" of formal policies for all bona fide errors. In *Cash Cent.*, the Court found that "forgetting" to file and post a legal document– where the defendant had no overarching policy to catch such an oversight– did not entitle the money lending service to the bona fide error defense as to allow it to charge above an 18% APR. Id at 210. In this matter, the Defendant did not "forget" to follow a consumer protection protocol; rather, Servicequik explicitly modeled their business as to not contact consumers. Ex 2 to Defendant's Motion, Dep. Bourke at 17:20-24. The only reason the Plaintiff was messaged was because his number was posted online as one for a business. Ex 3 to Defendant's Motion, Dep

Connor at 66:4-15. Therefore, the Defendant should be entitled to either of the two safe harbor provision of the SCTPPA.

**Reply Concerning Undisputed Facts**

6. **Defendant's original statement:** The Text Message was sent to a phone number listed online for a business known as Arbor Craft Builders. Ex 3 Dep Connor at 66:4-15

    a. **Plaintiff's Response:** Denied. The text message was sent to Plaintiff. Exhibit B (AT&T Subpoena Records).

        i. **Defendant's Reply:** The two statements are not inconsistent. It's undisputed that Plaintiff received the communication but also that it was listed online for a business on Google Maps. Ex 3 to Defendant's Motion for Summary Judgment, Connor Deposition at 66:4-15.

7. **Defendant's original statement:** The message was directed at a business and was offering website services. ECF 10-2.

    a. **Plaintiff's Response:** Denied. The first message read: "Hi, this is Sally from Zing website design. We're offering a fully built website for only $19/month for businesses like Arbor Craft Builders- no contrac" SAC ¶ 30. The second read: "t! Can I send you a sample of our work? Reply 'not interested' to opt out." SAC ¶ 31.

        i. **Defendant's Reply:** Defendant understands that Plaintiff's position is that there were two messages, but Defendant's statement was directed at the character/content of the communication, which is not

    in dispute. Further, Plaintiff cites their own complaint rather than a piece of evidence from discovery.

9. **Defendant's original statement:** Servicequik only attempts to market to businesses who have their information publicly listed for the purpose of being contacted. Ex 2, Dep. Bourke at 17:20-24

   b. **Plaintiff's Response:** Denied. Defendant did not obtain any legally sufficient consent to market to any of the individuals, regardless of whom it thought it was contacting. Exhibit C, RFP 14

      i. **Defendant's Reply:** The two statements are not inconsistent, and it appears Plaintiff does not fundamentally dispute that Servicequik only attempts to market to businesses.

11. **Defendant's original statement:** Servicequik only acquires numbers to be contacted from Google Business Profiles. Exhibit 4 – Cameron Deposition at 15:10-13

    c. **Plaintiff's Response:** Denied. Defendant purchased "leads" from a third party vendor, "Dara," on the website "Fiverr" that consisted of "buying scraped data that was live on the Internet" and simply "assume[d]" that the number was associated with a business and undertook no steps to verify this assumption. Bourke Dep. 18:12-25; 19:1-25; 20:1-24; 21:7-20.

       i. **Defendant's Reply:** Defendant obtained the numbers from Dara who obtained them from Google Maps, so these two statements are not actually inconsistent nor are these facts in dispute. Further, Defendant disagrees that they flippantly assumed numbers were

associated with businesses as they were aware that to have a number on a Google Business Profile, the business must have "already been validated by Google that the business is a bricks and mortar. They go through quite a rigorous test before you can get a Google Business Profile." Ex 4 from Defendant's Motion for Summary Judgment, Cameron Deposition at 18:7-12.

**Response Concerning Disputed Facts**

1. This is obviously one of the main subjects of this Motion, and Defendant submits there are no facts in dispute: the parties simply disagree on the characterization of the communication as one or two messages. Defendant submits that Plaintiff received one message because of all the reasons set forth *supra*. See ECF 10-2, Plaintiff's exhibit to his state court complaint.

2. Defendant doesn't dispute the authenticity of Plaintiff's exhibits, or that the communication appears as two separate lines on these exhibits, but submits that, as laid out more fully *supra*, that the exhibits are inconsequential as to the question of whether Plaintiff received "more than one telephone call in a 12-month period."

3. Admitted that Mr. Connor's phone made any segmentation of the messages invisible to him, and to Defendant.

4. Admitted, but obviously Defendant felt that it was avoiding any liability under the TCPA to begin with as it was not interested in contacting any "residential telephone subscribers" and only contacted businesses to sell business (i.e. web design) services. Ex 4 to Defendant's Motion, Cameron Deposition at 9:1-6; 52: 23-25.

Defendant's CEO testified at deposition "The only advice we received was: You cannot go anywhere near a consumer. And we never do." Id, 51:19-20.

5. Denied in so far as Defendant had an internal Do-Not-Call list. Ex 2 to Defendant's Motion, Bourke Deposition at 17:1-14.

6. Denied, as stated *supra*, Defendant had no interest in contacting individual consumers, as they were explicitly selling services for businesses, and Defendant knew that businesses could not be listed on the Do Not Call Registry. Ex 4 to Defendant's Motion, Cameron Deposition at 52:23-25, 53:1-2.

7. Admitted.

Respectfully submitted,

*/s/ Daniel Summa*

_____
Daniel Summa
Summa Law Firm, LLC
3 Broad Street, #301
Charleston, SC 29401
843-277-9665 *office*
843-806-2920 *fax*
daniel@summalawfirm.com

*Attorney for Defendant ServiceQuik, Inc.*

March 13, 2026
Charleston, South Carolina